UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY – CAMDEN DIVISION

_____

HARFORD MUTUAL INSURANCE COMPANY,　:
　　　　　　　　　　　　　　　　　:
　　　　　　Plaintiff,　　　　　　:
　　　　　　　　　　　　　　　　　:
　　　　　v.　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　:
Z&D REALTY, LLC, DENNIS COSBY,　　:
EUGENE COSBY, TERRY R. MAYES, ZIGGY :
DOBKOWSKI, DIANE DOBKOWSKI and　　:　　　　Civil Action No.
RAHEEM McCLENDON,　　　　　　　　:
　　　　　　　　　　　　　　　　　:　　　1:19-cv-01583 (RMB-KMW)
　　　　　　Defendants,　　　　　　:
　　And　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　:
Z&D REALTY, LLC, LANDIS PIG ROAST,　:　　**DECLARATION OF COUNSEL**
LLC, GRANT PLAZA, LLC and ZIGGY　　:　　　**WITH EXHIBITS**
DOBKOWSKI and DIANE DOBKOWSKI,　　:　　**ON BEHALF OF PLAINTIFFS**
　　　　　　　　　　　　　　　　　:　　**HARFORD MUTUAL INS. CO.**
　　　　　　Defendants/　　　　　　:　　　　　　**AND**
　　　　　　Counterclaimants/　　　:　　**FIRSTLINE NATIONAL INS. CO.**
　　　　　　Third-Party Plaintiffs,　:　　　**IN SUPPORT OF**
　　　　　　　　　　　　　　　　　:　　　**MOTIONS FOR SUMMARY**
　　　　　v.　　　　　　　　　　　:　　　　　**JUDGMENT**
　　　　　　　　　　　　　　　　　:
BIONDI INSURANCE AGENCY, INC.,　　:
ANATOLIY SAKHAN, THE MARTIN　　　:
INSURANCE AGENCY, INC. and DONALD　:
REIGHN,　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　:
　　　　　　Third-Party Defendants,　:
_____

AND

_____

FIRSTLINE NATIONAL INSURANCE　　　:
COMPANY,　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　:
　　　　　　Plaintiff,　　　　　　:
　　　　　　　　　　　　　　　　　:
　　　　　v.　　　　　　　　　　　:　　　　Civil Action No.
　　　　　　　　　　　　　　　　　:
LANDIS PIG ROAST, LLC, DENNIS　　:　　　1:19-cv-01627 (RMB-KMW)
COSBY, EUGENE COSBY, TERRY R.　　:
MAYES, ZIGGY DOBKOWSKI, DIANE　　:

```
DOBKOWSKI and RAHEEM McCLENDON,        :
                                       :
          Defendants,                  :
     And                               :
                                       :
Z&D REALTY, LLC, LANDIS PIG ROAST,     :
LLC, GRANT PLAZA, LLC and ZIGGY        :
DOBKOWSKI and DIANE DOBKOWSKI,         :
                                       :
          Defendants/                  :
          Counterclaimants/            :
          Third-Party Plaintiffs,      :
                                       :
          v.                           :
                                       :
BIONDI INSURANCE AGENCY, INC.,         :
ANATOLIY SAKHAN, THE MARTIN            :
INSURANCE AGENCY, INC. and DONALD      :
REIGHN,                                :
                                       :
          Third-Party Defendants.      :
_____:
```

Louis Niedelman, Esquire (NJ 254601969)
Jennifer B. Barr, Esquire (NJ 21091998)
COOPER LEVENSON, P.A.
1125 Atlantic Avenue - 3rd Floor
Atlantic City, NJ 08401
Telephone: (609) 344-3161
lniedelman@cooperlevenson.com
File No. 60696.19
Attorney for Plaintiffs
Harford Mutual Insurance Co.
and Firstline National Insurance Co.

I, Louis Niedelman, Esq., of full age say the following:

1.   I am an attorney licensed to practice law in the State of New Jersey and am a member of the law firm of Cooper Levenson, attorneys for Plaintiffs Harford Mutual Insurance Company ("Harford") and Firstline National Insurance Company ("Firstline").

2.   Attached as **Exhibit A** is a correct copy of Harford's Complaint in the instant matter, Docket No. 1:19-cv-01583, filed on January 29, 2019, along with the exhibits attached to the Complaint:

      a. Harford Policy No. 9157994 insuring Z&D Realty, LLC, effective 1/3/17 to 1/3/18;

      b. Complaint filed in the underlying action, Docket No. CUM-L-403-17, filed on September 25, 2017, in the Superior Court of New Jersey, Law Division, Cumberland County.

3.   Attached as **Exhibit B** is a correct copy of Firstline's Complaint in the instant matter, Docket No. 1:19-cv-01627, filed on January 29, 2019, along with the exhibits attached to the Complaint:

      a. Firstline Policy No. 8171734 insuring Landis Pig Roast, effective 1/3/17 to 1/3/18;

      b. [OMITTED – UNDERLYING COMPLAINT].

4.     Attached as **Exhibit C** is a correct copy of Z&D Realty's application for commercial insurance with Harford, dated 11/13/15, through the agent Bondi Insurance Agency.

5.     Attached as **Exhibit D** is a correct copy of Landis Pig Roast's application for business owners insurance with Firstline, dated 12/14/15, through the agent Bondi Insurance Agency.

6.     Attached as **Exhibit E** is a correct copy of Grant Plaza's application for commercial insurance with Pennock Insurance, dated 3/2/15, through the agent Martin Insurance Agency.

7.     Attached as **Exhibit F** is a correct copy of United States Liability Insurance Group's Inspection Report relating to Grant Plaza's insurance application, dated 4/3/15.

8.     Attached as **Exhibit G** is a correct copy of an email thread between Jean Bereznai of Martin Insurance and Nancy Mulvihill of Pennock Insurance, dated May 4, 2015.

9.     Attached as **Exhibit H** is a correct copy of an email thread between Jean Bereznai and Donna Mansi of Pennock Insurance, dated April 28 to April 29, 2015.

10.    Attached as **Exhibit I** is a correct copy of the Declaration Page of the USLI Policy No. CP 1607675B insuring Grant Plaza.

11.    Attached as **Exhibit J** is a correct copy of excerpts from the deposition of Zyggi Dobkowski on February 6, 2020.

12.    Attached as **Exhibit K** is a correct copy of excerpts from the deposition of Jean Bereznai on January 29, 2020.

I certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

COOPER LEVENSON, P.A.

By: _____

Dated: April 29, 2022            Louis Niedelman, Esq.
                                 Attorneys for Plaintiffs
                                 Harford Mutual Insurance Co.
                                 and Firstline National
                                 Insurance Co.

CLAC 6918122.1

3

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY
CAMDEN DIVISION

| | | |
|---|---|---|
| HARFORD MUTUAL INSURANCE COMPANY, | : | Civil Action |
| 200 North Main Street | : | |
| Bel Air, MD 21014 | : | |
|        Plaintiff, | : | |
| | : | |
| vs. | : No. | |
| | : | |
| Z&D REALTY, LLC, | : | |
| 623 E. Landis Avenue | : DECLARATORY JUDGMENT | |
| Vineland, NJ 08360 | : COMPLAINT | |
| And | : | |
| DENNIS COSBY | : | |
| 1123 Chestnut Avenue | : | |
| Vineland, NJ 08360 | : | |
| And | : | |
| EUGENE COSBY | : | |
| 1123 Chestnut Avenue | : | |
| Vineland, NJ 08360 | : | |
| And | : | |
| **(CONTINUED ON NEXT PAGE)** | : | |
| | : | |
|       Defendants. | : | |
| | : | |
| | : | |
| | : | |

Louis Niedelman, Esquire
Attorney Identification No: 254601969
COOPER LEVENSON, P.A.
1125 Atlantic Avenue, 3rd Floor
Atlantic City, NJ 08401
File No. 60696.10
Attorneys for Plaintiff Harford Mutual Insurance Company

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY
CAMDEN DIVISION

| | | |
|---|---|---|
| HARFORD MUTUAL INSURANCE COMPANY,<br>200 North Main Street<br>Bel Air, MD 21014<br>　　　　　Plaintiff, | : | Civil Action |
| vs. | : | No. |
| TERRY R. MAYES<br>221 Laurel Street<br>Vineland, NJ 08360<br>And<br>ZIGGY DOBKOWSKI<br>242 Mystic Drive<br>Egg Harbor Township, NJ 08234<br>And<br>DIANE DOBKOWSKI<br>242 Mystic Drive<br>Egg Harbor Township, NJ 08234<br>And<br>RAHEEM McCLENDON<br>619 East Landis Avenue<br>Vineland, NJ 08360 | : | DECLARATORY JUDGMENT<br>COMPLAINT |
| 　　　　　Defendants. | : | |

Louis Niedelman, Esquire
Attorney Identification No: 254601969
COOPER LEVENSON, P.A.
1125 Atlantic Avenue, 3rd Floor
Atlantic City, NJ 08401
File No. 60696.10
Attorneys for Plaintiff Harford Mutual Insurance Company

**COMPLAINT FOR DECLARATORY JUDGMENT PURSUANT TO
28 U.S.C. SECTIONS 2201 AND 2202**

Plaintiff Harford Mutual Insurance Company (hereinafter referred to as "Harford") is an insurance company domiciled in the State of Maryland with an address of 200 North Main Street, Bel Air, MD 21014, and in support of its Declaratory Judgment Complaint alleges as follows:

### JURISDICTION AND PARTIES

1.       The Federal Rules of Civil Procedure expressly authorize Declaratory Judgments by the adoption of the Declaratory Judgments Act, 28 U.S.C. § 2201, Federal Courts have jurisdiction to decide coverage issues under an insurance contract.

2.       Pursuant to 28 U.S.C. § 1332 this Court has diversity jurisdiction.

3.       Plaintiff Harford is an insurance company duly authorized by the Department of Insurance to issue insurance policies in the State of New Jersey and has its principal place of business located at 200 North Main Street, Bel Air, MD 21014.

4.       Defendant Z & D Realty, LLC, is a limited liability company domiciled in the State of New Jersey and is listed in their Harford insurance policy as doing business at 623 E. Landis Avenue, Vineland, New Jersey 08360.

5.       Defendant Dennis Cosby is an adult individual residing at 1123 East Chestnut Avenue, Apt. A-17, Vineland, New Jersey 08360.

6.       Defendant Eugene Cosby is an adult individual residing at 1123 East Chestnut Avenue, Apt. A-17, Vineland, New Jersey 08360.

7.       Defendant Terry R. Mayes, is an adult individual residing at 221 Laurel Street, Vineland, New Jersey 08360.

8.  Defendant Ziggy Dobkowski, is an adult individual residing at 242 Mystic Drive, Egg Harbor Township, New Jersey 08234.

9.  Defendant Diane Dobkowski is an adult individual residing at 242 Mystic Drive, Egg Harbor Township, New Jersey 08234.

10.  Defendant Raheem McClendon is an adult individual, who, to the best of Plaintiff's knowledge, resides in the State of New Jersey, and leased premises at the address of 619 East Landis Avenue, Vineland, New Jersey 08360.

11.  The amount in controversy exceeds $75,000.00.

12.  The present action involves a claim for declaratory relief by Harford arising out of a request for a defense and indemnity made to Harford by its insureds, Z & D Realty, LLC, Ziggy Dobkowski, Diane Dobkowski("the insured") under a Commercial General Liability policy known as policy number 9157994, which policy was in full force and effect on April 21, 2017, a true and correct copy of which application, policy and declaration pages are collectively attached as Exhibit A.

13.  The liability limits of the Harford policy issued under policy number 9157994 is one million dollars($1,000,000.00)

14.  There is currently a pending action venued in the Superior Court of New Jersey, Law Division, Cumberland County, No. CUM-L-00403-17, entitled Cosby, et al v. Z & D Realty, LLC, et al., and a true and correct copy of which Third Amended Complaint is attached as Exhibit B.

4

## FACTS

15.     Defendants Dennis Cosby, Defendant Eugene Cosby and Defendant Terry R. Mayes have asserted personal injury claims against co-defendants Z & D Realty, LLC,   Ziggy Dobkowski,  Diane Dobkowski and Raheem McClendon. See Exhibit B.

16.     According to the Cosby Complaint, on or about April 21, 2017 Defendant Dennis Cosby, Defendant Eugene Cosby and Defendant Terry R. Mayes were on the premises known as Grant Plaza, at 619 East Landis Avenue, Vineland, Cumberland County, State of New Jersey attending a party, and suffered injuries from gunshots when they were attacked by an unknown assailant/or assailants.

17.     Plaintiff issued this insurance policy to Z & D Realty, LLC for the premises located at 623 East Landis Avenue in Vineland, Cumberland County, State of New Jersey. These premises were characterized as "apartments and commercial offices." See Exhibit A. This insurance policy was issued based upon representations that were false, misleading and fraudulent as perpetrated by Defendants Z & D Realty, LLC, Ziggy Dobkowski, and Diane Dobkowski.  Plaintiff  relied upon these representations to its detriment.

18.     The underlying lawsuit(See Exhibit B) claims that the premises where this incident occurred was known as "Grant Plaza" with an address of 619 East Landis Avenue. This incident occurred during and following a party that involved an admission price, security guards, and alcohol service.  "Grant Plaza" was leased for this purpose by Defendant Raheem McClendon.

19.     Plaintiff did not intend to issue any insurance coverage protection to Defendants Z & D Realty, LLC, Ziggy Dobkowski, or Diane Dobkowski for any of the above activities at an address different than 623 Landis Avenue, Vineland, New Jersey or for a contracted party at a

location known as "Grant Plaza" where there were security guards, alcohol service and an admission price. Approximately 500 to 600 people were in attendance at this party. Plaintiff, in fact, issued its insurance coverage for 623 East Landis Avenue, Vineland, New Jersey characterized by Defendants Z & D Realty, LLC, Ziggy Dobkowski, and Diane Dobkowski as "apartments and commercial offices."

20.     Plaintiff also asserts multiple exclusions, endorsements and conditions within the policy that serve to deny any insurance coverage to Defendants Z & D Realty, LLC, Ziggy Dobkowski, and Diane Dobkowski.

## COUNT I
## FRAUD AND MISREPRESENTATION

21.     Plaintiff incorporates by reference all allegations set forth in the Complaint as if set forth fully herein.

22.     The property located at 619 East Landis Avenue, Vineland, New Jersey and/or Grant Plaza was never listed in the Harford Insurance Policy,

23.     The Plaintiff would not have insured the property located at 623 East Landis Avenue, Vineland, New Jersey, had it known that the insureds leased any premises for a 500 to 600 person party with alcohol service, security guards and an admission price.

## COUNT II
## FRAUD IN THE INDUCEMENT

24..     Plaintiff incorporates by reference all allegations set forth in the Complaint as if set forth fully herein.

25.     The elements of fraud in the inducement are as follows: "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or

recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance."

26.     The insured Defendants represented that the property and premises at  623 East. Landis Avenue, Vineland, New Jersey 08360 was to be used as an "apartment and  building-4 family or fewer w/mercantile/office up to 10 units" and "bank/mfg" and did not disclose that it or any non-insured adjacent properties owned by them were being leased for parties where alcohol was being served, where there were security guards, where 500 to 600 people attended  and where there was an admission price.

27.     The insured Defendants were aware of their actions because the applicable liquor license was issued in the name of the insured Defendants.

28.     The insured Defendants  did not disclose the actual and intended use of the property and premises at 619 or 623  E. Landis Avenue, Vineland, New Jersey,  knowing that Plaintiff would not issue coverage for same.

29.     Plaintiff  relied upon the representations of the insured Defendants prior to issuing the subject policy of insurance.

30.     Plaintiff relied to their substantial detriment upon the misrepresentations of the insured Defendants.

31.     Plaintiff would not have issued the subject policy if the insured Defendants had disclosed that the property was being used as a banquet, catering hall, or party venue, where there were security guards, where alcohol was served, where 500 to 600 people attended and where there was an admission price..

7

## COUNT III
## BREACH OF WARRANTY OF DEALING IN GOOD FAITH

32.    Plaintiff incorporates by reference all allegations set forth in the Complaint as if set forth fully herein.

33.    The insured Defendants' written application and representations to Plaintiff constituted an implied promise to provide information that was true and correct.

34.    The insured Defendants breached that promise without good cause and in bad faith and as a direct and proximate result of the Defendants' breach, the Plaintiff may suffer damages from the underlying pending action in the New Jersey State Court. See Exhibit A.

35.    The breach by the insured Defendants of their promise, which was willful, reckless and/or grossly negligent, was attended by such malice, insult, and abuse that it constitutes an independent tort.

## COUNT IV
## RESCISSION OF THE CONTRACT

36.    Plaintiff incorporates by reference all allegations set forth in the Complaint as if set forth fully herein.

37.    In addition to or in the alternative to the declaratory relief being sought in the nature of this declaratory judgment action, Plaintiff seeks a rescission of the subject insurance policy based upon the insured Defendants misrepresentations and fraudulent conduct in failing to disclose and intentionally withholding information regarding the actual use of the subject property and premises.

## CLAIMS FOR RELIEF

38.    Plaintiff incorporates by reference all allegations set forth in the Complaint as if set forth fully herein.

39.    The underlying state court action alleges that personal injuries were caused to the Plaintiffs as the result of negligent security, assault and battery, negligent hiring, service of alcohol to unknown intoxicated individuals, in addition to other intentional torts and negligence - based causes of action all occurring at 619 East Landis Avenue, Vineland, New Jersey. See Exhibit A. Defendant Z & D Realty, LLC , Ziggy Dobkowski and Diane Dobkowski provided notice of the underlying action to Harford and demanded that it provide a defense and indemnification for the claims.

40.    Upon information and belief, Harford denies that it owes any insurance coverage to Defendant Z & D Realty, LLC , Ziggy Dobkowski and Diane Dobkowski for these claims under the Harford policy.

41.    There is an actual and existing controversy among the parties concerning insurance coverage issued to Defendants Z & D Realty, LLC , Ziggy Dobkowski and Diane Dobkowski in the underlying action and the Plaintiffs who have also been named as Defendants herein.

42.    Pursuant to the clear language and the terms, provisions, conditions, exclusions and limitations of Harford's insurance policy, Harford is entitled to a declaration that Harford owes no duty of coverage or defense in the underlying state court action.

WHEREFORE, Plaintiff Harford respectfully requests that the Court:

a.    Declare that Harford has no duty to defend Z & D Realty, LLC , Ziggy Dobkowski and Diane Dobkowski in connection with the underlying state court action, Superior Court of New Jersey, Law Division, Cumberland County, No. CUM-L-00403-17, entitled Cosby, et al v. Z & D Realty, LLC, et al.;

Case 1:19-cv-01583-RMB-SAK Document 52 Filed 01/28/19 Page 10 of 10 PageID: 260
Case 1:18-cv-15838-RMB-SAK Document 72 Filed 01/04/22 Page 16 of 126 PageID: 302
PageID: 302

      b.     Declare that Harford has the right to withdraw immediately from any defense of Z & D Realty, LLC, Ziggy Dobkowski and Diane Dobkowski in the underlying state court action, Superior Court of New Jersey, Law Division, Cumberland County, No. CUM-L-00403-17, entitled <u>Cosby, et al v. Z & D Realty, LLC, et al.</u>;

      c.     Declare that Harford owes no obligation to indemnify any of the above defendant parties in the underlying state court action, Superior Court of New Jersey, Law Division, Cumberland County, No. CUM-L-00403-17, entitled <u>Cosby, et al v. Z & D Realty, LLC, et al.</u>;

      e.     Declare that the Harford policy owes no insurance coverage to Z & D Realty, LLC , Ziggy Dobkowski and Diane Dobkowski and demands the right to reimbursement of attorney fees and costs paid to date;

      f.     Declare that this Harford policy is rescinded.

COOPER LEVENSON, P.A.

Dated: 1-25-19

By:

LOUIS NIEDELMAN, ESQUIRE

CLAC 4588618.1

# EXHIBIT A

/85)

**The Harford Mutual Insurance Companies**
Bel Air, Maryland 21014-3544

**Company:** The Harford Mutual Insurance Company

**Policy Number:** 9157994    **Renewal of:** 9150943

**COMMERCIAL LINES POLICY**

**Named Insured and Mailing Address**

Z & D REALTY LLC
242 MYSTIC DR
EGG HARBOR TOWNSHIP, NJ 08234

**Agency Name and Address**

9051-BAS    BIONDI INSURANCE AGENCY, INC.
PO BOX 1418
VINELAND, NJ 08362
8566960700

**Policy Period: From**   01/03/2017 to 01/03/2018   at 12:01 A.M. Standard Time at your mailing address shown above.
In return for the payment of the premium and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy.

FORM OF BUSINESS: LIMITED LIABILITY COMPANY
BUSINESS DESCRIPTION: BUILDING OWNER

THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS INDICATED.
THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.

|  | PREMIUM |
|---|---|
| Commercial Property Coverage Part.....................................$ | 3,308 |
| Commercial General Liability Coverage Part...............................$ | 1,226 |
| NJ Property-Liability Insurance Guaranty Association Surcharge..........$ | 27 |
| Terrorism Risk Insurance Program Reauthorization Act of 2015 (Certified)$ | 17 |
| Total payable annually..................$ | 4,578 |

FORMS AND ENDORSEMENTS:   See Form Schedule

THESE DECLARATIONS TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE PART
DECLARATION(S), COVERAGE PART COVERAGE FORMS AND FORMS AND ENDORSEMENTS, IF ANY, ISSUED TO
FORM A PART THEREOF COMPLETES THIS POLICY.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2002.

CEmm

(1) 1999/09/01-1.00
ISSUE DATE: 11/21/2016 #1

Countersigned: _____

(Authorized Representative)    (Date)

**FILE COPY**

IMPORTANT NOTICES TO POLICYHOLDERS

ILMS001 (0117) FLOOD INSURANCE NOTICE
ILMS003 (0115) POLICYHOLDER DISCLOSURE NOTICE OF TERRORISM INSURANCE COVERAGE
ILMS016 (1015) CUSTOMER PRIVACY POLICY
ILMS11  (0604) ADVISORY NOTICE TO POLICYHOLDERS - OFAC
ILMS13-2      UNDERSTANDING THE AUDIT PROCESS COULD SAVE YOU MONEY
ILN001  (0903) FRAUD STATEMENT

COMMON POLICY FORM SCHEDULE

FORMS AND ENDORSEMENTS APPLYING TO AND MADE A PART OF THIS POLICY AT TIME OF ISSUE:

IL0017  (1198) COMMON POLICY CONDITIONS



(2) POLICY: 9157994 1999/09/01-1.00
ISSUE DATE: 11/21/2016 #1

### The Harford Mutual Insurance Companies
Bel Air, Maryland 21014-3544

Company: The Harford Mutual Insurance Company

Policy Number: 9157994    Renewal of: 9150943

**COMMERCIAL PROPERTY COVERAGE PART**
DECLARATIONS

**Named Insured and Mailing Address**
Z & D REALTY LLC
242 MYSTIC DR
EGG HARBOR TOWNSHIP, NJ 08234

**Agency Name and Address**
9051-BAS   BIONDI INSURANCE AGENCY, INC.
PO BOX 1418
VINELAND, NJ 08362
8566960700

Policy Period:   From   01/03/2017 to 01/03/2018  at 12:01 A.M. Standard Time at your mailing address shown above.
In return for the payment of the premium and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy.

DESCRIBED PREMISES: PREMISES 1, BUILDING 1

LOCATION INFORMATION:
623 E LANDIS AVE
VINELAND, NJ 08360

Construction: Joisted Masonry
Protection Class: 4

OCCUPANCY: Apartment Bldg. - 4 family or fewer w/mercantile/office Up to 10 Units

| Coverage | Deductible | Covered Cause of Loss | Coins (%) | Limit of Insurance | Premium |
|----------|-----------|----------------------|-----------|-------------------|---------|
| BUILDING....................$ 1,000 | | Special | 80 | $ 1,040,000 | $   2,673 |
| -   Replacement Cost | | | | | |
| BUSINESS INCOME (3)........ | | Special | 100 | $   100,000 | $   136 |

(3) POLICY: 9157994 1999/09/01-1.00
ISSUE DATE: 11/21/2016 #1

**FILE COPY**

IMPORTANT NOTICES TO POLICYHOLDERS

| CPMS12-1 | POLICYHOLDERS NOTICE - EQUIPMENT BREAKDOWN ENHANCEMENT |
| ILMS14-2 | NOTICE TO POLICYHOLDERS REGARDING INFLATION PROTECTION & BLDG VALUES |
| ILNJ03-1 | NEW JERSEY EARTHQUAKE INSURANCE AVAILABILITY NOTICE |

COMMERCIAL PROPERTY FORM SCHEDULE

FORMS AND ENDORSEMENTS APPLYING TO AND MADE A PART OF THIS POLICY AT TIME OF ISSUE:

| CP0010 | (1012) | BUILDING AND PERSONAL PROPERTY COVERAGE FORM |
| CP0030 | (1012) | BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM |
| CP0090 | (0788) | COMMERCIAL PROPERTY CONDITIONS |
| CP0140 | (0706) | EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA |
| CP1030 | (1012) | CAUSES OF LOSS - SPECIAL FORM |
| CPHG41 | (0413) | EQUIPMENT BREAKDOWN GREEN ENVIRONMENTAL AND EFFICIENCY IMPROVEMENTS |
| CPHG42 | (0413) | GREEN ENVIRONMENTAL AND EFFICIENCY IMPROVEMENTS |
| CPHG46 | (0913) | EXCL OF LOSS DUE TO BY-PRODUCTS OF OPERATIONS FOR RENTAL PROP |
| IL0111 | (1103) | NEW JERSEY CHANGES |
| IL0208 | (0907) | NEW JERSEY CHANGES - CANCELLATION AND NONRENEWAL |
| IL0952 | (0115) | CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM |
| CPHG10 | (0413) | ADDITIONAL COVERAGE ENDORSEMENT (ACE)............................350.00 |
| CPHG40 | (0413) | EQUIPMENT BREAKDOWN ENHANCEMENT ENDORSEMENT....................143.00 |

SURCHARGES APPLIED TO THIS POLICY

NJ Property-Liability Insurance Guaranty Association Surcharge.......................20.00

OTHER CHARGES APPLIED TO THIS POLICY

Terrorism Risk Insurance Program Reauthorization Act of 2015 - Certified Acts -
Premium Charged..................................................................10.00
Fire Following Exception - Certified Acts of Terrorism - Premium Charged.............6.00

(4) POLICY: 9157994 1999/09/01-1.00
ISSUE DATE: 11/21/2016 #1

DEC-GL-97(1)

**The Harford Mutual Insurance Companies**

Bel Air, Maryland 21014-3544

**Company:** The Harford Mutual Insurance Company

**Policy Number:** 9157994    **Renewal of:** 9150943

**GENERAL LIABILITY COVERAGE**
PART DECLARATIONS

**Named Insured and Mailing Address**

Z & D REALTY LLC
242 MYSTIC DR
EGG HARBOR TOWNSHIP, NJ 08234

**Agency Name and Address**

9051-BAS   BIONDI INSURANCE AGENCY, INC.
PO BOX 1418
VINELAND, NJ 08362
8566960700

**Policy Period:** From   01/03/2017 to 01/03/2018   at 12:01 A.M. Standard Time at your mailing address shown above.
In return for the payment of the premium and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy.

**THIS POLICY CONTAINS AGGREGATE LIMITS; REFER TO SECTION III - LIMITS OF INSURANCE FOR DETAILS.**

---

LIMITS OF INSURANCE

Each Occurrence..........................$ 1,000,000
   Damage to Premises Rented To You......$    100,000 (Any one fire)
   Medical Expense.......................$     5,000 (Any one person)
Personal & Advertising Injury...........$ 1,000,000 (Any one person or organization)
General Aggregate....................................................$ 2,000,000
Products/Completed Operations Aggregate..............................$ 2,000,000

---

ADDRESS OF ALL PREMISES YOU OWN, RENT OR OCCUPY:   See Liability Schedule

---

FORMS AND ENDORSEMENTS:   See Form Schedule

---

PREMIUM:   TOTAL ADVANCE PREMIUM:   $993

LIABILITY SCHEDULE:

   Classification:                  Premium Basis: Area per 1,000 sq. ft.
     61217 Building or Premises-bank,office-merc,mfg(lessors risk only) fp

   Location Information:
     623 E LANDIS AVE
     VINELAND, NJ 08360

| Coverage | Exposure | Rate | Premium |
|---|---|---|---|
| Premises/Operations | 4,067 | $ 146.877 $ | 597 |
| Products/Completed Operations | 4,067 | | Included* |

   Classification:                  Premium Basis: Per Unit
     60010 Apartment Buildings

   Location Information:
     623 E LANDIS AVE
     VINELAND, NJ 08360

| Coverage | Exposure | Rate | Premium |
|---|---|---|---|
| Premises/Operations | 4 | $ 98.978 $ | 396 |
| Products/Completed Operations | 4 | | Included* |

---

*Products/Completed Operations are subject to the General Aggregate Limit

(5) POLICY: 9157994 1999/09/01-1.00
ISSUE DATE: 11/21/2016 #1

**FILE COPY**

---

IMPORTANT NOTICES TO POLICYHOLDERS
-----------------------------------
CGMS002 (1116) GENERAL LIABILITY ENDORSEMENTS ADVISORY NOTICE TO POLICYHOLDERS
CGNJ00-1(0400) LEAD LIABILITY COVERAGE
ILMS013 (0416) POLICYHOLDER NOTICE REGARDING CYBER LIABILITY COVERAGE
ILMS014 (0416) NOTICE REGARDING CLAIMS-MADE COVERAGE ON YOUR POLICY
ILMS015 (0416) POLICYHOLDER NOTICE REGARDING EMPLOYMENT PRACTICES LIABILITY COVERAGE

---

GENERAL LIABILITY FORM SCHEDULE
-----------------------------------
FORMS AND ENDORSEMENTS APPLYING TO AND MADE A PART OF THIS POLICY AT TIME OF ISSUE:
-----------------------------------
CG0001   (0413) COMMERCIAL GENERAL LIABILITY COVERAGE FORM
CG2106   (0514) EXCLUSION-ACCESS/DISCLOSURE W/LTD BODILY INJURY EXCEPTION
CG2109   (0615) EXCLUSION - UNMANNED AIRCRAFT
CG2132   (0509) COMMUNICABLE DISEASE EXCLUSION
CG2167   (1204) FUNGI OR BACTERIA EXCLUSION
CG2171   (0115) EXCLUSION OF OTHER ACTS OF TERRORISM COMMITTED OUTSIDE THE US; CAP
CG2176   (0115) EXCLUSION OF PUNITIVE DAMAGES RELATED TO A CERTIFIED ACT OF TERRORISM
CG2196   (0305) SILICA OR SILICA-RELATED DUST EXCLUSION
CG2426   (0413) AMENDMENT OF INSURED CONTRACT DEFINITION
CG2620   (1093) NEW JERSEY CHANGES - LOSS INFORMATION
CG2653   (0699) NEW JERSEY CHANGES-COVERAGE & EXCLUSION FOR HAZARDS OF LEAD
CGHG21   (0105) ASBESTOS EXCLUSION ENDORSEMENT
CGHG29   (0413) LIABILITY ADDITIONAL COVERAGE ENDORSEMENT
CGHG31   (0413) TOBACCO HEALTH HAZARD EXCLUSION
IL0021   (0908) NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT (BROAD FORM)
IL0141   (0908) NEW JERSEY CHANGES - CIVIL UNION
IL0208   (0907) NEW JERSEY CHANGES - CANCELLATION AND NONRENEWAL
CG2101   (1185) EXCLUSION - ATHLETIC OR SPORTS PARTICIPANTS
         Description of Operations: BUILDING OWNER

CG2144   (0798) LIMITATION OF COVERAGE TO DESIGNATED PREMISES/PROJECT
                       Premises: LOCATIONS LISTED ON LIABILITY SCHEDULE

CG2151   (0413) AMENDMENT OF LIQUOR LIAB. EXCL-EXCEPT SCHED. ACTIVITIES
         Description of Premises: None
         Description of Activities: No Scheduled Activities

CGHG80   (0416) EMPLOYMENT PRACTICES LIABILITY ENDORSEMENT.....................173.00
         ****THIS COVERAGE IS CLAIMS MADE, READ YOUR POLICY CAREFULLY****
         ****DEFENSE COSTS ARE WITHIN POLICY LIMITS****
                   Each Claim Limit: $100,000
                   Aggregate Limit: $100,000
             Deductible Each Claim: $5,000 Each Claim
                   Retroactive Date: 01/03/2016

ILHG07   (0416) CYBER LIABILITY ENDORSEMENT CLAIMS-MADE &  REPORTED COVERAGE....60.00
         ****THIS COVERAGE IS CLAIMS MADE, READ YOUR POLICY CAREFULLY****
         ****DEFENSE COSTS ARE WITHIN POLICY LIMITS****
                   Retroactive Date: 01/03/2016

---

SURCHARGES APPLIED TO THIS POLICY
-----------------------------------
NJ Property-Liability Insurance Guaranty Association Surcharge......................7.00

OTHER CHARGES APPLIED TO THIS POLICY

Terrorism Risk Insurance Program Reauthorization Act of 2015 - Certified Acts -
Premium Charged.....................................................................7.00



(7) POLICY: 9157994 1999/09/01-1.00
ISSUE DATE: 11/21/2016 #1

## NOTICE OF CANCELLATION, NONRENEWAL OR DECLINATION OF INSURANCE
(New Jersey)

| NAME AND ADDRESS OF INSURANCE COMPANY | The Harford Mutual Insurance Company<br>200 N. Main Street<br><br>Bel Air    MD    21014<br>Tel: (410) 838-4000 | KIND OF POLICY:<br>Commercial Package Policy |
|---|---|---|

POLICY/APPLICATION/BINDER NO.: 9157994

EFFECTIVE DATE OF NOTICE:
04/03/2017    12:01 AM
(DATE)    (HOUR-STANDARD TIME AT THE ADDRESS OF THE INSURED)

DATE OF MAILING: 03/14/2017

| NAME AND ADDRESS OF INSURED | Z & D REALTY LLC<br>242 MYSTIC DR<br><br>EGG HARBOR TOWNSHIP    NJ    08234 | NAME AND ADDRESS OF AGENT/BROKER: Tel: 8568960700<br>Biondi Insurance Agency, Inc.   (8051-BAS)<br>PO Box 1418<br><br>Vineland    NJ    08362 |
|---|---|---|

**(Applicable item marked "X")**

**Cancellation**

☒ You are hereby notified in accordance with the terms and conditions of the above mentioned policy, and in accordance with law, that your insurance will cease at and from the hour and date mentioned above for the reason(s) stated in this form.

☒ If your insurance is being cancelled due to nonpayment of premium, cancellation can be avoided by paying the premium due prior to the effective date of cancellation. $ _____ is the amount of premium that was due on _____.

See the "Important Notices" section for other information that may apply.

**Premium Adjustment**

☐ Unearned premium, if any, will be returned to you within 60 days of the effective date of cancellation.

☐ The excess of paid premium, if any, above the pro rata premium for the expired time, (if not tendered) will be refunded upon demand.

☐ A bill for the premium earned to the time of cancellation will be forwarded in due course.

☐ Other: _____

**Nonrenewal**

☐ You are hereby notified in accordance with the terms and conditions of the above mentioned policy, and in accordance with law, that the above mentioned policy will expire effective at and from the hour and date mentioned above and the policy will NOT be renewed for the reason(s) stated in this form.

See the "Important Notices" section for other information that may apply.

**Declination of Insurance**

☐ Your application for the kind of insurance mentioned above has been declined.

See the "Important Notices" section for other information that may apply.

**Important Notices**

☒ Reason(s) for cancellation, nonrenewal or declination (reason(s) stated only if this item is marked):
Nonpayment of premium. You are hereby advised that the amount of premium due is $1,162.50 prior
to 12:01 am on 04/03/2017 payable to Harford Mutual.

_____
_____
_____
_____

☐ FILING OF COMPLAINT: If you wish, you may file a written complaint concerning this cancellation or nonrenewal (except in the case of nonpayment of premium) with the New Jersey Department of Banking and Insurance, Division of Enforcement and Consumer Protection, Consumer Inquiry and Case Preparation Unit, 20 West State Street, 9th Floor, P. O. Box 471, Trenton, NJ 08625 or electronically at http://www.state.nj.us/dobi/consumer.htm. Should you decide to file a complaint, the Department should be contacted immediately.

☐ Automobile Replacement Insurance: You have been notified herewith that this Company will no longer be carrying your automobile insurance. You are possibly eligible for automobile insurance through another insurer or under the New Jersey Automobile Insurance Plan. Please contact your insurance agent for more information.

☐ Appeal to Automobile Insurance Plan Governing Committee: As your policy was one obtained through the New Jersey Automobile Insurance Plan, you are hereby advised, regarding the above notification of cancellation, that you have the right to appeal to the Governing Committee of the Plan, 10000 Midatlantic Drive, Suite 403 West, Mount Laurel, New Jersey 08054.

☐ Additional Information Regarding the Reason(s) for Cancellation, Nonrenewal or Declination: You have the right to know the specific items of information that support the reason(s) given for this decision and the identity of the source of that information. You also have the right to see and obtain copies of documents relating to this decision.

If you ask us to correct, amend, or delete any information about you in our files and if we refuse to do so, you have the right to give us a concise statement of what you believe is the correct information. We will put your statement in our file so that anyone reviewing your file will see it.

If you would like additional information concerning this action, state law requires that you submit a written request within ninety (90) business days of the date this notice was mailed to you. Please send your request to:

_____
_____
(Name and address of the person or department to contact for additional information.)

## NOTICE OF CANCELLATION, NONRENEWAL OR DECLINATION OF INSURANCE
(New Jersey)

| NAME AND ADDRESS OF INSURANCE COMPANY | The Harford Mutual Insurance Company<br>200 N. Main Street<br><br>Bel Air  MD  21014<br>Tel: (410) 838-4000 | KIND OF POLICY:<br>Commercial Package Policy |
|---|---|---|
| | | POLICY/APPLICATION/BINDER NO.: D157994 |
| | | EFFECTIVE DATE OF NOTICE:<br>04/03/2017        12:01 AM<br>(DATE)   (HOUR-STANDARD TIME AT THE ADDRESS OF THE INSURED) |
| | | DATE OF MAILING: 03/14/2017 |
| NAME AND ADDRESS OF INSURED | Z & O REALTY LLC<br>242  MYSTIC DR<br><br>EGG HARBOR TOWNSHIP   NJ   08234 | NAME AND ADDRESS OF AGENT/BROKER: Tel: 8566980700<br>Biondi Insurance Agency, Inc.   (9051-BAS)<br>PO Box 1418<br><br>Vineland   NJ   08362 |

**Important Notices cont'd**

☐ Copy to Designated Third Party: You are hereby notified that a copy of this notice was also sent to the following designated third party:

_____
(Name and address of the designated third party.)

☐ Consumer Report: In compliance with the Fair Credit Reporting Act (FCRA), as amended, you are hereby informed that the action taken above is being taken wholly or partly because of information contained in a consumer report from the following consumer reporting agency:

(Name) _____ (Phone Number) _____
(Address)

Please see additional information for a disclosure of your rights under this federal law.

### Additional information regarding your rights under the Fair Credit Reporting Act (FCRA)

**Pursuant to the FCRA, you are informed that:**

The consumer reporting agency identified on this form did not make any decisions regarding the stated insurance policy. Therefore, the consumer reporting agency would not be able to provide you with the specific reasons why the insurance company is taking the present action.

You have the right to obtain within 60 days of the receipt of this notice a free copy of your consumer report from the consumer reporting agency which has been identified on this form.

You have the right to dispute inaccurate information by contacting the consumer reporting agency directly. Once you have directly notified the consumer reporting agency of your dispute, the agency must, within a reasonable period of time reinvestigate and record the current status of the disputed information. If after reinvestigation, such information is found to be inaccurate or unverifiable, such information must be promptly deleted from your records. If the reinvestigation does not resolve the dispute, you may file a brief statement setting forth the nature of the dispute with the consumer reporting agency. Your filed statement will then be included or summarized in any subsequent consumer report containing the information in question.

For complete information regarding the FCRA, please refer to The Code of the Laws of the United States of America, Title 15, Chapter 41, Subchapter III, (15 U.S.C. §1681 et seq.).

_____
AUTHORIZED REPRESENTATIVE

**UNITED STATES POSTAL SERVICE.**

**Certificate Of Mailing**

To pay fee, affix stamps or meter postage here.

This Certificate of Mailing provides evidence that mail has been presented to USPS® for mailing. This form may be used for domestic and international mail.

From: The Harford Mutual Insurance Company

200 N. Main Street

Bel Air                    MD        21014

To: Z & D REALTY LLC

242  MYSTIC DR

EGG HARBOR TOWNSHIP        NJ        08234

Postmark Here

PS Form **3817**, April 2007  PSN 7530-02-000-9065 - Facsimile

---

(If notice of cancellation, nonrenewal or declination
is mailed to the insured, complete the following.)

**CERTIFICATION OF MAILING**

I hereby certify that I personally mailed in the U. S. Post Office at the place and time stamped hereon, a notice of cancellation, nonrenewal or declination to the insured, an exact copy attached hereto and at said time received from the U. S. Postal Service the receipt made a part hereof or attached hereto.

Applying to Policy # 9157994

Signed on this Date of Mailing 03/14/2017

*Martha A Shoher*

Signature

US Postal Form 3817 Facsimile (04/07)                    COMPANY'S COPY

**RESCIND NOTICE**

| NAME AND ADDRESS OF INSURANCE COMPANY | The Harford Mutual Insurance Company<br>200 N. Main Street<br>Bel Air     MD     21014<br>Tel: (410) 838-4000 | | KIND OF POLICY:<br>Commercial Package Policy |
|---|---|---|---|

| | | | POLICY/APPLICATION/BINDER NO.: 9157994 |
|---|---|---|---|
| | | | DATE OF MAILING: 03/22/2017 |

| NAME AND ADDRESS OF INSURED | Z & D REALTY LLC<br>242 MYSTIC DR<br>EGG HARBOR TOWNSHIP     NJ    08234 | NAME AND ADDRESS OF AGENT/BROKER:    Tel: 8566960700<br>Blondi Insurance Agency, Inc.   (9051-BAS)<br>PO Box 1418<br>Vineland      NJ      08362 |
|---|---|---|

We mailed a Notice of Cancellation or Nonrenewal to you dated <u>03/14/2017</u> for the policy number shown above. The notice was sent because the premium had not been paid in accordance with the policy terms.

We have received the premium payment. The notice is rescinded unless payment made by check is not honored by the bank. Then, the cancellation notice already mailed to you continues to apply.

If you have received other notices of cancellation, this rescission does not affect those notices.

Your insurance protection is valuable to you. Please make all future payments on time to prevent a lapse in this important coverage.

AUTHORIZED REPRESENTATIVE

NAME AND
ADDRESS OF
ADDITIONAL
INTEREST

(E)GU 581 a (Ed. 6-00)            COMPANY'S COPY            Page 1 of 1

## NOTICE OF CANCELLATION, NONRENEWAL OR DECLINATION OF INSURANCE
(New Jersey)

| | |
|---|---|
| NAME AND ADDRESS OF INSURANCE COMPANY | The Harford Mutual Insurance Company<br>200 N. Main Street<br><br>Bel Air    MD    21014<br>Tel: (410) 836-4000 |

| | |
|---|---|
| KIND OF POLICY:<br>Commercial Package Policy | |
| POLICY/APPLICATION/BINDER NO.: 9157994 | |
| EFFECTIVE DATE OF NOTICE:<br>01/03/2018<br>(DATE) | 12:01 AM<br>(MAJR STANDARD TIME AT THE ADDRESS OF THE INSURED) |
| DATE OF MAILING: 11/01/2017 | |

| | |
|---|---|
| NAME AND ADDRESS OF INSURED | Z & D REALTY LLC<br>242 MYSTIC DR<br><br>EGG HARBOR TOWNSHIP    NJ    08234 |

| | |
|---|---|
| NAME AND ADDRESS OF AGENT/BROKER: Tel: 8566960700<br>Biondi Insurance Agency, Inc. (0051-BAS)<br>PO Box 1416<br><br>Vineland    NJ    08362 | |

(Applicable Item marked "X")

**Cancellation** ☐ You are hereby notified in accordance with the terms and conditions of the above mentioned policy, and in accordance with law, that your insurance will cease at and from the hour and date mentioned above for the **reason(s)** stated in this form.

     ☐ If your insurance is being cancelled **due to nonpayment of premium**, cancellation can be avoided by paying the premium due prior to the effective date of cancellation. $_____ is the amount of premium that was due on _____.

See the "Important Notices" section for other information that may apply.

**Premium Adjustment**
☐ Unearned premium, if any, will be returned to you within 60 days of the effective date of cancellation.
☐ The excess of paid premium, if any, above the pro rata premium for the expired time, (if not tendered) will be refunded upon demand.
☐ A bill for the premium earned to the time of cancellation will be forwarded in due course.
☐ Other: _____

**Nonrenewal** ☒ You are hereby notified in accordance with the terms and conditions of the above mentioned policy, and in accordance with law, that the above mentioned policy will expire effective at and from the hour and date mentioned above and the policy will NOT be renewed for the **reason(s)** stated in this form.

See the "Important Notices" section for other information that may apply.

**Declination of Insurance** ☐ Your application for the kind of insurance mentioned above has been declined.

See the "Important Notices" section for other information that may apply.

**Important Notices**
☒ Reason(s) for cancellation, nonrenewal or declination (reason(s) stated only if this item is marked):
THE INSURED NO LONGER MEETS UNDERWRITING GUIDELINES DUE TO UNFAVORABLE LOSS EXPERIENCE (100% OVER THE LAST 2 YEARS). THE INSURED'S LOSS RATIO IS CURRENTLY 609.44% FOR THE LAST TWO YEAR POLICY TERM.
(SEE ATTACHED LOSS REPORT.)

☒ **FILING OF COMPLAINT:** If you wish, you may file a written complaint concerning this cancellation or nonrenewal (except in the case of nonpayment of premium) with the New Jersey Department of Banking and Insurance, Division of Enforcement and Consumer Protection, Consumer Inquiry and Case Preparation Unit, 20 West State Street, 9th Floor, P. O. Box 471, Trenton, NJ 08625 or electronically at http://www.state.nj.us/dobi/consumer.htm. Should you decide to file a complaint, the Department should be contacted immediately.

☐ **Automobile Replacement Insurance:** You have been notified herewith that this Company will no longer be carrying your automobile insurance. You are possibly eligible for automobile insurance through another insurer or under the New Jersey Automobile Insurance Plan. Please contact your insurance agent for more information.

☐ **Appeal to Automobile Insurance Plan Governing Committee:** As your policy was one obtained through the New Jersey Automobile Insurance Plan, you are hereby advised, regarding the above notification of cancellation, that you have the right to appeal to the Governing Committee of the Plan, 10000 Midatlantic Drive, Suite 403 West, Mount Laurel, New Jersey 08054.

☐ **Additional Information Regarding the Reason(s) for Cancellation, Nonrenewal or Declination:** You have the right to know the specific items of information that support the reason(s) given for this decision and the identity of the source of that information. You also have the right to see and obtain copies of documents relating to this decision.

If you ask us to correct, amend, or delete any information about you in our files and if we refuse to do so, you have the right to give us a concise statement of what you believe is the correct information. We will put your statement in our file so that anyone reviewing your file will see it.

If you would like additional information concerning this action, state law requires that you submit a written request within ninety (90) business days of the date this notice was mailed to you. Please send your request to:

_____

(Name and address of the person or department to contact for additional information.)

## NOTICE OF CANCELLATION, NONRENEWAL OR DECLINATION OF INSURANCE
(New Jersey)

| NAME AND ADDRESS OF INSURANCE COMPANY | The Harford Mutual Insurance Company<br>200 N. Main Street<br>Bel Air  MD  21014<br>Tel: (410) 838-4000 | KIND OF POLICY:<br>Commercial Package Policy |
|---|---|---|
| | | POLICY/APPLICATION/BINDER NO.: 9157994 |
| | | EFFECTIVE DATE OF NOTICE:<br>01/03/2018  12:01 AM<br>(DATE)  (HOUR STANDARD TIME AT THE ADDRESS OF THE PREMISES) |
| | | DATE OF MAILING: 11/01/2017 |
| NAME AND ADDRESS OF INSURED | Z & D REALTY LLC<br>242  MYSTIC DR<br>EGG HARBOR TOWNSHIP  NJ  08234 | NAME AND ADDRESS OF AGENT/BROKER: Tel: 8566960700<br>Biondi Insurance Agency, Inc.  (9051-BAS)<br>PO Box 1418<br>Vineland  NJ  08362 |

**Important Notices cont'd**

☐ Copy to Designated Third Party: You are hereby notified that a copy of this notice was also sent to the following designated third party:

_____
(Name and address of the designated third party)

☐ Consumer Report: In compliance with the Fair Credit Reporting Act (FCRA), as amended, you are hereby informed that the action taken above is being taken wholly or partly because of information contained in a consumer report from the following consumer reporting agency;

(Name) _____  (Phone Number) _____
(Address) _____

Please see additional information for a disclosure of your rights under this federal law.

### Additional information regarding your rights under the Fair Credit Reporting Act (FCRA)

**Pursuant to the FCRA, you are informed that:**

The consumer reporting agency identified on this form did not make any decisions regarding the stated insurance policy. Therefore, the consumer reporting agency would not be able to provide you with the specific reasons why the insurance company is taking the present action.

You have the right to obtain within 60 days of the receipt of this notice a free copy of your consumer report from the consumer reporting agency which has been identified on this form.

You have the right to dispute inaccurate information by contacting the consumer reporting agency directly. Once you have directly notified the consumer reporting agency of your dispute, the agency must, within a reasonable period of time reinvestigate and record the current status of the disputed information. If after reinvestigation, such information is found to be inaccurate or unverifiable, such information must be promptly deleted from your records. If the reinvestigation does not resolve the dispute, you may file a brief statement setting forth the nature of the dispute with the consumer reporting agency. Your filed statement will then be included or summarized in any subsequent consumer report containing the information in question.

For complete information regarding the FCRA, please refer to The Code of the Laws of the United States of America, Title 15, Chapter 41, Subchapter III, (15 U.S.C. §1681 et seq.).

Sara C. Michaels

AUTHORIZED REPRESENTATIVE

**UNITED STATES POSTAL SERVICE.**

**Certificate Of Mailing**

To pay fee, affix stamps or meter postage here.

This Certificate of Mailing provides evidence that mail has been presented to USPS® for mailing. This form may be used for domestic and international mail.

From:

The Harford Mutual Insurance Company

200 N. Main Street

| Bel Air | MD | 21014 |

To:

Z & D REALTY LLC

242  MYSTIC DR

Postmark Here

| EGG HARBOR TOWNSHIP | NJ | 08234 |

PS Form 3817, April 2007  PSN 7530-02-000-9065 - Facsimile

(If notice of cancellation, nonrenewal or declination is mailed to the insured, complete the following.)

**CERTIFICATION OF MAILING**

I hereby certify that I personally mailed in the U. S. Post Office at the place and time stamped hereon, a notice of cancellation, nonrenewal or declination to the insured, an exact copy attached hereto and at said time received from the U. S. Postal Service the receipt made a part hereof or attached hereto.

Applying to Policy # 9157994

Signed on this Date of Mailing 11/01/2017

Signature

US Postal Form 3817 Facsimile (04/07)                    **COMPANY'S COPY**

**Flood Insurance Notice**

We are advising you that your policy does **NOT** provide coverage for flood. You will **NOT** have coverage for property damage due to flood, surface water, waves, tidal water, or any other overflow of a body of water unless you take steps to purchase a separate policy for Flood Insurance.

This Notice does not expand or increase coverage in your policy or any endorsement to that policy. The policy and accompanying endorsements remain subject to all exclusions, limitations and conditions.

If you would like more information about obtaining flood insurance, please contact your insurer, your insurance agent or you can contact the National Flood Insurance Program direct. If a flood policy is purchased through the National Flood Insurance Program, contents coverage may be available for an additional premium. For more information about the National Flood Insurance Program call 1-888-CALL-FLOOD ext. 445, TDD# 1-800-427-5593 or access their website at http://www.fema.gov/nfip/

**The Harford Mutual Insurance Companies**
Bel Air, Maryland 21014-3544

Company:

Policy Number:          Renewal of:

Named Insured and Mailing Address              Agency Name and Address

# POLICYHOLDER DISCLOSURE NOTICE OF TERRORISM INSURANCE COVERAGE

Applicable to the following policies and coverages if included:

Commercial Property, Commercial Liability, Commercial Inland Marine, Commercial Crime, excluding Theft & Burglary, Businessowners Policies, and Commercial Umbrella Policies

Coverage for acts of terrorism is included in your policy. You are hereby notified that under the Terrorism Risk Insurance Act, as amended in 2015, the definition of act of terrorism has changed. As defined in Section 102(1) of the Act: The term "act of terrorism" means any act or acts that are certified by the Secretary of the Treasury - in consultation with the Secretary of Homeland Security, and the Attorney General of the United States - to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion. Under your coverage, any losses resulting from certified acts of terrorism may be partially reimbursed by the United States Government under a formula established by the Terrorism Risk Insurance Act, as amended. However, your policy may contain other exclusions which might affect your coverage, such as an exclusion for nuclear events. Under the formula, the United States Government generally reimburses 85% through 2015; 84% beginning on January 1, 2016; 83% beginning on January 1, 2017; 82% beginning on January 1, 2018; 81% beginning on January 1, 2019 and 80% beginning on January 1, 2020, of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage. The Terrorism Risk Insurance Act, as amended, contains a $100 billion cap that limits U.S. Government reimbursement as well as insurers' liability for losses resulting from certified acts of terrorism when the amount of such losses exceeds $100 billion in any one calendar year. If the aggregate insured losses for all insurers exceed $100 billion, your coverage may be reduced.

The portion of your annual premium that is attributable to coverage for acts of terrorism included in this policy is $_____ and does not include any charges for the portion of losses covered by the United States government under the Act.

**REJECTION OF TERRORISM INSURANCE**

UNDER FEDERAL LAW, YOU HAVE THIRTY (30) DAYS TO CONSIDER THIS OFFER OF COVERAGE FOR TERRORIST ACTS. YOU MAY REJECT COVERAGE BY SIGNING THE STATEMENT BELOW AND RETURNING THIS NOTICE. ONCE WE RECEIVE THE SIGNED REJECTION STATEMENT, TERRORISM EXCLUSIONS WILL BE ADDED TO YOUR POLICY AND YOU WILL NOT BE COVERED FOR LOSSES ARISING FROM TERRORIST ACTS.

☐  I hereby decline to purchase terrorism coverage for certified acts of terrorism. I understand that I will have no coverage for losses resulting from certified acts of terrorism under this policy.

_____     _____     _____
Signature of Policyholder          Printed Name of Policyholder          Date

This policyholder notice provides no coverage nor can it be construed to replace any provision of your policy. The coverage provided by your policy for certified acts of terrorism and all other coverage is limited by the exclusions, limits, terms and conditions of your policy. If there is any conflict between the policy and this notice, the provisions of the policy shall prevail. Nothing in this notice should be construed as an offer to reinstate coverage for a cancelled/expired policy.

ILMS003 0115                                                                    Page 1 or 1

ADVISORY NOTICE TO POLICYHOLDERS

U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL
("OFAC")

NO COVERAGE IS PROVIDED BY THIS POLICYHOLDER NOTICE NOR CAN IT BE
CONSTRUED TO REPLACE ANY PROVISIONS OF YOUR POLICY. YOU SHOULD
READ YOUR POLICY AND REVIEW YOUR DECLARATIONS PAGE FOR
COMPLETE INFORMATION ON THE COVERAGES YOU ARE PROVIDED.

THIS NOTICE PROVIDES INFORMATION CONCERNING POSSIBLE IMPACT ON
YOUR INSURANCE COVERAGE DUE TO DIRECTIVES ISSUED BY OFAC.

PLEASE READ THIS NOTICE CAREFULLY

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions
policy, based on Presidential declarations of "national emergency". OFAC has
identified and listed numerous:

> Foreign agents;
> Front organizations;
> Terrorists;
> Terrorist organizations; and
> Narcotics traffickers;

As "Specially Designated Nationals and Blocked Persons". This list can be located on
the United States Treasury's web site - http://www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured,
or any person or entity claiming the benefits of this insurance has violated U.S.
sanctions law or is a Specially Designated National and Blocked Person, as identified
by OFAC, this insurance will be considered a blocked or frozen contract and all
provisions of this insurance are immediately subject to OFAC. When an insurance
policy is considered to be such a blocked or frozen contract, no payments nor premium
refunds may be made without authorization from OFAC. Other limitations on the
premiums and payments also apply.

    Copyright, Insurance Services Office, Inc. 2003    ILMS11 (0604)

# Understanding the Audit Process Could Save You Money
## By The Harford Mutual Insurance Companies

1. <u>What is an audit?</u> A report of collected information about an insured's operation and accounting records used to determine the actual insurance exposures for the coverages provided.

2. <u>Why and when is it necessary?</u> The original premium on the policy is an estimated premium. The final audit determines the actual premium. When actual exposures differ from the estimated exposures, an adjustment must be made to the premium of the expired policy.

3. <u>What insurance coverages require an audit?</u>
   - General Liability
     Premises/Operations Liability
     Products/Completed Operations
   - Garage Liability
   - Businessowners Liability
   - Workers' Compensation

4. <u>How should your records be kept?</u> Proper record keeping will permit the auditor to apply any allowable credits to your final premium. When the auditor requests payroll information, this includes *remuneration*. *Remuneration* means money, or any substitute for money, and includes the following:

   | | | | |
   |---|---|---|---|
   | Wages | Commissions | Bonuses | Overtime Pay |
   | Holiday Pay | Profit Sharing Plans | Sick Pay | Payment of Piece Work |
   | Vacation Pay | Statutory Payments | Tool Allowances | Value of Board, Lodging |
   | Tips | Store Certificates | Other Substitutes | |

   <u>Overtime:</u> In most states, the amount paid in excess of straight time pay can be deducted if the excess can be verified in your records. You must maintain your records to show overtime pay separately by employee and in summary by classification of work.

   <u>Division of Payroll:</u> Generally, a division of an individual employee's payroll to more than one classification is not allowed, except for construction or erection workers. In these cases, the payroll may be allocated to each type of work performed if proper records are kept. Your records must show the number of hours and amount of payroll for each type of work. Without an adequate breakdown, the full payroll must be charged to the highest-rated classification.

   <u>Officers/Partners/Sole Proprietors:</u> Depending on state law, officers are usually covered for Workers Compensation benefits unless your state allows an exclusion endorsement. Partners and sole proprietors are usually not covered for benefits unless your state allows an inclusion endorsement. You should report payroll for each covered officer, partner or sole proprietor. Payroll may be subject to a minimum and maximum remuneration per annum, which is the lowest and highest payroll amount we will use to calculate premium. The state rating bureau establishes the minimum and maximum remuneration, which may change annually. For General Liability and Businessowners policies, payroll exceptions for officers, partners and sole proprietors may apply. Payroll may be subject to a flat remuneration per annum. This payroll exception will be used to calculate premium and may change annually.

   <u>Subcontractors:</u> Certificates of insurance are required for all subcontractors as documentation that there is coverage in effect during the time that the work is being performed. Subcontractors must carry Liability limits of at least $500,000 and Workers Compensation limits of $100,000/$500,000/$100,000. If there are no certificates available, it will be necessary to classify the subcontractors as employees and the appropriate premium charges will be made.

   For Workers' Compensation, if the subcontractor is an officer, partner or sole proprietor with no employees and exempt from Workers Compensation coverage, a certificate of insurance showing General Liability insurance with limits of liability of $500,000 or more is required. Without certificates of insurance, it will be necessary to classify these subcontractors as employees. Additional documentation may be necessary depending on state requirements.

5. <u>Who conducts the audit?</u> If the conditions of your policy require a physical audit, a Premium Auditor will contact you for an appointment. The Premium Auditor will examine and audit all records that relate to your policy.

ILMS13-2                                                                 Page 1 of 1



**HARFORD MUTUAL**
COMMITTED TO MUTUAL SUCCESS

## Customer Privacy Policy

Since 1842, Harford Mutual Insurance Company has been committed to the mutual success of our policyholders, agencies and local community. It is because of this commitment that we are dedicated to protecting the confidentiality of our customers' Nonpublic Personal Information (NPI). We take this opportunity to share our procedures and policies designed to safeguard your information, which may be obtained in the course of our business relationship with you.

This notice serves to explain: what type of information we collect; how we collect it; what we do with it after we collect it; how we safeguard your privacy; and how you may obtain information, if any, about your NPI. We will inform you concerning these policies in this notice and every year that you remain our customer.

### Our Privacy Policy

- We do not sell your NPI.
- We do not share your NPI with nonaffiliated third parties other than as necessary to service your policy or claim.
- We do not share your health or financial information, except as authorized by law.
- We use your NPI only to service your policies, claims and to meet your needs as they have been described to us.
- We will require that persons or organizations providing goods or services to you on our behalf protect the confidentiality of your NPI.
- We protect your NPI regardless of whether you are a current or a former customer.
- We maintain physical, electronic and procedural safeguards to protect your NPI from disclosure.

### How We Collect Information

We collect and retain information about you to provide you with the coverage, product, or service you request, or to service your account as permitted by law, and as needed to conduct business. We collect your NPI from the following sources:

- Your application for insurance or similar forms;
- Consumer reporting agencies, motor vehicle records, credit reports, claims history, loss information reports, court records or other public records; property inspections to verify value and condition for property insurance; or
- Your insurance agent.

### Information We Collect About You

Harford Mutual gets most of its information from your application for insurance or from your insurance agent. This includes, for example, your name; address; social security number; financial account or credit card information; vehicle type; credit based insurance score; a report about your coverage and claims history with other companies and motor vehicle records, to name a few.

For property and liability insurance, we may send someone to inspect your property and verify the value and condition of your property. A photo of any property to be insured may be taken and retained. We may also obtain reports concerning the square footage of your property from companies that collect such data.

For workers' compensation insurance, we may send someone to perform an audit or accounting of your business records to ensure that you are getting the appropriate premium charge.

### What We Do With the Information Collected

Harford Mutual uses your information only as permitted by law. We may use your information to: service products you have purchased; underwrite your policy; process claims; protect against fraud; and comply with legal requirements.

Information collected is maintained in either our policy records or in your agent's files. We may review it to evaluate requests for insurance coverage or to determine your insurance rates. Your information may also be used to decide whether to issue a renewal policy or settle a claim.

If coverage is declined, or if your rates increase because of information we received from a consumer report, we will tell you as required by the Fair Credit Reporting Act.

200 NORTH MAIN STREET, BEL AIR, MARYLAND 21014-3544 ▪ T (410) 838 4000 F (410) 838 8675 ▪ HARFORDMUTUAL.COM

## Information Disclosure

We will not disclose information about you without your written consent unless the disclosure is necessary to conduct our business. By law, we can share information about you without your permission under certain circumstances to certain people and organizations. Examples include:

- Our affiliated companies.
- Independent claim adjusters, appraisers, contractors, auto repair shops, investigators and attorneys in order to investigate, defend or settle a claim involving you.
- Your agent.
- Mortgagees, lienholders, lessors, loss payees, or other persons shown on our records as having a legal or beneficial interest in your policy or claim proceeds.
- Consultants or other service providers that perform business functions for us such as mailing or marketing services.
- Our reinsurance companies.
- Businesses that conduct research for us such as actuarial or underwriting studies.
- Other insurance companies.
- Consumer reporting agencies in connection with any application, policy or claim involving you.
- Insurance support organizations that collect information to detect and prevent insurance crimes or fraud.
- Medical care institutions or professionals to verify coverage or claims-related services.
- Insurance regulatory agencies in connection with the regulation of our business.
- Law enforcement or other governmental authorities.
- By order of subpoena, warrant or other court order as required by law.

We do not otherwise give information about you to people or organizations that would use the information to contact you about their product or services.

## How We Protect Your Information

Harford Mutual maintains physical, electronic and procedural safeguards to protect your NPI. Access to customer records is restricted to employees with a business reason for knowing such information in order to provide products and services to you. Employees are trained to protect customer privacy by adhering to the privacy responsibilities outlined by the company. Should you cease being a customer, we will continue to protect your personal information in the same manner. At Harford Mutual, our employees are responsible for upholding a Code of Conduct and Confidentiality policy that requires them to keep confidential all NPI obtained in the course of our business.

## Your Rights

You have the right to know what information we have about you and to receive a copy upon request. Despite your request, we may not be able to disclose certain types of information collected when evaluating claims or possible lawsuits. In this regard, we will not send you any medical information we have received about you from a doctor or other health care provider due to certain health information protection laws. Rather, you should contact the doctor or health care provider directly to obtain this information.

Also, we will not send you any reports provided by any consumer reporting agency. Instead, we will give you the name and address of any consumer reporting agency that prepared the report about you, so that you can contact them for a copy.

To submit your request for other types of information, please send your complete name, address and policy number to:

Harford Mutual Insurance Company
Privacy Inquiries
Office of General Counsel & Director of Compliance
200 North Main Street
Bel Air, MD 21014

Within thirty (30) business days of receipt of your written request, we will disclose to you the NPI about you in our files. You may receive a copy at a reasonable charge. We will tell you with whom we have shared your NPI within the past two (2) years, or for the time period required by state law. If you believe your file should be corrected, please contact us in writing with the request. We will make the change or provide an explanation of our refusal to do so.

Thank you for choosing Harford Mutual for your insurance protection. We work hard to preserve the confidentiality of your nonpublic personal information.

Our longstanding commitment to preserving your privacy continues, as does our dedication to providing personal service aimed at ensuring our mutual success. We have been in business to accomplish this goal since 1842.

IL N 001 09 03

# FRAUD STATEMENT

Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

**A. Cancellation**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   **a.** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

**B. Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**C. Examination Of Your Books And Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**D. Inspections And Surveys**

1. We have the right to:

   **a.** Make inspections and surveys at any time;

   **b.** Give you reports on the conditions we find; and

   **c.** Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   **a.** Are safe or healthful; or

   **b.** Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

**E. Premiums**

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

**F. Transfer Of Your Rights And Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

 Copyright, Insurance Services Office, Inc., 1998 ☐

Case 1:19-cv-01583-RMB-SAK Document 1 Filed 01/29/19 Page 24 of 126 PageID: 326

COMMERCIAL GENERAL LIABILITY
CGMS002 1116

# GENERAL LIABILITY ENDORSEMENTS
# ADVISORY NOTICE TO POLICYHOLDERS

This Notice does not form part of your policy. No coverage is provided by this Notice nor can it be construed to replace any provision of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided. If there is any conflict between the Policy and this Notice, **THE PROVISIONS OF THE POLICY SHALL PREVAIL.**

Carefully read your policy, including the endorsements attached to your policy.

This Notice provides information concerning the following revised endorsements, which may apply to your renewal policy being issued by us. The major areas within the policy that broaden or reduce coverage, and other changes, are highlighted below. This notice does not reference every editorial change made in your policy.

---

**FOR USE WITH THE COMMERCIAL GENERAL LIABILITY COVERAGE PART:**

**CGHG03 Funeral Directors or Morticians Professional Liability**

  A. **Reductions Of Coverage**
    1. The Insuring agreement has been clarified to change "with respect to activities necessary or incidental to the operation of a mortuary by the named insured" to "with respect to activities necessary or incidental to the rendering or failure to render professional services in connection with the insured's business as a funeral director." Although this was the original intent of the endorsement, this could be considered a reduction in coverage.

  B. **Broadenings Of Coverage, Clarifications and Other Changes**
    1. "Personal Injury" was removed from the insuring agreement of Coverage A and a separate insuring agreement has been added for Coverage B which now includes "personal and advertising injury" arising out of the rendering of or failure to render professional services of a funeral director while in the course of the insured's practice as a funeral director.

**CGHG06 Exclusion – Lead Contamination**

  A. **Reductions Of Coverage**
    1. Excluded occurrences at the insured premises has been amended to exclude occurrences at or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to any insured.
    2. The "bodily injury" arising out of lead in any form exclusion has been expanded to exclude lead contamination, use, handling or contact with lead.

  B. **Broadenings Of Coverage, Clarifications and Other Changes**
    1. Exclusions for "personal injury" and "advertising injury" have been combined to read "personal and advertising injury".

---

**FOR USE WITH THE EMPLOYEE BENEFITS LIABILITY COVERAGE PART:**

**CGHG08 Employee Benefits Liability Coverage Form**

  A. **Reductions Of Coverage**
    1. Dishonest, Fraudulent, Criminal or Malicious Act has been amended to include damages arising out of any intentional act, error or omission, committed by any insured, including the willful or reckless violation of any statute.
    2. The Investment Advice Exclusion has been amended to exclude errors in providing information on past performance of investment vehicles.
    3. The Taxes, Fines or Penalties Exclusion will now exclude fines, civil penalties or taxes imposed under the Internal Revenue Code or any similar state or local law.

CGMS002 1116        Page 1 of 4

4. An Available Benefits Exclusion has been added to exclude any "claim" for benefits to the extent that such benefits are available, with reasonable effort and cooperation of the insured, from the applicable funds accrued or other collectible insurance.

5. An Employment-Related Practices Exclusion has been added for damages arising out of wrongful termination of employment, discrimination, or other employment - related practices.

6. Supplementary Payments for court costs do not include attorneys' fees or attorneys' expenses taxed against the insured. There are no other obligations or liability to pay sums or perform acts or services unless explicitly provided for under Supplementary Payments.

7. Some definitions have been amended which could create a difference in the coverage previously provided.

## B. Broadenings Of Coverage, Clarifications and Other Changes

1. The Schedule has been removed from the form because the information is shown in the Declarations Page.

2. A claim based upon "the insured's failure to comply with any law" has been clarified to read "arising out of your failure".

3. Item B. Exclusions has been amended to include headers to clarify the different types of Exclusions.

4. "Personal injury" or "advertising injury" has been amended to "personal and advertising injury".

5. The Exclusion related to the Employee Retirement Income Security Act of 1974 has been restated to clarify its intent.

6. Supplementary Payments for loss of earnings has been increased from $100 to $250 a day because of time off work.

7. Who Is An Insured has been amended to include the spouses of members and partners but only with respect to the conduct of your business.

8. Who Is An Insured has been amended to include a limited liability company, including members with respect to the conduct of your business and managers with respect to their duties as your managers.

9. Who Is An Insured has been amended to include any persons, organizations or "employees" having proper temporary authorization to administer your "employee benefits programs" if you die, but only until your legal representative is appointed. It is also amended to add your legal representative if you die, but only with respect to duties as such.

10. Duties in the Event of An Act, Error or Omission has been amended to include "Claim" or "Suit". Notification was amended to include what the act, error or omission was, when it occurred, and anyone who may suffer damages as a result of the act, error or omission.

11. The Definitions of "Administration", "Employee Benefits Programs", "Personal and Advertising Injury" and "Suit" have been amended.

12. Definitions for "Claim", "Employee", "Leased Worker" and "Temporary Worker" have been added.

13. The Limits of Insurance section has been clarified to add that the Limits of Insurance in the Declarations is the most we will pay regardless of the number of acts, errors or omissions or benefits included in your "employee benefits programs".

14. The terms of this Insurance with respect to duties of any other involved insured in the event of an act, error or omission, "claim" or "suit" will apply irrespective of the application of the deductible.

15. Editorial clarifications have been made to the coverage conditions.

---

## FOR USE WITH THE DIRECTORS AND OFFICERS LIABILITY FOR NONPROFIT ORGANIZATIONS COVERAGE PART:

### CGHG09 Directors And Officers Liability For Nonprofit Organizations Coverage Form

#### A. Reductions Of Coverage

1. The exclusions for oral or written publication will now apply to oral or written publication in any manner.

2. Injury arising out of the use of another's advertising idea in your advertisement and infringing upon another's copyright trade dress or slogan in your advertisement have been added as additional Exclusions.

3. Supplementary Payments for court costs do not include attorneys' fees or attorneys' expenses taxed against the insured.

4. We will not provide an extended reporting period endorsement if the cancellation or nonrenewal of a claims-made liability endorsement or policy is due to nonpayment of premium; failure to comply with terms or conditions of this coverage or policy; or fraud.

5. It is clarified that Electronic data is not considered to be tangible property which could be a reduction in coverage.

**B. Broadenings Of Coverage, Clarifications and Other Changes**

1. Supplementary Payments for loss of earnings has been increased from $100 to $250 a day because of time off work.

2. Duties In the Event of Loss Arising Out of Wrongful Acts is expanded to state that notice of loss should include the names and addresses of any injured persons and witnesses.

3. If loss results in a claim against any insured, you must immediately record the specifics of the "loss" arising out of a "wrongful act" and the date received; and see to it that we receive prompt written notice of the claim as soon as practicable.

4. Extended Reporting Periods is amended to clarify that the Basic Extended Reporting Period is automatically provided without an additional charge and lasts for sixty days with respect to claims arising from "wrongful acts" or offenses not previously reported to us.

5. The Supplemental Extended Reporting Period is clarified to show that you must provide a written request to purchase within 60 days after the end of the policy period or the effective date of cancellation, whichever comes first. If the premium is paid when due, the Endorsement may not be cancelled except for Fraud. The premium for the Supplemental Extended Reporting Period will be deemed fully earned as of the date it is purchased.

6. The exclusion for injury arising from wrongful eviction is clarified to state that it will only apply if the act was committed by or on behalf of its owner, landlord or lessor.

7. The supplemental aggregate limit of insurance will now be equal to the dollar amount shown in the Declarations.

**CGHG10 Supplemental Extended Reporting Period Endorsement**

**A. Broadenings Of Coverage, Clarifications and Other Changes**

1. The Schedule has been amended to remove the Policy No.

2. Once this supplemental extended reporting period endorsement is purchased, it cannot be cancelled by "us" except for nonpayment of premium or fraud.

---

**FOR USE WITH THE PROFESSIONAL COUNSELING FOR RELIGIOUS INSTITUTIONS LIABILITY COVERAGE PART:**

**CGHG14 Professional Counseling For Religious Institutions Liability Coverage Form**

**A. Reductions Of Coverage**

1. Supplementary Payments for court costs do not include attorneys' fees or attorneys' expenses taxed against the insured.

2. The exclusions for oral or written publication will now apply to oral or written publication in any manner.

**B. Broadenings Of Coverage, Clarifications and Other Changes**

1. The Schedule has been removed from the form because the information is shown in the Declarations Page.

2. Supplementary Payments for loss of earnings has been increased from $100 to $250 a day because of time off work.

3. The coverage territory has been amended to include Puerto Rico.

4. Duties In the Event of Loss Arising Out of Wrongful Acts is expanded to state that notice of loss should include the names and addresses of any injured persons and witnesses.

5. If loss results in a claim against any insured, you must immediately record the specifics of the "loss" arising out of a "wrongful act" and the date received; and see to it that we receive prompt written notice of the claim as soon as practicable.

6. Legal Action Against Us has been amended to clarify that a person or organization may sue us to recover on an agreed settlement or on a final judgement against an insured, but the settlement or final judgement is no longer required to be obtained after an actual trial.

7. Other Insurance, Method of Sharing has been corrected to 'each insurer's share' instead of 'each insured's share'.

Property and Casualty Insurance
Since 1842

The Harford Mutual Insurance Company
Firstline National Insurance Company



THE
HARFORD MUTUAL
INSURANCE COMPANIES

200 N. Main Street
Bel Air, Maryland 21014-3544

PHONE 1-410-838-4000
FAX NO. 1-410-838-6675

## ADVISORY NOTICE TO POLICYHOLDERS

### LEAD LIABILITY COVERAGE
### (APPLIES ONLY IN NEW JERSEY)
### CG2653

**NO COVERAGE IS PROVIDED BY THIS POLICYHOLDER NOTICE NOR CAN IT BE CONSTRUED TO REPLACE ANY PROVISIONS OF YOUR POLICY. IT HAS BEEN PREPARED TO MAKE YOU AWARE OF CERTAIN CHANGES IN COVERAGE PROVIDED BY YOUR POLICY FOR CLAIMS OR SUITS ARISING OUT OF THE DISPERSAL, RELEASE, INGESTION, INHALATION OR ABSORPTION OF LEAD. YOU SHOULD READ YOUR POLICY AND REVIEW YOUR DECLARATIONS PAGE FOR COMPLETE INFORMATION ON THE COVERAGES YOU ARE PROVIDED. IF THERE IS ANY CONFLICT BETWEEN THE POLICY AND THIS SUMMARY, THE PROVISIONS OF THE POLICY SHALL PREVAIL.**

### PLEASE READ YOUR POLICY, AND THE ENDORSEMENTS ATTACHED TO YOUR POLICY, CAREFULLY.

Form CG2653 has been attached to your policy. This endorsement **excludes** coverage for any injury, damage, loss, cost, payment or expense arising out of, resulting from, caused by or contributed to by the actual or alleged presence or actual alleged or threatened dispersal, release, ingestion, inhalation or absorption of lead, lead compounds or lead which is or was contained or incorporated into any material or substance. This exclusion **will not apply** to injury or damage arising out of any building or premises which is constructed in or after 1978 or which has been certified as being free of existing lead hazards pursuant to standards established by the Department of Community Affairs.

If you own, manage, or are otherwise responsible for buildings or premises which were constructed prior to 1978, you are responsible for ensuring that those premises are certified as being free of existing lead hazards pursuant to the standards established by the Department of Community Affairs. If you fail to obtain such certification, you will have **no coverage** for any injury, damage, loss, cost, payment or expense arising out of, resulting from, caused by or contributed to by the actual or alleged presence or actual, alleged or threatened dispersal, release, ingestion, inhalation or absorption of lead, lead compounds or lead which is or was contained or incorporated into any material or substance.

Includes Copyrighted Material of Insurance Services Office, Inc.
with its permission. Copyright, Insurance Services Office, Inc.

CGNJ00-1 04 00

# POLICYHOLDER NOTICE REGARDING
# CYBER LIABILITY COVERAGE

**CAUTION:** No coverage is provided by this notice; nor can it be construed to replace any provision of your policy. You should read your policy and review your Declarations Page for complete information on the coverages you are provided. If there is a conflict between the policy and this notice, THE PROVISIONS OF THE POLICY SHALL PREVAIL. PLEASE READ YOUR POLICY CAREFULLY.

Your renewal policy includes a new endorsement for Cyber Liability that covers losses resulting from a claim for an actual or alleged wrongful act and first party costs resulting from a first party insured event, as defined in your policy. Under this coverage, you have 60 days to report a claim once it has become known to you. This coverage is explained in your policy. Please read the new coverage endorsement carefully to understand this coverage.

Your renewal premium will also include a premium for this new endorsement. By accepting this policy you are consenting to this coverage enhancement. If you have questions about this coverage, or would like this coverage removed, please contact your agent at the phone number provided on your policy.

---

## MANAGING CYBER SECURITY RISK

With the purchase of CYBER LIABILITY COVERAGE through Harford Mutual, you have **FREE** and **UNLIMITED** access to a Cyber Security Risk Management Website to help you manage the many exposures to your business and reduce or prevent costly claims.

> **WEBSITE**: www.HarfordMutualCyber.com
> **CODE**: HARFORDCYBER01

ILMS013 0416                                                                Page 1 of 1

# NOTICE REGARDING CLAIMS-MADE LIABILITY COVERAGE ON YOUR POLICY

**CAUTION:** No coverage is provided by this notice; nor can it be construed to replace any provision of your policy. You should read your policy and review your Declarations Page for complete information on the coverages you are provided. If there is a conflict between the policy and this notice, THE PROVISIONS OF THE POLICY SHALL PREVAIL. PLEASE READ YOUR POLICY CAREFULLY.

You have purchased a claims-made liability coverage on this insurance policy. Please read this policy carefully to understand your coverage. There are certain circumstances in which you must be provided the opportunity to purchase an extended reporting period for reporting claims. These are explained in your policy. If you have any questions regarding the cost of an extended reporting period or the available options under the extended reporting period, please contact your insurance company or your insurance agent.

# POLICYHOLDER NOTICE REGARDING
# EMPLOYMENT PRACTICES LIABILITY COVERAGE

**CAUTION:** No coverage is provided by this notice; nor can it be construed to replace any provision of your policy. You should read your policy and review your Declarations Page for complete information on the coverages you are provided. If there is a conflict between the policy and this notice, THE PROVISIONS OF THE POLICY SHALL PREVAIL. PLEASE READ YOUR POLICY CAREFULLY.

Your renewal policy includes a new endorsement for Employment Practices Liability which is written on a claims-made basis. Because this is written on a claims-made basis, there are certain circumstances in which you must be provided the opportunity to purchase an extended reporting period for claims. These are explained in your policy. Please read the coverage endorsement carefully to understand this coverage.

Your renewal premium will also include the premium for this new endorsement. By accepting this policy you are consenting to this coverage enhancement. If you have questions about this coverage or the available options for purchasing an extended reporting period endorsement, please contact your agent at the phone number provided on your policy.

## MANAGING EMPLOYMENT RISK

With the purchase of EPLI through Harford Mutual you can access two **FREE** resources to help you manage the many employment exposures to your business and reduce or prevent costly employment claims.

**Workplace Risk Solutions—ONLINE SUPPORT** *from The McCalmon Group*
    **Website:** www.WPRSolutions.com
    **Passcode:** HF-HrHelp

**Employment Practices Consultation—Legal Hotline** *from Jackson Lewis, LLP*
    800-259-5589
    Monday through Friday 9 a.m. to 6 p.m. (CST)

ILMS015 0416                                    Page 1 of 1

COMMERCIAL GENERAL LIABILITY
CG 00 01 04 13

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

## SECTION I – COVERAGES

## COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY

### 1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

(2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2) The "bodily injury" or "property damage" occurs during the policy period; and

(3) Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

(1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

(2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

(3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

## 2. Exclusions

This insurance does not apply to:

### a. Expected Or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

### b. Contractual Liability

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b) Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

### c. Liquor Liability

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in:

(a) The supervision, hiring, employment, training or monitoring of others by that insured; or

(b) Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol;

if the "occurrence" which caused the "bodily injury" or "property damage", involved that which is described in Paragraph (1), (2) or (3) above.

However, this exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages. For the purposes of this exclusion, permitting a person to bring alcoholic beverages on your premises, for consumption on your premises, whether or not a fee is charged or a license is required for such activity, is not by itself considered the business of selling, serving or furnishing alcoholic beverages.

### d. Workers' Compensation And Similar Laws

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

### e. Employer's Liability

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

     © Insurance Services Office, Inc., 2012     CG 00 01 04 13

**f. Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

(i) Any insured; or

(ii) Any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

© Insurance Services Office, Inc., 2012

(2) Any loss, cost or expense arising out of any:

   (a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

   (b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

   (a) Less than 26 feet long; and

   (b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of:

   (a) The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged; or

   (b) The operation of any of the machinery or equipment listed in Paragraph f.(2) or f.(3) of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j. Damage To Property**

"Property damage" to:

(1) Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

   © Insurance Services Office, Inc., 2012   **CG 00 01 04 13**

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs (1), (3) and (4) of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of seven or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III – Limits Of Insurance.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

However, this exclusion does not apply to liability for damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**q. Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

(1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

(2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

(3) The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

(4) Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

Exclusions c. through n. do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section III – Limits Of Insurance.

## COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY

### 1. Insuring Agreement

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and **B**.

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

### 2. Exclusions

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g. Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

© Insurance Services Office, Inc., 2012 CG 00 01 04 13

**i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

(1) Advertising, broadcasting, publishing or telecasting;

(2) Designing or determining content of web sites for others; or

(3) An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a.**, **b.** and **c.** of "personal and advertising injury" under the Definitions section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-related**

Any loss, cost or expense arising out of any:

(1) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**o. War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**p. Recording And Distribution Of Material Or Information In Violation Of Law**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

(1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

(2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

(3) The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

(4) Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

## COVERAGE C – MEDICAL PAYMENTS

### 1. Insuring Agreement

a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations;

provided that:

(a) The accident takes place in the "coverage territory" and during the policy period;

(b) The expenses are incurred and reported to us within one year of the date of the accident; and

(c) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

(1) First aid administered at the time of an accident;

(2) Necessary medical, surgical, X-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

### 2. Exclusions

We will not pay expenses for "bodily injury":

a. **Any Insured**

To any insured, except "volunteer workers".

b. **Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

c. **Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

d. **Workers' Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

e. **Athletics Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

f. **Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

g. **Coverage A Exclusions**

Excluded under Coverage A.

## SUPPLEMENTARY PAYMENTS – COVERAGES A AND B

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

a. All expenses we incur.

b. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

e. All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

f. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

© Insurance Services Office, Inc., 2012          CG 00 01 04 13

**g.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

**2.** If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

**a.** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

**b.** This insurance applies to such liability assumed by the insured;

**c.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

**d.** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**e.** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**f.** The indemnitee:

**(1)** Agrees in writing to:

**(a)** Cooperate with us in the investigation, settlement or defense of the "suit";

**(b)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

**(c)** Notify any other insurer whose coverage is available to the indemnitee; and

**(d)** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

**(2)** Provides us with written authorization to:

**(a)** Obtain records and other information related to the "suit"; and

**(b)** Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph 2.b.(2) of Section I – Coverage A – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments or settlements or the conditions set forth above, or the terms of the agreement described in Paragraph f. above, are no longer met.

**SECTION II – WHO IS AN INSURED**

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

2. Each of the following is also an insured:

   a. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

      (1) "Bodily injury" or "personal and advertising injury":

         (a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

         (b) To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph (1)(a) above;

         (c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph (1)(a) or (b) above; or

         (d) Arising out of his or her providing or failing to provide professional health care services.

      (2) "Property damage" to property:

         (a) Owned, occupied or used by;

         (b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by;

         you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

   b. Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

   c. Any person or organization having proper temporary custody of your property if you die, but only:

      (1) With respect to liability arising out of the maintenance or use of that property; and

      (2) Until your legal representative has been appointed.

   d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

   a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

   b. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

   c. Coverage B does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III – LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

   a. Medical expenses under Coverage C;

   b. Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

   c. Damages under Coverage B.

© Insurance Services Office, Inc., 2012
CG 00 01 04 13

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to Paragraph 2. above, the Personal And Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to Paragraph 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   a. Damages under Coverage A; and

   b. Medical expenses under Coverage C

   because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to Paragraph 5. above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage A for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to Paragraph 5. above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

**1. Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

   (1) How, when and where the "occurrence" or offense took place;

   (2) The names and addresses of any injured persons and witnesses; and

   (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

   b. If a claim is made or "suit" is brought against any insured, you must:

   (1) Immediately record the specifics of the claim or "suit" and the date received; and

   (2) Notify us as soon as practicable.

   You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

   c. You and any other involved insured must:

   (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

   (2) Authorize us to obtain records and other information;

   (3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

   (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

   d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

   a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

   b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

© Insurance Services Office, Inc., 2012

## 4. Other Insurance

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

### a. Primary Insurance

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

### b. Excess Insurance

(1) This insurance is excess over:

(a) Any of the other insurance, whether primary, excess, contingent or on any other basis:

(i) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

(ii) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

(iii) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

(iv) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section I – Coverage **A** – Bodily Injury And Property Damage Liability.

(b) Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

(2) When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

(3) When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(a) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(b) The total of all deductible and self-insured amounts under all that other insurance.

(4) We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

### c. Method Of Sharing

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

## 5. Premium Audit

a. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

b. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

c. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

## 6. Representations

By accepting this policy, you agree:

a. The statements in the Declarations are accurate and complete;

© Insurance Services Office, Inc., 2012
CG 00 01 04 13

b. Those statements are based upon representations you made to us; and

c. We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

a. Notices that are published include material placed on the Internet or on similar electronic means of communication; and

b. Regarding web sites, only that part of a web site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

2. "Auto" means:

a. A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

b. Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

b. International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph a. above; or

c. All other parts of the world if the injury or damage arises out of:

(1) Goods or products made or sold by you in the territory described in Paragraph a. above;

(2) The activities of a person whose home is in the territory described in Paragraph a. above, but is away for a short time on your business; or

(3) "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication;

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph a. above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document.

7. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

b. You have failed to fulfill the terms of a contract or agreement;

If such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:

    **a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

    **b.** A sidetrack agreement;

    **c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

    **d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

    **e.** An elevator maintenance agreement;

    **f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

    Paragraph **f.** does not include that part of any contract or agreement:

    **(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

    **(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

      **(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

      **(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

    **(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

    **a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

    **b.** While it is in or on an aircraft, watercraft or "auto"; or

    **c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

    but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

    **a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

    **b.** Vehicles maintained for use solely on or next to premises you own or rent;

    **c.** Vehicles that travel on crawler treads;

    **d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

      **(1)** Power cranes, shovels, loaders, diggers or drills; or

      **(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

    **e.** Vehicles not described in Paragraph **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

      **(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

      **(2)** Cherry pickers and similar devices used to raise or lower workers;

    **f.** Vehicles not described in Paragraph **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

(1) Equipment designed primarily for:

(a) Snow removal;

(b) Road maintenance, but not construction or resurfacing; or

(c) Street cleaning;

(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

f. The use of another's advertising idea in your "advertisement"; or

g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Products-completed operations hazard";

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

b. Does not include "bodily injury" or "property damage" arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

(2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

(3) Products or operations for which the classification, listed in the Declarations or in a policy Schedule, states that products-completed operations are subject to the General Aggregate Limit.

17. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

21. "Your product":

a. Means:

(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(a) You;

(b) Others trading under your name; or

(c) A person or organization whose business or assets you have acquired; and

(2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

b. Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

(2) The providing of or failure to provide warnings or instructions.

c. Does not include vending machines or other property rented to or located for the use of others but not sold.

22. "Your work":

a. Means:

(1) Work or operations performed by you or on your behalf; and

(2) Materials, parts or equipment furnished in connection with such work or operations.

b. Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

(2) The providing of or failure to provide warnings or instructions.

 © Insurance Services Office, Inc., 2012 CG 00 01 04 13

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY – WITH LIMITED BODILY INJURY EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. Exclusion 2.p. of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**p. Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability**

Damages arising out of:

(1) Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

(2) The loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph (1) or (2) above.

However, unless Paragraph **(1)** above applies, this exclusion does not apply to damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

B. The following is added to Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Access Or Disclosure Of Confidential Or Personal Information**

"Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

© Insurance Services Office, Inc., 2013

COMMERCIAL GENERAL LIABILITY
CG 21 09 06 15

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION – UNMANNED AIRCRAFT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. Exclusion 2.g. Aircraft, Auto Or Watercraft under Section I – Coverage A – Bodily Injury And Property Damage Liability is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**g. Aircraft, Auto Or Watercraft**

**(1) Unmanned Aircraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft that is an "unmanned aircraft". Use includes operation and "loading or unloading".

This Paragraph g.(1) applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft that is an "unmanned aircraft".

**(2) Aircraft (Other Than Unmanned Aircraft), Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft (other than "unmanned aircraft"), "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This Paragraph g.(2) applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft (other than "unmanned aircraft"), "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This Paragraph g.(2) does not apply to:

**(a)** A watercraft while ashore on premises you own or rent;

**(b)** A watercraft you do not own that is:

**(i)** Less than 26 feet long; and

**(ii)** Not being used to carry persons or property for a charge;

**(c)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(d)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

© Insurance Services Office, Inc., 2014

(e) "Bodily injury" or "property damage" arising out of:

  (i) The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged; or

  (ii) The operation of any of the machinery or equipment listed in Paragraph f.(2) or f.(3) of the definition of "mobile equipment".

**B.** The following exclusion is added to Paragraph **2. Exclusions of Coverage B – Personal And Advertising Injury Liability:**

  **2. Exclusions**

  This insurance does not apply to:

  **Unmanned Aircraft**

  "Personal and advertising injury" arising out of the ownership, maintenance, use or entrustment to others of any aircraft that is an "unmanned aircraft". Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the offense which caused the "personal and advertising injury" involved the ownership, maintenance, use or entrustment to others of any aircraft that is an "unmanned aircraft".

This exclusion does not apply to:

  a. The use of another's advertising idea in your "advertisement"; or

  b. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**C.** The following definition is added to the **Definitions** section:

"Unmanned aircraft" means an aircraft that is not:

  **1.** Designed;

  **2.** Manufactured; or

  **3.** Modified after manufacture;

to be controlled directly by a person from within or on the aircraft.

© Insurance Services Office, Inc., 2014

COMMERCIAL GENERAL LIABILITY
CG 21 32 05 09

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# COMMUNICABLE DISEASE EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. The following exclusion is added to Paragraph 2. Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability:

**2. Exclusions**

This insurance does not apply to:

**Communicable Disease**

"Bodily injury" or "property damage" arising out of the actual or alleged transmission of a communicable disease.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the:

a. Supervising, hiring, employing, training or monitoring of others that may be infected with and spread a communicable disease;

b. Testing for a communicable disease;

c. Failure to prevent the spread of the disease; or

d. Failure to report the disease to authorities.

B. The following exclusion is added to Paragraph 2. Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:

**2. Exclusions**

This insurance does not apply to:

**Communicable Disease**

"Personal and advertising injury" arising out of the actual or alleged transmission of a communicable disease.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the:

a. Supervising, hiring, employing, training or monitoring of others that may be infected with and spread a communicable disease;

b. Testing for a communicable disease;

c. Failure to prevent the spread of the disease; or

d. Failure to report the disease to authorities.

     © Insurance Services Office, Inc., 2008         □

COMMERCIAL GENERAL LIABILITY
CG 21 67 12 04

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph 2. **Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

a. "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

b. Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

**B.** The following exclusion is added to Paragraph 2. **Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

a. "Personal and advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury.

b. Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

**C.** The following definition is added to the **Definitions Section:**

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

© ISO Properties, Inc., 2003

COMMERCIAL GENERAL LIABILITY
CG 21 71 01 15

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION OF OTHER ACTS OF TERRORISM COMMITTED OUTSIDE THE UNITED STATES; CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** The following exclusion is added:

This insurance does not apply to:

**TERRORISM**

"Any injury or damage" arising, directly or indirectly, out of an "other act of terrorism" that is committed outside of the United States (including its territories and possessions and Puerto Rico), but within the "coverage territory". However, this exclusion applies only when one or more of the following are attributed to such act:

**1.** The total of insured damage to all types of property exceeds $25,000,000 (valued in U.S. dollars). In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the terrorism and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

**2.** Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

**a.** Physical injury that involves a substantial risk of death; or

**b.** Protracted and obvious physical disfigurement; or

**c.** Protracted loss of or impairment of the function of a bodily member or organ; or

**3.** The terrorism involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

**4.** The terrorism is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

**5.** Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials.

With respect to this exclusion, Paragraphs **1.** and **2.** describe the thresholds used to measure the magnitude of an incident of an "other act of terrorism" and the circumstances in which the threshold will apply for the purpose of determining whether this exclusion will apply to that incident.

**B.** The following definitions are added:

**1.** For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under any Coverage Part to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part.

© Insurance Services Office, Inc., 2015

2. "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

   a. The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act;

   b. The act resulted in damage:

      (1) Within the United States (including its territories and possessions and Puerto Rico); or

      (2) Outside of the United States in the case of:

         (a) An air carrier (as defined in Section 40102 of title 49, United States Code) or United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States), regardless of where the loss occurs; or

         (b) The premises of any United States mission; and

   c. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

3. "Other act of terrorism" means a violent act or an act that is dangerous to human life, property or infrastructure that is committed by an individual or individuals and that appears to be part of an effort to coerce a civilian population or to influence the policy or affect the conduct of any government by coercion, and the act is not a "certified act of terrorism".

   Multiple incidents of an "other act of terrorism" which occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

C. The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Coverage Part.

D. If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

© Insurance Services Office, Inc., 2015
CG 21 71 01 15

COMMERCIAL GENERAL LIABILITY
CG 21 76 01 15

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION OF PUNITIVE DAMAGES RELATED TO A CERTIFIED ACT OF TERRORISM

This endorsement modifies insurance provided under the following:

> COMMERCIAL GENERAL LIABILITY COVERAGE PART
> LIQUOR LIABILITY COVERAGE PART
> OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
> POLLUTION LIABILITY COVERAGE PART
> PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
> RAILROAD PROTECTIVE LIABILITY COVERAGE PART
> UNDERGROUND STORAGE TANK POLICY

**A.** The following exclusion is added:

This insurance does not apply to:

**TERRORISM PUNITIVE DAMAGES**

Damages arising, directly or indirectly, out of a "certified act of terrorism" that are awarded as punitive damages.

**B.** The following definition is added:

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**1.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**C.** The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Coverage Part.

© Insurance Services Office, Inc., 2015

COMMERCIAL GENERAL LIABILITY
CG 21 96 03 05

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# SILICA OR SILICA-RELATED DUST EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. The following exclusion is added to Paragraph 2., Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability:

**2. Exclusions**

This insurance does not apply to:

**Silica Or Silica-Related Dust**

a. "Bodily injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, or ingestion of, "silica" or "silica-related dust".

b. "Property damage" arising, in whole or in part, out of the actual, alleged, threatened or suspected contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

c. Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica-related dust", by any insured or by any other person or entity.

B. The following exclusion is added to Paragraph 2., Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:

**2. Exclusions**

This insurance does not apply to:

**Silica Or Silica-Related Dust**

a. "Personal and advertising injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

b. Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica-related dust", by any insured or by any other person or entity.

C. The following definitions are added to the Definitions Section:

1. "Silica" means silicon dioxide (occurring in crystalline, amorphous and impure forms), silica particles, silica dust or silica compounds.

2. "Silica-related dust" means a mixture or combination of silica and other dust or particles.

 © ISO Properties, Inc., 2004

COMMERCIAL GENERAL LIABILITY
CG 24 26 04 13

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMENDMENT OF INSURED CONTRACT DEFINITION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

The definition of "insured contract" in the **Definitions** section is replaced by the following:

"Insured contract" means:

a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

b. A sidetrack agreement;

c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

e. An elevator maintenance agreement;

f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided the "bodily injury" or "property damage" is caused, in whole or in part, by you or by those acting on your behalf. However, such part of a contract or agreement shall only be considered an "insured contract" to the extent your assumption of the tort liability is permitted by law. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

(1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

(2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

(a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

(b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

(3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

 © Insurance Services Office, Inc., 2012

COMMERCIAL GENERAL LIABILITY
CG 26 20 10 93

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# NEW JERSEY CHANGES – LOSS INFORMATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART ("OCCURRENCE" VERSION)

The following Condition is added TO COMMERCIAL GENERAL LIABILITY CONDITIONS (Section IV):

**10. Your Right to Loss Information**

We will provide the first Named Insured shown in the Declarations the following loss information relating to this and any preceding general liability Coverage Part we have issued to you during the previous three years:

**a.** A list or other record of each "occurrence" of which we were notified in accordance with paragraph **2.a.** of the Duties in the Event of Occurrence, Offense, Claim or Suit Condition in this Section. We will include a brief description of the "occurrence" and information on whether any claim arising out of the "occurrence" is open or closed.

**b.** A summary by policy year, of payments made and amounts reserved, stated separately under any applicable General Aggregate Limit and Products-Completed Operations Aggregate Limit.

Amounts reserved are based on our judgment. They are subject to change and should not be regarded as ultimate settlement values.

You must not disclose this information to any claimant or any claimant's representative without our consent.

We will provide this information only if we receive a written request from the first Named Insured during the policy period. We will provide this information within 45 days of receipt of the request.

We compile claim and "occurrence" information for our own business purposes and exercise reasonable care in doing so. In providing this information to the first Named Insured, we make no representations or warranties to insureds, insurers or others to whom this information is furnished by or on behalf of any insured.

 Copyright, Insurance Services Office, Inc., 1992

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NEW JERSEY CHANGES –
## COVERAGE AND EXCLUSION – LIABILITY FOR
## HAZARDS OF LEAD – MULTIPLE PREMISES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** For premises constructed in or after 1978 or premises constructed prior to 1978 which have been certified, prior to the policy period, as being free of existing lead hazards pursuant to standards established by the Department of Community Affairs, the following is added to Exclusion **f.**, **Pollution**, of Paragraph **2., Exclusions**, under **Section I – Coverage A – Bodily Injury And Property Damage Liability** and to any amendment to the pollution exclusion which is added by endorsement to this policy:

**2. Exclusions**

**f. Pollution**

This exclusion does not apply to "bodily injury" arising out of lead contamination, or out of the inhalation, ingestion, use, handling or contact with lead paint at or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to any insured.

This provision will also apply to any premises which receives such certification during the policy period, but only if you notify us of such certification within 30 days after the certification is received, and only for "bodily injury" which occurs after such certification.

**B.** For premises constructed prior to 1978 and which have not been certified as being free of existing lead hazards pursuant to standards established by the Department of Community Affairs, and until certified thereafter as described in A., the following is added to Paragraph **2., Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

"Bodily injury" caused in whole or in part, either directly or indirectly, by lead paint or lead contamination, or arising out of or incidental to the inhalation, ingestion, use, handling, or contact with lead paint or lead contamination.

 Copyright, Insurance Services Office, Inc., 1999

COMMERCIAL GENERAL LIABILITY
CG HG 21 01 05

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## ASBESTOS EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

## COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. The following exclusion is added to Paragraph 2., Exclusions of **Section I – Coverage A Bodily Injury And Property Damage Liability**

**2. Exclusions**

This insurance does not apply to:

**Asbestos or Asbestos Related Products**

a. "Bodily injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, ingestion of, contact with, exposure to, existence of, or presence of "asbestos", in any manner or form, or in combination with any other factors, substances or events.

b. "Property damage" arising, in whole or in part, out of the actual, alleged, threatened or suspected contact with, exposure to, existence of, or presence of, "asbestos" or products containing "asbestos"

c. Any loss, cost or expense arising, in whole or in part, out of the abating, testing for; monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, manufacturing, sale, storage, transportation, control, dispersal, release, leakage, removal or disposing of, or in any way responding to or assessing the effects of, "asbestos" or products containing "asbestos", by any insured or by any other person or entity.

d. Any other claim for damages, demands, costs, expenses or reimbursement of costs or expenses relating to or arising from "asbestos".

However, this exclusion does not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

B. The following exclusion is added to Paragraph 2., Exclusions of **Section I – Coverage B-Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Asbestos or Asbestos Related Products**

a. "Personal and advertising injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, ingestion of, contact with, exposure to, existence of, or presence of "asbestos", in any manner or form, or in combination with any other factors, substances or events.

b. Any loss, cost or expense arising, in whole or in part, out of the abating, testing for; monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, manufacturing, sale, storage, transportation, control, dispersal, release, leakage, removal or disposing of, or in any way responding to or assessing the effects of, "asbestos" or products containing "asbestos", by any insured or by any other person or entity.

c. Any other claim for damages, demands, costs, expenses or reimbursement of costs or expenses relating to or arising from "asbestos".

C. The following definition is added to the Definitions Section:

**"Asbestos"** For the purpose of this exclusion, "asbestos" means any type or form of asbestos, including but not limited to asbestos products or goods, asbestos fibers, asbestos materials, and any dusts, gases, by-products, vapors, or odors that are released or produced by asbestos products, goods, fibers or material.

    Includes copyrighted material of ISO Properties, Inc. with its permission.
Copyright, ISO Properties, Inc., 2004    **Page 1 of 1**

Case 1:19-cv-01583-RMB-SAK Document 11 Filed 01/29/22 Page 61 of 127 PageID: 671

COMMERCIAL GENERAL LIABILITY
CGHG29 0413

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LIABILITY ADDITIONAL COVERAGE ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

This Index is a quick reference to the various coverages and causes of loss provided by this endorsement. No coverage is provided by this Index. Refer to the pages indicated to determine the scope of your insurance coverage.

### Index of Coverages

| Coverage | Page |
| --- | --- |
| SUPPLEMENTARY PAYMENTS (BAIL BONDS) | 1 |
| FIRE, LIGHTNING AND EXPLOSION DAMAGE TO PREMISES YOU RENT | 1 |
| LIMITED EXCEPTION FOR A SHORT-TERM POLLUTION EVENT | 2 |
| NON-OWNED WATERCRAFT | 2 |
| AGGREGATE LIMITS OF INSURANCE (PER LOCATION) | 2 |
| BODILY INJURY (MENTAL ANGUISH) | 3 |
| PRIMARY AND NONCONTRIBUTORY (OTHER INSURANCE) | 3 |

**SUPPLEMENTARY PAYMENTS (BAIL BONDS)**

SUPPLEMENTARY PAYMENTS – COVERAGES A AND B Paragraph 1.b. is amended to read as follows:

    **b.** Up to $1,000 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

**FIRE, LIGHTNING AND EXPLOSION DAMAGE TO PREMISES YOU RENT**

If DAMAGE TO PREMISES RENTED TO YOU under COVERAGE A is not otherwise excluded from this policy, the following applies:

**A.** SECTION I – COVERAGE A, 2, Exclusions, the last paragraph is amended to read as follows:

    Exclusions c. through n. do not apply to damage by fire, lightning or "explosion" to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of

insurance applies to this coverage as described in Section III – Limits Of Insurance.

**B.** SECTION III - LIMITS OF INSURANCE Paragraph 6. is amended to read as follows:

    **6.** Subject to Paragraph 5. above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage A for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, lightning or "explosion", while rented to you or temporarily occupied by you with permission of the owner.

**C.** SECTION IV – CONDITIONS Item 4. Other Insurance, Paragraph b. Excess Insurance is amended to add the following:

    This insurance is excess over:

    Any of the other insurance, whether primary, excess, contingent or on any other basis:

    For Lightning or "Explosion" insurance for premises rented to you or temporarily occupied by you with permission of the owner.

D. For the purpose of this endorsement, SECTION V – DEFINITIONS Paragraph 9.a. of "insured contract" is amended to read as follows:

**9.** "Insured contract" means:

a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire, lightning or "explosion" to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

E. For the purpose of this endorsement, SECTION V – DEFINITIONS is amended to add the following definition:

"Explosion" means a sudden release of expanding pressure accompanied by a noise, an eruption of material and the scattering of debris to locations further than would have resulted by gravity alone.

"Explosion" does not include any of the following:

**1.** Artificially generated electrical current including electrical arcing that disturbs electrical devices, appliances or wires;

**2.** Rupture or bursting of water pipes;

**3.** Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control; or

**4.** Rupture or bursting caused by centrifugal force.

## LIMITED EXCEPTION FOR A SHORT-TERM POLLUTION EVENT

SECTION I – COVERAGE A, 2. Exclusions, paragraph f. POLLUTION items **(1)(a)** and **(1)(d)** are amended to include:

**(iv)** "Bodily injury" or "property damage" arising out of a "short-term pollution event" provided you notify us of the "short-term pollution event" as soon as practicable, but no more than fourteen (14) days after its ending. However, failure to give notice within the time prescribed shall not invalidate any claim made by the insured or by any other claimant if it shall be shown not to have been reasonably possible to give such notice within the prescribed time and that notice was given as soon as was reasonably possible.

For the purpose of this endorsement, SECTION V DEFINITIONS is amended to add the following definition:

"Short-term pollution event" means a discharge, dispersal, release or escape of "pollutants" which:

a. Begins during the policy period;

b. Begins at an identified time and place;

c. Ends, in its entirety, at an identified time within forty-eight (48) hours of the beginning of the discharge, dispersal, release or escape of the "pollutants";

d. Is not a repeat or resumption of a previous discharge, dispersal, release or escape of the same pollutant from essentially the same source within twelve (12) months of a previous discharge, dispersal, release or escape;

e. Does not originate from an "underground storage tank"; and

f. Is not heat, smoke or fumes from a "hostile fire".

To be a "short-term pollution event", the discharge, dispersal, release or escape of "pollutants" need not be continuous. However, if the discharge, dispersal, release or escape is not continuous, then all discharges, dispersals, releases or escapes of the same "pollutants" from essentially the same source, considered together, must satisfy Provisions a. through f. of this definition to be considered a "short-term pollution event".

"Underground storage tank" means any storage tank, including any attached pumps, valves or piping, buried below the surface of the ground or water, or which, at any time, had been buried under the surface of the ground or water and then subsequently exposed by any means. For the purposes of this definition, buried means that at least 10% of it is below the surface of the ground or water.

The most we will pay is $25,000 for the sum of all such "bodily injury" or "property damage" arising out of a "short-term pollution event" occurring during each separate 12 month period of this policy.

## NON-OWNED WATERCRAFT

SECTION I – COVERAGE A, 2. Exclusions, paragraph **g.(2)** is amended to read as follows:

**(2)** A watercraft you do not own that is:

**(a)** Less than 51 feet long; and

**(b)** Not being used to carry persons or property for a charge;

## AGGREGATE LIMITS OF INSURANCE (PER LOCATION)

SECTION III - LIMITS OF INSURANCE is amended to add the following:

The General Aggregate Limit applies separately to each "location" owned by or rented to you or temporarily occupied by you with the permission of the owner.

For the purpose of this endorsement, SECTION V DEFINITIONS is amended to add the following definition:

"Location" means premises involving the same or connecting lots, or premises whose connection is

Interrupted only by a street, roadway, waterway or right-of-way of a railroad.

The provisions of SECTION III - LIMITS OF INSURANCE that were not modified by this endorsement shall continue to apply as stipulated.

## BODILY INJURY (MENTAL ANGUISH)

SECTION V – DEFINITIONS Paragraph 3. "Bodily Injury" is amended to read as follows:

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including mental anguish or death resulting from any of these at any time.

## PRIMARY AND NONCONTRIBUTORY (OTHER INSURANCE)

SECTION IV – CONDITIONS Item 4. Other Insurance is amended to add the following:

### Primary And Noncontributory Insurance

This insurance is primary to and will not seek contribution from any other insurance available to an additional insured under your policy provided that:

(1) The additional insured is a Named Insured under such other insurance; and

(2) You have agreed in writing in a contract or agreement that this insurance would be primary and would not seek contribution from any other insurance available to the additional insured.

COMMERCIAL GENERAL LIABILITY
CGHG31 0413

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# TOBACCO HEALTH HAZARD EXCLUSION

This endorsement modifies insurance provided under the following:

## COMMERCIAL GENERAL LIABILITY COVERAGE FORM

A. **Paragraph 2. Exclusions of SECTION I – COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABIL-ITY** and **Paragraph 2. Exclusions of SECTION I – COVERAGE B – PERSONAL AND ADVERTISING INJURY LI-ABILITY** are amended to add the following:

This insurance does not apply to any liability or damages, including expenses for investigation of defense, arising out of or allegedly arising out of:

1. "Health hazards" from the use of "tobacco products";

2. "Health hazards" caused by or contributed to by second-hand smoke from "tobacco products";

3. The furnishing of "tobacco products" to a person under the legal smoking age;

4. The manufacture, sale, handling, or distribution of "tobacco products";

5. Any statute, ordinance, or regulation relating to the sale, gift, distribution, or use of "tobacco products"; or

6. Any act or failure to act in connection with "tobacco products", including without limitation

   a. the providing of or failure to provide warnings or instructions;

   b. the promotion of the use or consumption of "tobacco products";

   c. any warranties or representations made at any time with respect to the fitness, quality, durability or performance of "tobacco products".

B. For the purposes of this endorsement, **SECTION V – DEFINITIONS** is amended to add the following:

1. "Health hazards" include, but are not limited to, the actual or alleged emergence, contraction, aggravation or exacerbation or fear of the emergence, contraction, aggravation or exacerbation of any form of cancer, cancerous or precancerous condition, arteriosclerosis, heart disease, emphysema, lung disease or any other injury, disease, malady or impairment of the health of the human body arising out of, in whole or in part, the:

   a. Ingestion, consumption, inhalation or use of; or

   b. Exposure to the ingestion, consumption, inhalation or use of;

   any "tobacco product".

2. "Tobacco product" includes, but is not limited to, tobacco (including raw and cured tobacco), cigars and cigar wrappers, pipes and pipe tobacco, cigarette filters, snuff, chewing tobacco, smokeless tobacco products, tobacco substitutes, cigarettes and cigarette paper, gaseous or solid residues or byproducts of tobacco use or consumption, smoke from any of the above, and any chemical, mineral, or other product sprayed on, applied to or found within or used in conjunction with, any of the above.

IL 00 21 09 08

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

   A. Under any Liability Coverage, to "bodily injury" or "property damage";

      (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association," Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

      (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

      (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

      (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

   "Hazardous properties" includes radioactive, toxic or explosive properties.

   "Nuclear material" means "source material", "special nuclear material" or "by-product material".

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

(a) Any "nuclear reactor";

(b) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel", or (3) handling, processing or packaging "waste";

(c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property. ·

IL 01 41 09 08

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NEW JERSEY CHANGES – CIVIL UNION

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
ELECTRONIC DATA LIABILITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** The term "spouse" is replaced by the following:

Spouse or party to a civil union recognized under New Jersey law.

**B.** Under the Commercial Auto Coverage Part, the term "family member" is replaced by the following:

"Family member" means a person related to:

1. Individual Named Insured by blood, adoption, marriage or civil union recognized under New Jersey law, who is a resident of such Named Insured's household, including a ward or foster child; or

2. Individual named in the Schedule by blood, adoption, marriage or civil union recognized under New Jersey law, who is a resident of the individual's household, including a ward or foster child, if the Drive Other Car Coverage – Broadened Coverage For Named Individual Endorsement is attached.

**C.** With respect to coverage for the ownership, maintenance, or use of "covered autos" provided under the Commercial Liability Umbrella Coverage Part, the term "family member" is replaced by the following:

"Family member" means a person related to you by blood, adoption, marriage or civil union recognized under New Jersey law, who is a resident of your household, including a ward or foster child.

IL 02 08 09 07

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NEW JERSEY CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

A. Pursuant to New Jersey law, this policy cannot be cancelled or nonrenewed for any underwriting reason or guideline which is arbitrary, capricious or unfairly discriminatory or without adequate prior notice to the insured. The underwriting reasons or guidelines that an insurer can use to cancel or nonrenew this policy are maintained by the insurer in writing and will be furnished to the insured and/or the insured's lawful representative upon written request.

This provision shall not apply to any policy which has been in effect for less than 60 days at the time notice of cancellation is mailed or delivered, unless the policy is a renewal policy.

B. Paragraph 2. of the **Cancellation** Common Policy Condition is replaced by the following:

**2.** If this policy has been in effect for less than 60 days, we may cancel this policy for any reason subject to the following:

**a.** We may cancel this policy by mailing or delivering to the first Named Insured and any person entitled to notice under this policy written notice, of cancellation, at least:

(1) 10 days before the effective date of cancellation if we cancel for:

(a) Nonpayment of premium; or

(b) Existence of a moral hazard, as defined in N.J.A.C. 11:1-20.2(f) as follows:

(i) "The risk, danger or probability that the insured will destroy, or permit to be destroyed, the insured property for the purpose of collecting the insurance proceeds. Any change in the circumstances of an insured that will increase the probability of such a destruction may be considered a 'moral hazard'"; and

(ii) "The substantial risk, danger or probability that the character, circumstances or personal habits of the insured may increase the possibility of loss or liability for which an insurer will be held responsible. Any change in the character or circumstances of an individual, corporate, partnership or other insured that will increase the probability of such a loss or liability may be considered a 'moral hazard'".

(2) 30 days before the effective date of cancellation if we cancel for any other reason.

b. In the notice of cancellation which is sent to the first Named Insured, we will state the reason for cancellation.

C. The following is added to the **Cancellation** Common Policy Condition:

**7. Cancellation Of Policies In Effect For 60 Days Or More**

a. If this policy has been in effect for 60 days or more, or is a renewal of a policy we issued, we may cancel this policy only for one or more of the following reasons:

(1) Nonpayment of premium;

(2) Existence of a moral hazard, as defined in N.J.A.C. 11:1-20.2(f);

(3) Material misrepresentation or nondisclosure to us of a material fact at the time of acceptance of the risk;

(4) Increased hazard or material change in the risk assumed which we could not have reasonably contemplated at the time of assumption of the risk;

(5) Substantial breaches of contractual duties, conditions or warranties that materially affect the nature and/or insurability of the risk;

(6) Lack of cooperation from the insured on loss control matters materially affecting insurability of the risk;

(7) Fraudulent acts against us by the insured or its representative that materially affect the nature of the risk insured;

(8) Loss of or reduction in available insurance capacity;

(9) Material increase in exposure arising out of changes in statutory or case law subsequent to the issuance of the insurance contract or any subsequent renewal;

(10) Loss of or substantial changes in applicable reinsurance;

(11) Failure by the insured to comply with any Federal, State or local fire, health, safety or building or construction regulation, law or ordinance with respect to an insured risk which substantially increases any hazard insured against within 60 days of written notification of a violation of any such law, regulation or ordinance;

(12) Failure by the insured to provide reasonable and necessary underwriting information to us upon written request therefore and a reasonable opportunity to respond.

(13) Agency termination, provided:

(a) We document that replacement coverage at comparable rates and terms has been provided to the first Named Insured, and we have informed the first Named Insured, in writing, of the right to continue coverage with us; or

(b) We have informed the first Named Insured, in writing, of the right to continue coverage with us and the first Named Insured has agreed, in writing, to the cancellation or nonrenewal based on the termination of the first Named Insured's appointed agent.

(14) Any other reasons in accordance with our underwriting guidelines for cancellation of commercial lines coverage.

b. If we cancel this policy based on Paragraph **7.a.(1)** or **(2)** above, we will mail or deliver a written notice, to the first Named Insured and any person entitled to notice under this policy, at least 10 days before the effective date of cancellation. If we cancel this policy for any other reason listed above, we will mail or deliver a written notice to the first Named Insured and any person entitled to notice under this policy, not more than 120 days nor less than 30 days before the effective date of such cancellation.

c. In the notice of cancellation which is sent to the first Named Insured, we will state the reason for cancellation. For cancellation due to the nonpayment of premium, the notice will state the effect of nonpayment by the due date. Cancellation for nonpayment of premium will not be effective if payment of the amount due is made before the effective date set forth in the notice.

d. Notice will be sent to the last mailing addresses known to us by:

(1) Certified mail; or

(2) First class mail, if we have obtained from the post office a date stamped proof of mailing showing names and addresses.

© ISO Properties, Inc., 2006 IL 02 08 09 07 □

e. We need not send notice of cancellation if you have:

(1) Replaced coverage elsewhere; or

(2) Specifically requested termination.

D. The following is added and supersedes any other provision to the contrary:

**NONRENEWAL**

1. We may elect not to renew this policy for any reason permitted to cancel it. If we elect not to renew this policy, we will mail a notice of nonrenewal, stating the reasons for nonrenewal, to the first Named Insured at least 30 days but not more than 120 days before the expiration date of this policy. If this policy does not have a fixed expiration date, it shall be deemed to expire annually on the anniversary of its inception.

2. This notice will be sent to the first Named Insured at the last mailing address known to us by:

a. Certified mail; or

b. First class mail, if we have obtained from the post office a date stamped proof of mailing showing the first Named Insured's name and address.

3. We need not mail or deliver this notice if you have:

a. Replaced coverage elsewhere; or

b. Specifically requested termination.

© ISO Properties, Inc., 2006

POLICY NUMBER:                                           COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## EXCLUSION – ATHLETIC OR SPORTS PARTICIPANTS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

**SCHEDULE**

**Description of Operations:**

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

With respect to any operations shown in the Schedule, this insurance does not apply to "bodily injury" to any person while practicing for or participating in any sports or athletic contest or exhibition that you sponsor.

CG 21 01 11 85         Copyright, Insurance Services Office, Inc., 1984

POLICY NUMBER:

COMMERCIAL GENERAL LIABILITY
CG 21 44 07 98

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# LIMITATION OF COVERAGE TO DESIGNATED PREMISES OR PROJECT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

| |
|---|
| **Premises:** |
| **Project:** |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

This insurance applies only to "bodily injury", "property damage", "personal and advertising injury" and medical expenses arising out of:

1. The ownership, maintenance or use of the premises shown in the Schedule and operations necessary or incidental to those premises; or
2. The project shown in the Schedule.

POLICY NUMBER:

COMMERCIAL GENERAL LIABILITY
CG 21 51 04 13

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMENDMENT OF LIQUOR LIABILITY EXCLUSION – EXCEPTION FOR SCHEDULED PREMISES OR ACTIVITIES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Description Of Premises Or Activities: |
|---|
| |
| |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

The following replaces Exclusion c. under Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability**:

**2. Exclusions**

This insurance does not apply to:

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person, including causing or contributing to the intoxication of any person because alcoholic beverages were permitted to be brought on your premises, for consumption on your premises;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in:

(a) The supervision, hiring, employment, training or monitoring of others by that insured; or

(b) Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol;

if the "occurrence" which caused the "bodily injury" or "property damage", involved that which is described in Paragraph (1), (2) or (3) above.

This exclusion applies only if you:

(1) Manufacture, sell or distribute alcoholic beverages;

(2) Serve or furnish alcoholic beverages for a charge whether or not such activity:

(a) Requires a license;

(b) Is for the purpose of financial gain or livelihood;

(3) Serve or furnish alcoholic beverages without a charge, if a license is required for such activity; or

(4) Permit any person to bring any alcoholic beverages on your premises, for consumption on your premises.

However, this exclusion does not apply to "bodily injury" or "property damage" arising out of:

(i) The selling, serving or furnishing of alcoholic beverages at the specified activity described in the Schedule; or

(ii) Permitting any person to bring any alcoholic beverages on the premises described in the Schedule, for consumption on the premises described in the Schedule.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EMPLOYMENT PRACTICES LIABILITY INSURANCE COVERAGE ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**THIS INSURANCE PROVIDES CLAIMS MADE AND REPORTED COVERAGE. DEFENSE EXPENSE IS PAYABLE WITHIN, AND NOT IN ADDITION TO, THE LIMITS OF INSURANCE AND IS SUBJECT TO THE DEDUCTIBLE. PAYMENT OF DEFENSE EXPENSE WILL REDUCE THE LIMIT OF INSURANCE AND THE DEDUCTIBLE.**

**THIS COVERAGE CONSISTS OF: (I) THIS EMPLOYMENT PRACTICES LIABILITY COVERAGE ENDORSEMENT; (II) THE DECLARATIONS PAGE OF THE POLICY TO WHICH THIS ENDORSEMENT IS ATTACHED; (III) THE COMMON POLICY CONDITIONS; AND (IV) ANY ENDORSEMENTS WHICH MAY MODIFY (I), (II) OR (III) ABOVE. PLEASE READ THIS ENTIRE COVERAGE CAREFULLY TO DETERMINE RIGHTS, DUTIES, COVERAGE AND COVERAGE RESTRICTIONS.**

### SCHEDULE

| Employment Practices Liability Limits Of Insurance: | |
|---|---|
|    Each "Claim" Limit | $ |
|    Aggregate Limit | $ |
| Deductible: | |
|    Each "Claim" | $ |
| Retroactive Date: | |
| (Enter date. If left blank, the entry will be deemed the same as the inception of the policy period shown in the Declarations.) | |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

Throughout this Coverage, the words "you" and "your" refer to the Named Insured shown in the Declarations and any other person or organization qualifying as a Named Insured under this Coverage. The words "we", "us" and "our" refer to the Company providing this insurance. The word "insured" means any person or organization qualifying as such under **SECTION II – WHO IS AN INSURED**.

All words and phrases that appear in quotation marks have special meaning. Refer to **SECTION VII – DEFINITIONS**.

### SECTION I – COVERAGE

In consideration of the payment of premium and subject to the limits of insurance, deductible, conditions, exclusions, definitions, and other terms of this Coverage, we agree with you as follows:

**1. Insuring Agreement**

    a. We will pay on behalf of the insured "damages" in excess of the Deductible arising out of any "employment practices" to which this insurance applies.

We have no obligation under this insurance to make payments or perform acts or services except as provided for in this paragraph and in paragraph 2. below.

b. This insurance applies to such "damages" only if:

(1) The "damages" result from "claims" made by:

(a) "Employees";

(b) "Leased workers";

(c) "Temporary workers";

(d) Former "employees"; or

(e) Applicants for employment by you;

(2) The "employment practices" take place in the "coverage territory";

(3) Such "employment practices" occurred:

(a) After the Retroactive Date, if any, shown in the Schedule; and

(b) Before the end of the policy period; and

(4) A "claim" is both:

(a) First made against any Insured, in accordance with paragraph c. below, during the policy period or any Extended Reporting Period we provide under **SECTION VI – EXTENDED REPORTING PERIODS**; and

(b) Reported to us either (I) during the policy period or within thirty (30) days thereafter; or (II) with respect to any "claim" first made during any Extended Reporting Period we provide under **SECTION VI – EXTENDED REPORTING PERIODS**, during such Extended Reporting Period.

c. A "claim" will be deemed to have been made at the earlier of the following times:

(1) When notice of such "claim" is received and recorded by you or by us, whichever comes first; or

(2) When we make settlement in accordance with paragraph 2.b.(2) below.

d. All "claims" by one or more claimants for "damages" based on or arising out of:

(1) One "employment practice"; or

(2) An "interrelated" series of "employment practices";

by one or more insureds shall be deemed to be one "claim" and to have been made at the time the first of those "claims" is made against any insured.

e. Each payment we make for "damages" or "defense expense" reduces the amount of insurance available, as provided under **SECTION III – LIMITS OF INSURANCE.**

**2. Defense of Claims, Administrative Hearings & Settlement Authority**

Subject to the limits of insurance, deductible, conditions, exclusions, definitions, and other terms of this Coverage:

a. We have the right and duty to defend "claims" against the insured seeking "damages" to which this insurance applies and to pay for related "defense expense."

However, we have no duty to:

(1) Defend "claims" against the insured seeking "damages"; or

(2) Pay for related "defense expense",

when this insurance does not apply.

b. We may, at our sole discretion:

(1) Investigate any "employment practice" that may result in "damages"; and

    (2) Settle any "claim" which may result, provided:

        (a) We have the insured's written consent to settle; and

        (b) The settlement is within the applicable limit of insurance available.

c. Our liability will be limited as described below if:

    (1) The insured refuses to consent to any settlement we recommend; and

    (2) Such recommended settlement is acceptable to the claimant.

    After such refusal, our liability under this Coverage for such "claim" shall not exceed the amount we would have paid for "damages" and "defense expense" if the insured had consented to our settlement recommendation. The insured shall thereafter be responsible for the negotiation and defense of that "claim" at their own cost and without our involvement.

d. Our right and duty to defend such "claims" ends when we have used up the limit of insurance available, as provided under **SECTION III – LIMITS OF INSURANCE**. This applies both to "claims" pending at that time and any that may be made.

e. (1) When we control defense of a "claim", we will pay associated "defense expense" and choose a counsel of our choice from the panel of attorneys we have selected to deal with "employment practices" "claims".

    However, if you give us a specific written request at the time a "claim" is first made:

        (a) You or any involved insured may select one of our panel of employment law attorneys; or

        (b) You or such insured may ask us to consider the approval of a defense attorney of your or that insured's choice who is not on our panel.

    We will then use the attorney selected in **(a)** above, or consider the request in **(b)** above, if we deem it appropriate to engage counsel for such "claim".

    (2) If by mutual agreement or court order the insured assumes control of the defense before the applicable limit of insurance is used up, the insured will be allowed to select defense counsel and we will reimburse the insured for reasonable "defense expense". You and any involved insured must:

        (a) Continue to comply with **SECTION V – CONDITIONS, 2. Duties In Event of "Employment Practices" or "Claims"**.

        (b) Direct defense counsel to:

            (1) Furnish us with the additional information we request to evaluate the "employment practices" or "claim"; and

            (2) Cooperate with any counsel we may select to monitor or associate in the defense of the "employment practices" or "claim".

If we defend any insured under a reservation of rights, both such insured's counsel and our counsel will be required to maintain records pertinent to "defense expenses". These records will be used to determine the allocation of any "defense expenses" for which you or any insured may be solely responsible, including defense of an allegation not covered by this insurance.

We will notify you in writing when the applicable limit of insurance has been used-up by the payment of judgments, settlements or "defense expense". We will also initiate and cooperate in the transfer of defense of any "claim" to an appropriate insured for whom the duty to defend has ended by reason of paragraph **2.d.** above.

f. Upon notice to us and with our prior approval, the first Named Insured is authorized to act on behalf of all insureds with respect to the payment of "damages" in settlement of any Administrative Hearing or other non-judicial proceeding before the Federal Equal Employment Opportunity Commission, or any similar Federal, state or local body or commission. This authorization is limited to the sum of:

    (1) "Damages" covered by this Coverage; and

    (2) "Defense expenses", as defined in paragraph **5.d.** in **SECTION VII – DEFINITIONS**;

In a total amount not to exceed two times the amount of the deductible stated in the Schedule.

3. **Exclusions**

This insurance does not apply to "claims" based on, arising out of, or in any way involving:

a. (1) "Employment practices" which were the subject of any demand, suit or other proceeding which was initiated against any insured; or

(2) Facts and circumstances which would cause a reasonable person to believe a "claim" would be made and which were known to any insured;

prior to the effective date of the earlier of:

(i) The first Coverage of this type that we issued to you of which this Coverage was an uninterrupted renewal of this type of coverage; or

(ii) This Coverage.

b. Loss of any benefit conferred or loss of any obligation imposed under an express contract of employment.

c. Any obligation to pay "damages" by reason of the assumption of liability in any contract or agreement.

However, this exclusion does not apply to liability for "damages" that the insured would have in the absence of the contract or agreement.

d. Liability arising under any of the following laws:

(1) Any workers compensation, disability benefits or unemployment compensation law, or any similar law.

However, this exclusion shall not apply to any "claim" based upon, arising from or in consequence of any actual or alleged retaliatory treatment of the claimant by the insured on account of the claimant's exercise of rights pursuant to any such law;

(2) Employees' Retirement Income Security Act of 1974, Public Law 93-406, (ERISA) as now or hereafter amended, or any similar state or other governmental law. This includes:

(a) Fiduciary liability;

(b) Liability arising out of the administration of any employee benefit plan; and

(c) Any other liability under any such laws;

(3) The Fair Labor Standards Act, or any state or common law wage or hour law, including, but not limited to laws governing minimum wages, hours worked, overtime compensation and including any recordkeeping and reporting related thereto.

This exclusion includes actions or claims brought by or on behalf of individuals or agencies seeking wages, fines, penalties, taxes, disgorgement or other affirmative relief or compensation.

This exclusion does not include claims based on the Equal Pay Act or retaliation related to Equal Pay Act claims;

(4) The National Labor Relations Act;

(5) The Worker Adjustment and Retraining Notification Act (Public Law 100-379);

(6) The Consolidated Omnibus Budget Reconciliation Act of 1985; or

(7) The Occupational Safety and Health Act.

This exclusion d. (1) – (7) also applies to:

(i) Any rules or regulations promulgated under any of the foregoing and amendments thereto,

(ii) Any similar provisions of any federal, state or local law,

(iii) That part of any "damages" awarded for the cost or replacement of any insurance benefits due or alleged to be due to any current or former "employee"; and

(iv) Any "claim" based upon, arising from or in consequence of any actual or alleged retaliatory treatment of the claimant by the insured on account of the claimant's exercise of rights pursuant to any such law described in this item d. This provision d.(iv) does not apply to the specific retaliation exceptions shown in items d.(1) and d.(3) above.

e. Oral or written publication of material, if such material:

(1) Was published by or at the direction of the insured with knowledge of the material's falsity; or

(2) Was first published before the Retroactive Date, if any, shown in the Schedule.

f. Dishonest, criminal or fraudulent acts of the insured.

g. The willful failure by the insured or with the insured's consent to comply with any law or any governmental or administrative order or regulation relating to "employment practices".

Willful, as used in this exclusion g., means acting with intentional or reckless disregard for such employment related laws, orders or regulations.

The enforcement of this exclusion against any insured shall not be imputed to any other insured.

h. "Bodily injury".

i. "Employment practices" which occur when or after:

(1) You file for or are placed in any bankruptcy, receivership, liquidation or reorganization proceeding; or

(2) Any other business entity acquires an ownership interest in you, which is greater than fifty percent.

j. Costs of complying with physical modifications to your premises or any changes to your usual business operations as mandated by the Americans with Disabilities Act of 1990 including any amendment thereto, or any similar federal, state or local law.

This exclusion also applies to any "claim" based upon, arising from or in consequence of any actual or alleged retaliatory treatment of the claimant by the insured on account of the claimant's exercise of rights pursuant to any such law described in this item j.

k. Lockout, strike, picket line, related worker replacements or other similar actions resulting from labor disputes or labor negotiations.

This exclusion also applies to any "claim" based upon, arising from or in consequence of any actual or alleged retaliatory treatment of the claimant by the insured on account of the claimant's exercise of rights pursuant to labor disputes or labor negotiations.

l. Access to or disclosure of confidential or personal information, including financial, health, employment or any other type of nonpublic information.

## SECTION II – WHO IS AN INSURED

1. For purposes of this insurance, if you are designated in the Declarations as:

a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

b. A partnership or joint venture, you are an insured. Your current or former members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

c. A limited liability company, you are an insured. Your current or former members are also insureds, but only with respect to the conduct of your business. Your current or former managers are insureds, but only with respect to their duties as your managers.

d. An organization other than a partnership or joint venture, you are an insured. Your current or former directors are insureds, but only with respect to their duties as your directors.

2. Your current or former "employees" are also insureds, but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business.

3. Any heirs, executors, administrators, assignees or legal representatives of any individual insured in paragraphs 1. and 2. above, in the event of the death, bankruptcy or incapacity of such insured, shall be insureds, but only to the extent this insurance would have been available to such insured but for their death, bankruptcy or incapacity.

4. Any organization you newly acquire or form, other than a partnership or joint venture, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

   a. You must provide us notice of such acquisition or formation within 30 days of the effective date of your acquisition or formation;

   b. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

   c. Coverage does not apply to any "employment practices" that occurred before you acquired or formed the organization; and

   d. You must pay us any additional premium due as a condition precedent to the enforceability of this additional extension of coverage.

   This paragraph does not apply to any organization after it is shown in the Declarations.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III – LIMITS OF INSURANCE

1. The limit of insurance stated as Aggregate Limit on the Schedule is the most we will pay for the sum of:

   a. "Damages" for all "claims" arising out of any actual or alleged "employment practices" covered by this insurance; and

   b. "Defense expense" for all "claims" seeking "damages" payable under paragraph 1.a. above.

   Each payment we make for such "damages" or "defense expenses" reduces the Aggregate Limit by the amount of the payment.

   This reduced limit will then be the amount of insurance available for further "damages" and "defense expenses" under this Coverage.

2. Subject to paragraph 1. above, the limit of insurance stated as the Each "Claim" Limit on the Schedule is the most we will pay in excess of the deductible, as further described in SECTION IV – DEDUCTIBLE, for the sum of:

   a. "Damages":

      (1) For injury arising from "employment practices" covered by this insurance; and

      (2) Arising out of one "claim"; and

   b. "Defense expense" associated with that specific "claim" in paragraph 2.a. above.

3. In addition to the payments for "damages" and "defense expense" in paragraphs 1. and 2. above, we will also pay all interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the amount available for the judgment under the provisions of paragraphs 1. and 2. above.

The limits of insurance of this Coverage apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the limits of insurance.

## SECTION IV – DEDUCTIBLE

1. A deductible applies to all "damages" for injury arising from "employment practices" and any "defense expense" however caused.

2. Our obligation to pay "damages" and "defense expense" on behalf of any insured applies only to the sum of the amount of "damages" and "defense expense" for any one "claim" which are in excess of the deductible amount stated on the Schedule.

3. Your obligation is to pay the deductible applicable to each "claim" made against this insurance. That deductible applies to the sum of all "damages" because of injury arising from "employment practices" paid for any one "claim" and applicable "defense expense" associated therewith. If there should be no "damages" paid for a "claim", you are still obligated to pay the applicable deductible for any "defense expense" incurred by us in connection with that "claim".

4. The terms of this insurance apply irrespective of the application of the deductible, including those with respect to:

   a. Our right and duty to defend any "claims" seeking those "damages"; and

   b. Your and any involved insured's duties in the event of a "claim".

5. We may pay any part or all of the deductible to effect settlement of any "claim" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible as we may have paid for "damages" or "defense expense".

6. The application of the deductible does not reduce the applicable limits of insurance.

## SECTION V – CONDITIONS

### 1. Bankruptcy

Subject to exclusion I.(1), the bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this insurance.

### 2. Duties in the Event of "Employment Practices" or "Claims"

a. You must see to it that we are notified as soon as practicable of any specific "employment practices" which you believe may result in an actual "claim". Your belief must be reasonably certain as the result of specific allegations made by a potential claimant or such potential claimant's representative, or as the result of specifically identifiable injury sustained by a potential claimant. Notices of "employment practices" should include the following detailed information:

   (1) How, when and where such "employment practices" took place;

   (2) The names and addresses of any potential claimants and witnesses; and

   (3) The nature of any injury arising out of such "employment practices".

   Notice of such "employment practices" is not notice of a "claim", but preserves any insured's rights to future coverage for subsequent "claims" arising out of such "employment practices" as described in the Basic Extended Reporting Period of SECTION VI – EXTENDED REPORTING PERIODS.

b. If a "claim" is received by any insured:

   (1) You must immediately record the specifics of the "claim" and the date received;

   (2) You and any other involved insured must see to it that we receive written notice of the "claim", as soon as practicable, but in any event we must receive notice either:

      (a) During the policy period or within thirty (30) days thereafter; or

      (b) With respect to any "claim" first made during any Extended Reporting Period we provide under SECTION VI – EXTENDED REPORTING PERIODS, during such Extended Reporting Period.

   As a condition precedent for coverage under this insurance, notice of a "claim" must include the detailed information required in paragraphs 2.a.(1), (2) and (3) above; and

CGHG80 0416      Includes copyrighted material of Insurance Services Office, Inc., with its permission      **Page 7 of 12**

(3) You and any other Involved Insured must:

    (a) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "claim";

    (b) Authorize us to obtain records and other information;

    (c) Cooperate with us in the investigation, settlement or defense of the "claim"; and

    (d) Assist us, upon our request, in the enforcement of any right against any person or organization, which may be liable to the insured because of injury or damage to which this insurance may also apply.

**c.** No insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense without our consent, other than those specific payments authorized under paragraph **2.f.** of **Defense of Claims, Administrative Hearings & Settlement Authority** in **SECTION I – COVERAGE.**

**3. Legal Action Against Us**

No person or organization has a right under this Coverage:

**a.** To join us as a party or otherwise bring us into a "claim" seeking "damages" from any insured; or

**b.** To sue us on this Coverage unless all of its terms have been fully complied with.

Any person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial, but we will not be liable for "damages" that are not payable under the terms of this Coverage or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for "damages" or "defense expense" we cover under this Coverage, our obligations are limited as follows:

**a.** As this insurance is primary insurance, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in paragraph **b.** below.

**b.** If all of the other insurance permits contribution by equal shares, we will follow this method also.

    Under this method, each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

    If any of the other insurance does not permit contribution by equal shares, we will contribute by limits.

    Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Payment of Premiums and Deductibles Amounts**

**a.** We will compute all premiums for this insurance in accordance with our rules and rates; and

**b.** The first Named Insured shown in the Declarations is responsible for the payment of all premiums and deductibles due and will be the payee for any return premiums we pay.

**6. Representations**

By accepting this Coverage you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this Coverage in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the limits of insurance, and any rights or duties specifically assigned in this Coverage to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each Insured against whom "claim" is made.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the Insured has rights to recover all or part of any payment we have made under this Insurance, those rights are transferred to us. The Insured must do nothing after loss to impair them. At our request, the insured will sue those responsible or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Insurance, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date. If notice is mailed, proof of mailing will be sufficient proof of notice.

## SECTION VI – EXTENDED REPORTING PERIODS

1.  a. We will provide Extended Reporting Periods, as described below, if:

    (1) This Coverage is cancelled or not renewed for any reason other than due to:

    (a) Nonpayment of premium;

    (b) Failure to comply with terms or conditions of the Coverage; or

    (c) Fraud;

    (2) This Coverage is renewed with Insurance that does not apply on a claims-made basis;

    (3) This Coverage is modified so that it has a Retroactive Date later than the date shown in the Schedule; or

    (4) We renew or replace this Coverage with insurance that has a reduction in coverage other than:

    (a) A reduction in limits; or

    (b) An increase in deductible amount.

    b. When we provide Extended Reporting Periods as provided under paragraph **1.(a)(4)** above, coverage shall apply only to the portion of coverage that has been reduced.

2.  Extended Reporting Periods are an extension of time allowed for coverage to apply for "claims" first made against any insured and for those "claims" to be reported to us. Extended Reporting Periods do not extend the policy period or change the scope of coverage provided. They apply only to "claims" as the result of "employment practices" committed after the Retroactive Date, if any, shown in the Schedule and before the end of the policy period. Once in effect, Extended Reporting Periods may not be cancelled.

3.  A Basic Extended Reporting Period is automatically provided without additional charge.

    a. This period starts on the day the Extended Reporting Period is triggered as described in paragraph **1.** above and lasts for:

    (1) Five years with respect to "claims" arising out of "employment practices" which had been properly reported to us before the end of the policy period in accordance with paragraph **Section V. 2., Duties in the Event of "Employment Practices" or "Claims"**; and

    (2) Sixty-days with respect to "claims" arising from "employment practices" not previously reported to us.

    b. This period does not:

    (1) Reinstate or increase the limits of insurance; or

    (2) Apply to "claims" that are covered under any subsequent insurance you purchase, or that would be covered but for exhaustion of the limit of insurance applicable to such "claims".

4.  A Supplemental Extended Reporting Period of either twelve (12) or thirty-six (36) months duration is available, but only by endorsement and for an extra charge.

    **a.** This supplemental period starts when the Basic Extended Reporting Period set forth in paragraph **3.a.(2)** above ends.

    **b.** You must give us a written request for this optional coverage, and its length, within 30 days after the end of the policy period.

    **c.** The Supplemental Extended Reporting Period will not go into effect unless you pay the additional premium when due.

    **d.** We will determine the additional premium in accordance with our rules and rates. In doing so, we may take into account the following:

        **(1)** The exposures insured;

        **(2)** Previous types and amounts of insurance;

        **(3)** Limits of insurance available under this endorsement for future payment of "damages" or "defense expense"; and

        **(4)** Other related factors.

    The additional premium will not exceed 200% of the annual premium for this Coverage.

**5.** Coverage provided by a Supplemental Extended Reporting Period Endorsement shall apply excess over any other valid and collectible insurance available under policies in force after the Supplemental Extended Reporting Period begins.

**6.** When the Supplemental Extended Reporting Period Endorsement is in effect, we will provide a Supplemental Extended Reporting Period Limit of Insurance for any "claim" first made during the Supplemental Extended Reporting Period. The Supplemental Extended Reporting Period Limit of Insurance will be equal to the unimpaired dollar amount stated in the Schedule under Aggregate Limit on the day the Extended Reporting Period is triggered as described in paragraph **1.** above.

## SECTION VII – DEFINITIONS

**1.** **"Bodily Injury"** means physical injury to the body, sickness or disease sustained by a person as the result of direct physical injury to the body, including death resulting from any of these at any time. "Bodily Injury" does not include mental anguish that results from an "employment practice".

**2.** **"Claim"** means written or oral notice presented by:

    **a.** Any "employee," "leased worker," "temporary worker," former "employee" or applicant for employment by you; or

    **b.** The EEOC or any other federal, state or local administrative or regulatory agency on behalf of a person described in paragraph **2.a.** above,

alleging that the insured is responsible for "damages" as a result of injury arising out of any "employment practices".

"Claim" includes any civil proceeding in which either "damages" are alleged or fact finding will take place, when either is the result of any "employment practice" to which this insurance applies. This includes:

    **(i)** An arbitration proceeding in which such "damages" are claimed and to which the insured submits with our consent;

    **(ii)** Any other alternative dispute resolution proceeding in which such "damages" are claimed and to which the insured submits with our consent; or

    **(iii)** Any administrative proceedings as established under federal, state or local laws applicable to "employment practices" covered under this insurance.

**3.** **"Coverage territory"** means:

    **a.** The United States of America (including its territories and possessions) and Puerto Rico; or

b. Anywhere in the world with respect to the activities of a person whose place of employment is in the territory described in paragraph 3.a. above, while he or she is away for a short time on your business, provided that the insured's responsibility to pay "damages" (or any type of civil proceeding described under the definition of "claim") in and under the substantive law of the United States of America (including its territories and possessions) or Puerto Rico.

4. **"Damages"** means monetary amounts to which this insurance applies and which the insured is legally obligated to pay as judgments or awards, or as settlements to which we have agreed in writing.

"Damages" include:

a. "Pre-judgment interest" awarded against the insured on that part of the judgment we pay;

b. Any portion of a judgment or award, to the extent allowed by law, that represents a multiple of the compensatory amounts, punitive or exemplary damages; and

c. Statutory attorney fees.

"Damages" do not include:

(1) Civil, criminal, administrative or other fines or penalties;

(2) Equitable relief, injunctive relief, declarative relief or any other relief or recovery other than money; or

(3) Judgments or awards because of acts deemed uninsurable by law.

5. **"Defense expense"** means payments allocated to a specific "claim" for its investigation, settlement, or defense, including:

a. Attorney fees and all other litigation expenses.

b. The cost of bonds to appeal a judgment or award in any "claim" we defend. We do not have to furnish these bonds.

c. The cost of bonds to release attachments, but only for bond amounts within the amount of insurance available. We do not have to furnish these bonds.

d. Reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of any "claim", including actual loss of earnings up to $250 a day because of time off from work.

e. All court costs taxed against the insured in the "claim". However, these payments do not include attorney's fees or attorney's expenses taxed against the insured.

"Defense expense" does not include:

(1) Salaries and expenses of our employees or your "employees", other than:

(a) That portion of our employed attorneys' fees, salaries and expenses allocated to a specific "claim" for the defense of the insured; or

(b) The expenses described in paragraph d. above; or

(2) Interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the amount available for the judgment under the provisions of **SECTION III – LIMITS OF INSURANCE.**

6. **"Employee"** means:

a. A person employed by you for wages or salary;

b. A person who is a current or former member of your board of directors; or

c. A "temporary worker".

However, "employee" does not include any:

(1) Independent contractor;

(2) Any employees of any independent contractor while acting within the scope of their employment; or

(3) Any "leased worker".

7. **"Employment Practices"** means any of the following actual or alleged acts by you that are directed against any of your:

   a. "Employees";

   b. "Leased workers";

   c. Former "employees"; or

   d. Applicants for employment,

   for which damages are sought under any employment related federal, state, or local civil statute or common law:

   (1) Wrongful refusal to employ a qualified applicant for employment;

   (2) Wrongful failure to promote;

   (3) Wrongful deprivation of career opportunity;

   (4) Wrongful demotion, evaluation, reassignment or discipline;

   (5) Wrongful termination of employment, including constructive discharge;

   (6) Employment related misrepresentation;

   (7) Harassment, coercion, discrimination or humiliation as a consequence of race, color, creed, national origin, marital status, medical condition, gender, age, physical appearance, physical and/or mental impairments, pregnancy, sexual orientation or sexual preference or any other protected class or characteristic established by any applicable federal, state or local statute; or

   (8) Oral or written publication of material that:

      (a) Slanders;

      (b) Defames or libels; or

      (c) Violates or invades a right of privacy.

8. **"Interrelated"** means having as a common nexus any fact, circumstance, situation, event, transaction, cause or series of related facts, circumstances, situations, events, transactions or causes.

9. **"Leased worker"** means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

10. **"Pre-judgment interest"** means interest added to a settlement, verdict, award or judgment based on the amount of time prior to the settlement, verdict, award or judgment, whether or not made part of the settlement, verdict, award or judgment.

11. **"Temporary worker"** means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

ILHG07 0416

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CYBER LIABILITY ENDORSEMENT
# CLAIMS-MADE AND REPORTED COVERAGE
# (DEFENSE COSTS AND LEGAL EXPENSES ARE PAID
# WITHIN THE LIMITS OF LIABILITY)

**SCHEDULE**

| Cyber Liability Insurance | |
|---|---|
| Each Claim Limit: | $100,000 |
| Each First Party Insured Event Limit: | $100,000 |
| Annual Aggregate Limit: | $100,000 |

Retroactive Date:

(Enter date. If left blank, the entry will be deemed the same as the inception of the policy period shown in the Declarations.)

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

## I. WHAT IS COVERED

We agree to pay (1) **loss** resulting from a **claim** for an actual or alleged **wrongful act** and (2) **first party costs** resulting from a **first party insured event**, but only if:

A. With respect to a **claim** for **wrongful acts** (third party liability coverage):
   1. The **claim** is first made against an **insured** during the policy period or any extended reporting period (if applicable). A **claim** will be deemed to be first made against an **insured** when the **insured** first receives written notice of the **claim**;
   2. The entirety of the **wrongful act** takes place on or after the **retroactive date**;
   3. The **claim** is reported to us in writing no later than sixty (60) days after the **claim** is first made against the **insured**; and
   4. The **claim** does not arise from any **wrongful acts**, incidents, events, facts or circumstances of which any **insured** had knowledge prior to the **retroactive date**.

B. With respect to **first party insured events** (first party loss coverage):
   1. The entirety of the **first party insured event** takes place on or after the **retroactive date**;
   2. The **first party insured event** is discovered by any **insured** during the policy period or any extended reporting period (if applicable);
   3. The **first party insured event** is reported to **us** no later than sixty (60) days after any **insured** first discovers the **first party insured event**; and
   4. The **first party insured event** does not arise from any incidents, events, facts or circumstances of which any **insured** had knowledge prior to the **retroactive date**.

## II. LIMITS OF LIABILITY

A. The "each **claim** limit" in the **SCHEDULE** is the most we will pay for any one **claim**.
B. The "each **first party insured event** limit" in the **SCHEDULE** is the most we will pay for any one **first party insured event**.

ILHG07 0416

Page 1 of 6

C. The "annual aggregate limit" in the **SCHEDULE** is the most we will pay for the sum of all **claims** made against all **insureds** and all **first party insured events** discovered during the **policy period** and any automatic extended reporting period (if applicable). If the "annual aggregate limit" is exhausted, **our** obligations under this Endorsement will be deemed completely fulfilled and extinguished.

D. The "each **claim** limit," the "each **first party insured event** limit" and the "annual aggregate limit" include defense costs and legal expenses.

## III. WHAT IS NOT COVERED

**We** are not obligated to defend any **claim** or to pay any **loss** or **first party costs** based upon, arising from, attributable to, or in any way involving:  .

A. Any **wrongful act** or **first party insured event**, if, prior to the original inception date of **your** Cyber Liability coverage, such **wrongful act** or **first party insured event** was: (1) reported to us or to any other insurer; (2) the subject of any written demand for monetary damages or legal or administrative proceedings received by an **insured**; (3) identified or disclosed to **us** in connection with **your** insurance application; or (4) known to any **insured**.

B. Liability any **insured** assumes under any contract or agreement. This exclusion does not apply to: (1) liability an **insured** would have in the absence of the contract or agreement, provided such liability is otherwise covered under this Endorsement; (2) with respect to any actual or alleged **wrongful act**, liability for **loss** which **you** assume in the form of a written hold harmless or indemnification agreement, provided that such hold harmless or indemnification agreement is executed prior to the date the **wrongful act(s)** take place.

C. Any actual or alleged breach of contract, warranty, guarantee or promise. This exclusion does not apply to: (1) liability an **insured** would have in the absence of the contract, warranty, guarantee or promise, provided such liability is otherwise covered under this Endorsement; (2) a **claim** alleging breach of **your** privacy policy.

D. Any **claim** brought by or on behalf of an **insured** against another **insured**. This exclusion does not apply to a **claim** brought by **your** employee alleging breach of such employee's personal or confidential information.

E. Any actual or alleged intentional or fraudulent act or omission or intentional violation of law by an **insured**, including the use of unlicensed programs. This exclusion does not apply to a **claim** or **first party insured event** resulting from sabotage by **your** employee.

F. **Your** use of programs that are not **operational programs** or **delivered programs.**

G. Any operations and/or services not related to the business or enterprise named in the Policy declaration page or schedule of insureds.

H. Any actual or alleged infringement of any patent or trade secret; or actual or alleged unfair competition, deceptive trade practices or restraint of trade.

I. Satellite failures; the failure of overhead transmission and distribution lines; the gradual deterioration of subterranean insulation; or electrical or mechanical failures or interruption, such as an electrical spike or surge, brownout or blackout; or outages to gas, water, telephone, cable, telecommunications or other infrastructure unless such infrastructure is under **your** direct operational control and the incident forms a part of an otherwise covered **first party insured event.**

J. Any **adverse media report** that also affects or refers in similar terms to a general security issue, an industry, or **your** competitors without any specific allegations regarding a **security breach** or **privacy breach.**

## IV. CONDITIONS

A. **We** have the right and duty to defend any **claim.** **We** have the exclusive right to appoint legal counsel for the defense and investigation of any **claim** or **first party insured event.** **We** have the right to investigate, adjust, and request documentation in connection with any **claim** or **first party insured event.**

B. All **claims** arising out of the same or related events, incidents, facts or circumstances shall be considered as one **claim** first made on the date the earliest of such **claims** is first made. Appeals and post-trial proceedings shall be considered as part of the original **claim.** All **first party insured events** arising out of

the same or related incidents, facts or circumstances shall be considered as one **first party insured event** first reported to **us** on the date the earlier of such **first party insured events** is reported to **us**. In the event an **insured** reports a **first party insured event** and such **first party insured event** results in a claim against an **insured**, such claim will be deemed first made when we first receive notice of the **first party insured event**, and only one limit of liability will apply.

C. The coverage provided by this Endorsement is excess of and payable only after all other valid and collectible insurance available to the **insured** is exhausted. If all other valid and collectible insurance is excess, we will pay only the proportionate share of loss and/or **first party costs** which the "each **claim** limit" or "**first party insured event** limit" under this Endorsement bears to the total of all limits that apply, but we will not pay more than the "each **claim** limit" or "**first party insured event** limit," whichever applies.

## V. EXTENDED REPORTING PERIOD

### A. AUTOMATIC EXTENDED REPORTING PERIOD

In the event of non-renewal of **your** Policy, or termination of **your** Policy for any reason other than non-payment of premium, **we** will provide, at no additional cost, an Automatic Extended Reporting Period of sixty (60) days within which **claims** or **first party insured events** otherwise covered by this Endorsement may be made and reported. Such Automatic Extended Reporting Period will commence immediately upon termination or expiration of the Policy and will apply to:

1. Any **claim** which:
   a. arises out of **wrongful act(s)** that take place or first commence on or after the **retroactive date**, but prior to the Policy termination or expiration date; and
   b. is first made against an **insured** and reported to us in writing during the Automatic Extended Reporting Period.

2. A **first party insured event** which:
   a. occurs or first commences on or after the **retroactive date**, but prior to the Policy termination or expiration date;
   b. is first discovered by any **insured** during the Automatic Extended Reporting Period; and
   c. is reported to **us** in writing during the Automatic Extended Reporting Period.

### B. SUPPLEMENTAL EXTENDED REPORTING PERIOD

**You** shall have the option, upon payment of the required additional premium, to purchase a Supplemental Extended Reporting Period of 12 months or 36 months following the effective date of termination of coverage and will receive a Supplemental Extended Reporting Endorsement. The Supplemental Extended Reporting Period will extend the time during which **claims** for **wrongful acts** or **first party insured events** otherwise covered by this Endorsement may be made and reported. If the Supplemental Extended Reporting Period is purchased, the Automatic Extended Reporting Period will be included within the Supplemental Extended Reporting Period. Such Supplemental Extended Reporting Period will apply only to:

1. Any **claim** which:
   a. arises out of **wrongful act(s)** that take place or first commence on or after the **retroactive date**, but prior to the Policy termination or expiration date; and
   b. is first made against an **insured** during the Supplemental Extended Reporting Period; and
   c. is reported in writing to **us** no later than 60 days after the **claim** is first made against the **insured**.

2. A **first party insured event** which:
   a. occurs or first commences on or after the **retroactive date**, but prior to the Policy termination or expiration date;
   b. is first discovered by any **insured** during the Supplemental Extended Reporting Period; and

    c.   is reported to **us** in writing no later than 60 days from the date any **insured** discovers the **first party insured event**.

The right to purchase the Supplemental Extended Reporting Period Endorsement shall terminate unless written notice of such election, together with full payment of the required additional premium due, is received by **us** no later than sixty (60) days after the effective date of termination of coverage. The additional premium for the Supplemental Extended Reporting Period Endorsement shall be a percentage of the rates for Cyber Liability coverage in effect on the date the policy was issued or last renewed. If **you** do not elect to purchase a Supplemental Extended Reporting Period, then coverage under this Endorsement will terminate at the end of the Automatic Extended Reporting Period. If **you** elect to purchase a Supplemental Extended Reporting Period, coverage will terminate at the end of the Supplemental Extended Reporting Period.

Once in effect, the Supplemental Extended Reporting Period may not be canceled, and the entire premium will be deemed fully earned. **We** will not be liable to return any portion of the premium to **you** for such Supplemental Extended Reporting Period. If **you** have not paid the required additional premium for the Supplemental Extended Reporting Period when due, then such Supplemental Extended Reporting Period shall be void.

C.   All terms and conditions of this Endorsement, including the limits of liability set forth in Section II – Limits of Liability, will continue to apply during any extended reporting period.

D.   The existence of any extended reporting period will not increase or reinstate any "each **claim** limit," "each **first party insured event** limit" or "annual aggregate limit".

## VI. DEFINITIONS:

With respect to the coverage provided by this Endorsement, certain words are shown in bold face print and are defined as follows. Refer to the Definitions section in the Policy for terms that are shown in bold in this Endorsement, but are not defined below. If a term is defined below and in the Policy, the definition below applies to the coverage provided by this Endorsement. All other terms in this Endorsement will be interpreted according to their generally accepted meaning or common customary usage.

**Acquiring bank** means a bank or financial institution that accepts credit and/or debit card payments (including credit cards, debits cards, stored value cards and pre-paid cards) for products or services on behalf of a merchant, including processing and crediting those payments to a merchant's account.

**Act of cyber terrorism** means the premeditated use of disruptive activities, or the threat thereof, against computers, computer systems, networks and/or public internet by any person or group(s) of persons, whether acting alone or on behalf of, or in connection with, any organization(s) or government(s) with the intention to intimidate or cause destruction or harm and/or further social, ideological, religious, political or similar objectives. **Act of cyber terrorism** includes, but is not limited to, the use of information technology to organize and execute large-scale attacks against computer systems, networks and/or public internet resulting in disabling and/or deleting critical infrastructure, data or information.

**ADCR** means the Account Data Compromise Recovery process as established by Visa or similar processes as established by other **card associations**.

**Adverse media report** means any unpredictable report or communication of an actual or potential **security breach** or **privacy breach**, which has been publicized through any media channel including, but not limited to, television, print media, radio or electronic networks, the internet, and/or electronic mail; and threatens material damage to **your** reputation or **your** brand.

**Business associate** means any third party independent contractor that provides **you** with business process outsourcing services or information technology services under a written contract with **you** to provide such services.

**Card association** means Visa International, MasterCard, Discover, JCB, American Express and any similar credit or debit card association that is a participating organization of the Payment Card Industry Security Standards Council.

**Claim** means: (1) a written demand for monetary damages or other non-monetary relief made against an **insured**; (2) civil proceedings or arbitration proceedings commenced against an **insured** by the service of a summons or complaint; (3) written notification of a government investigation commenced against an **insured**; or (4) a written demand for a PCI DSS assessment made against an **insured** by an **acquiring bank** or **card association** due to non-compliance with the PCI Data Security Standard.

**Delivered programs** means programs, applications, and software where the development stage has been finalized, having passed all test-runs and been proven successful in a live environment.

**First party costs** means the following reasonable and necessary costs and expenses incurred by **you** as a result of a **first party insured event**: (1) **privacy breach** or **security breach** mitigation costs, including legal expenses, forensic investigation fees, proactive and reactive crisis management expenses, public relations and advertising expenses, costs to notify affected individuals of a **privacy breach**, whether or not notification is required in the applicable jurisdiction, and a maximum of twelve (12) months of credit monitoring and identity restoration services; (2) income loss you sustain, business interruption expenses **you** incur, and/or costs **you** incur to restore, replace or recreate **your** electronic data that is damaged, corrupted or destroyed as a direct result of a **network security incident** or an **act of cyber terrorism**; or (3) funds you pay to persons reasonably believed to be responsible for a cyber extortion threat made against **you**. **First party costs** do not include: (1) any amounts to repair damage to, or to replace, **your** tangible property, including computer hardware; (2) any liability to third parties for whatever reason, including legal costs and expenses of any type; (3) contractual penalties or consequential damages; or (4) fines, penalties, taxes or sanctions.

**First party insured event** means: (1) a **security breach** or **privacy breach**; (2) a **network security incident**; (3) a cyber extortion threat; (4) an **act of cyber terrorism**; or (5) an **adverse media report**. **First party insured event** does not include any **claim** made by a third party.

**Insured** means any person or organization qualifying as such under the Policy to which this Endorsement attaches.

**Loss** means: (1) damages, judgments, awards, or amounts designated by a government entity as civil or administrative fines or penalties, any of which an **insured** is legally obligated to pay as a result of a **claim**; (2) settlements negotiated with our consent; (3) reasonable and necessary legal fees, costs or expenses incurred in the defense of a **claim**; and (4) a PCI DSS Assessment. **Loss** does not include any amounts deemed uninsurable by law, or any costs associated with the adoption and implementation of any compliance plan.

**Network security incident** means any of the following which results in damage, corruption, theft or misuse of **your** electronic data: (1) accidental damage or destruction of **your** computer hardware or electronic media; (2) administrative or operational mistakes by **you**, **your** employee, or **your business associate** in the handling of **your** electronic data or in the operation of **your** computer system; or (3) a **security breach**.

**Operational programs** means programs and software that are ready for operational use, having been fully developed, tested, and accepted by **you**.

**PCI DSS assessment** means a monetary fine or penalty assessed against an **insured** by an **acquiring bank** or **card association**, including related compliance case costs, **ADCR** financial liability and card replacement costs, as a result of a **security breach** or **privacy breach**.

**PCI Data Security Standard** (known as "PCI DSS") means the published Payment Card Industry Security Council Data Security Standard in effect now or as hereafter amended, which all merchants and processors must follow when storing, processing and transmitting cardholder data.

Privacy breach means an unauthorized disclosure of personal or confidential information that violates **your** privacy policy or any federal or state law or regulation associated with the confidentiality, access, control and use of personally identifiable, non-public information, but only if committed or allegedly committed by you, **your** employee, or a **business associate** that is holding, processing, storing or transferring such personal or confidential information for **you**.

**Security breach** means: (1) unauthorized access to or use of **your** computer system; (2) a denial of service attack against **your** computer system; or (3) infection of **your** computer system by malicious code.

**Retroactive date** means the date specified as such on this Endorsement, on or after which any **wrongful act** or **first party insured event** must have taken place in order to be considered for coverage under this Endorsement.

**We, us,** and **our** means the company which is providing the insurance under this Endorsement.

**Wrongful act(s)** means any of the following, whether actual or alleged: (1) an act or error committed by an **insured** in the release or display of **your** electronic or print media, which results in privacy injury, infringement of copyright, trademark or domain name, or plagiarism; (2) a **privacy breach**; (3) an **insured's** failure to prevent or hinder, or to timely disclose, a **security breach** or **privacy breach**; or (4) an **insured's** non-compliance with **PCI Data Security Standards**.

**You** or **Your** means any person or organization shown on the Policy Declarations, and any other person or organization qualifying as a Named Insured under the Policy to which this Endorsement attaches.



# EXHIBIT B

SUPERIOR COURT OF N.J.
CUMBERLAND COUNTY

SEP 25 2017

REC'D & FILED
CIVIL CASE
MANAGEMENT OFFICE

LAW OFFICES OF RICHARD A. STOLOFF
BY: RICHARD A. STOLOFF
605 New Road
Linwood, NJ 08221
(609) 601-2233

ATTORNEY FOR PLAINTIFF

| | |
|---|---|
| DENNIS COSBY, EUGENE COSBY and TERRY R. MAYES, | SUPERIOR COURT OF NEW JERSEY |
| Plaintiffs | CUMBERLAND COUNTY |
| | LAW DIVISION |
| vs. | DOCKET NO: CUM-L-00403-17 |
| GRANT PLAZA, LANDIS PIG ROAST, LLC, Z&D REALTY, LLC, ZIGGY DOBKOWSKI, DIANE DOBKOWSKI, RAHEEM MCCLENDON, JOHN DOE (1-10), XYZ CORPORATIONS (1-10), and RICHARD ROE (1-10), j/s/a | 3RD AMENDED COMPLAINT |
| Defendants | |

Plaintiffs, Dennis Cosby and Eugene Cosby, both residing at 1123 East Chestnut Avenue, Apartment A-17, City of Vineland, County of Cumberland and State of New Jersey, and plaintiff, Terry R. Mayes, residing at 221 Laurel St., City of Vineland, County of Cumberland and State of New Jersey, by way of Complaint against defendants say:

## COUNT I

1.    On or about April 21, 2017, plaintiffs, Dennis Cosby, Eugene Cosby and Terry R. Mayes, were invitees lawfully upon the premises commonly known as Grant Plaza located at 619 East Landis Avenue, in the City of Vineland, County of Cumberland and State of New Jersey.

2.    At the above time and place, the establishment known as Grant Plaza was owned, operated, maintained, managed, supervised and overseen by defendants, Z&D Realty, LLC, Landis Pig Roast, LLC, Ziggy Dobkowski and Diane Dobkowski.

3. Defendants, Landis Pig Roast, LLC, Z&D Realty, LLC, Grant Plaza, Ziggy Dobkowski and/or Diane Dobkowski, were issued a liquor license to serve alcoholic beverages at Grant Plaza located at 619 East Landis Avenue, and were obligated and bound to sell and serve alcoholic beverages in accordance with all the rules and regulations applicable to the sale and service of alcoholic beverages.

4. At all times material hereto, all defendants acted individually and/or by and through their employees, agents, servants, contractors and/or assigns.

5. On the above captioned date, plaintiffs, Dennis Cosby, Eugene Cosby and Terry R. Mayes, while lawfully inside said premises as business invitees, were shot by unknown assailants who brought firearms inside defendants' premises during hours of operation.

6. The aforesaid premises in question was negligently owned, operated, maintained and managed by defendants.

7. At the aforesaid time and place, the defendants acting individually and/or by and through their agents, servants, employees, workers and/or assigns, created and/or permitted a hazardous and dangerous condition to exist and/or carelessly and negligently operated, maintained and managed said property and premises.

8. At all times herein mentioned, defendants had a non-delegable duty to exercise due and reasonable care commensurate with foreseeable risks, including serious injury and harm, to provide adequate security at said establishment during hours of operation for said business invitees, including plaintiffs, in accordance with reasonable standards of safety and security.

9. On or about April 21, 2017, and for a period of time prior thereto, said time period being sufficiently long enough to impose a clear duty to act, the defendants knew or should have known that the establishment known as Grant Plaza was unsafe and presented

security hazzards and that effective security precautions, including various services and/or security measures were available for implementation prior to the assault upon plaintiffs. In violation of the aforesaid duty to act, the defendants negligently, carelessly and recklessly failed to provide sufficient and adequate security, failed to take reasonable and proper measures to warn, inform and protect their invitees, operated and maintained and controlled the property in an unreasonably defective and improper condition and manner, failed to implement proper security precautions and procedures and measures, served alcoholic beverages to those that were visibly intoxicated and disorderly, allowed or created a potentially dangerous condition on the property in failing to monitor or supervise the premises, failed to prevent their invitees from harming other invitees and failed to take reasonable and proper preventative action to prevent the dangerous conditions and harms to plaintiffs as aforesaid.

10.    As a result of the negligence, carelessness and recklessness of the defendants as aforesaid, plaintiffs, Dennis Cosby, Eugene Cosby and Terry R. Mayes, suffered serious, severe, permanent and disabling injuries and have been and will be required in the future to seek medical attention to affect a cure for their injuries, have been and will in the future be caused to refrain from their normal pursuits, have and will incur medical expenses in an effort to cure themselves of their injuries and were otherwise seriously and permanently injured.

11.    Plaintiffs sustained personal injuries as a result of the negligent service of alcoholic beverages by defendants.

WHEREFORE, plaintiffs demand judgment in their favor and against the defendants on this count and for damages, punitive damages, interests, attorney's fees and costs of suit.

## COUNT II

1.     Plaintiffs, Dennis Cosby, Eugene Cosby and Terry R. Mayes, repeat and reallege the allegations contained in the previous Count of the Complaint and make them a part hereof as if more specifically set forth herein at length.

2.     At all times mentioned herein, defendants, Landis Pig Roast, LLC, Z&D Realty, LLC, Grant Plaza, Ziggy Dobkowski and/or Diane Dobkowski, did own, lease, maintain, manage, operate and have charge and control of the property known as Grant Plaza located at 619 East Landis Avenue, in the City of Vineland, County of Cumberland and State of New Jersey.

3.     At all times mentioned herein, defendants and each of them had a duty to select, hire, train, control, retain and oversee employees of defendants.

4.     At all times mentioned herein, defendants and each of them had a duty to provide professional and competenant employees for their property known as Grant Plaza.

5.     On or about April 21, 2017, said defendants were negligent, careless and reckless in hiring, retaining and providing professional and competenant employees, including any and all security personal, at their property known as Grant Plaza, breaching their duties to plaintiffs.

6.     Defendants and each of them permitted, tolerated, encouraged and/or ratified practices both unjustified, unreasonable, unwarranted and illegal for the use of force by their patrons in that defendants failed to properly screen, hire, train, retain and supervise their employees and/or managers and failed to provide reasonable and adequate security measures for business invitees and patrons entering, re-entering and existing inside the premises.

7.     Defendants' duties, obligations and responsibilities to plaintiffs were non-delegable. As a result of the foregoing, plaintiffs, Dennis Cosby, Eugene Cosby and Terry R.

Mayes, have sustained severe, permanent personal injuries, were caused to refrain from their normal pursuits and will continue to be so limited in the future, suffered emotional distress, great pain and anguish, humiliation and embarrassment, all to plaintiffs' determent and loss.

WHEREFORE, plaintiffs demand judgment in their favor and against the defendants on this count and for damages, punitive damages, interests, attorney's fees and costs of suit.

### COUNT III

1.     Plaintiffs, Dennis Cosby, Eugene Cosby and Terry R. Mayes, repeat and reallege the allegations contained in the previous Counts of the Complaint and make them a part hereof as if more specifically set forth herein at length.

2.     At all times mentioned herein, defendant, Raheem McClendon, did rent, lease, maintain, manage, operate and have charge and control of the property known as Grant Plaza located at 619 East Landis Avenue, in the City of Vineland, County of Cumberland and State of New Jersey at the time of the aforesaid incident

3.     At all times mentioned herein, defendant had a duty and did undertake to select, hire, train, control, retain and oversee security personnel for the aforementioned premises at the time of the incident.

4.     At all times mentioned herein, defendant had a duty to provide professional and competenant employees, including security personnel, for the property known as Grant Plaza.

5.     On or about April 21, 2017, said defendant was negligent, careless and reckless in hiring, retaining and providing professional and competent employees, including any and all security personal, at the property known as Grant Plaza, breaching his duty to plaintiffs.

6.     Defendant permitted, tolerated, encouraged and/or ratified practices both unjustified, unreasonable, unwarranted and illegal for the use of force by their

patrons in that defendant failed to properly screen, hire, train, retain and supervise their employees and/or managers and failed to provide reasonable and adequate security measures for business invitees and patrons entering, re-entering and existing inside the premises.

7.    Defendant's duties, obligations and responsibilities to plaintiffs were non-delegable. As a result of the foregoing, plaintiffs, Dennis Cosby, Eugene Cosby and Terry R. Mayes, have sustained severe, permanent personal injuries, were caused to refrain from their normal pursuits and will continue to be so limited in the future, suffered emotional distress, great pain and anguish, humiliation and embarrassment, all to plaintiffs' determent and loss.

WHEREFORE, plaintiffs demand judgment in their favor and against the defendants on this count and for damages, punitive damages, interests, attorney's fees and costs of suit.

## COUNT IV

1.    Plaintiffs, Dennis Cosby, Eugene Cosby and Terry R. Mayes, repeat and reallege the allegations contained in the previous Counts of the Complaint and make them a part hereof as if more specifically set forth herein at length.

2.    John Does (1-10), individually, intending owners and property managers of the defendants' Grant Plaza, Z&D Realty, LLC, Landis Pig Roast, LLC, Ziggy Dobkowski, Diane Dobkowski, and Raheem McClendon, did own, rent, lease, maintain, manage, operate and have charge and control of the property known as Grant Plaza, located at 619 East Landis Avenue, in the City of Vineland, County of Cumberland and State of New Jersey.

3.    At all times mentioned herein, defendants, John Doe (1-10), had a duty to hire, train, retain, control and oversee employees for said defendants.

4.    At all times mentioned herein, all defendants had a duty and care to provide professional and competent employees for their property, including defendants, John Doe (1-10).

5.      On or about April 21, 2017, defendants, John Doe (1-10), were negligent and careless in retaining, hiring and contracting with defendants, Grant Plaza, Z&D Realty, LLC, Landis Pig Roast, LLC, Ziggy Dobkowski, Diane Dobkowski, and Raheem McClendon, and for failing to provide professional and competent employees at the property known as Grant Plaza, breaching their duties to plaintiffs.  Defendants John Doe (1-10), permitted, encouraged, tolerated and ratified practices of such unjustified, unreasonable and unwarranted and illegal use of force by their patrons in that they failed to properly screen, hire, train, retain and supervise their employees and managers.

6.      Defendants, John Doe (1-10), failed to promulgate and/or enforce regulations for proper screening and safety procedures. The duties, obligations and responsibilities to plaintiff owed by defendants, John Doe (1-10), were non-delegable.

7.      As a result of the foregoing, plaintiffs,  Dennis Cosby, Eugene Cosby and Terry R. Mayes, sustained severe, serious, permanent and personal injuries and damages as more fully set forth herein.

WHEREFORE, plaintiffs demand judgment in their favor and against the defendants on this count and for damages, punitive damages, interests, attorney's fees and costs of suit.

### COUNT V

1.      Plaintiffs,  Dennis Cosby, Eugene Cosby and Terry R. Mayes, repeat and reallege the allegations contained in the previous Counts of the Complaint and make them a part hereof as if more specifically set forth herein at length.

2.      Defendants, XYZ Corporations (1-10), owned, leased, maintained, managed, operated and had charge and control of the property known as Grant Plaza and/or owned and managed defendants, Z&D Realty, LLC, Landis Pig Roast, LLC, and Grant Plaza.

3. Defendants, XYZ Corporation (1-10), had the care and duty to provide management and management duties to defendants, Grant Plaza, Z&D Realty, LLC, Landis Pig Roast, LLC, Ziggy Dobkowski, Diane Dobkowski, and Raheem McClendon.

4. On or about April 21, 2017, defendants, XYZ Corporation (1-10), were negligent and careless in retaining, hiring and providing professional and competent employees and security at the property known as Grant Plaza. Defendants, XYZ Corporation (1-10), permitted, encouraged, tolerated and ratified practices of such unjustified, unreasonable, unwarranted and illegal use of force by their patrons in that it failed to properly screen, hire, train, retain and supervise its employees and management personal and implement reasonable security and safety measures.

5. Defendants, XYZ Corporation (1-10), were otherwise negligent.

6. As a result of the foregoing, plaintiffs, Dennis Cosby, Eugene Cosby and Terry R. Mayes, sustained severe, serious and permanent injuries and damages as more fully set forth herein.

WHEREFORE, plaintiffs, demand judgment in their favor and against the defendants on this count and for damages, punitive damages, interests, attorney's fees and costs of suit.

## COUNT VI

1. Plaintiffs, Dennis Cosby, Eugene Cosby and Terry R. Mayes, repeat and reallege the allegations contained in the previous Counts of the Complaint and make them a part hereof as if more specifically set forth herein at length.

2. Defendants, Richard Roe (1-10), are individuals whose true identity is not known at this time after reasonable investigation.

3. On April 21, 2017, defendants, Richard Roe (1-10), assaulted plaintiffs, Dennis

Cosby, Eugene Cosby and Terry R. Mayes, by shooting them with firearms inside Grant Plaza.

4.    As a result of defendants' negligent and/or intentional acts of assault and battery,

plaintiffs, Dennis Cosby, Eugene Cosby and Terry R. Mayes, sustained severe, serious,

permanent and personal injuries and damages as more fully set forth herein.

WHEREFORE, plaintiffs demand judgment in their favor and against the defendants on

this count and for damages, punitive damages, interests, attorney's fees and costs of suit.

LAW OFFICES OF RICHARD A. STOLOFF

BY:    _____
       RICHARD A. STOLOFF, Attorney for Plaintiffs

### DEMAND FOR TRIAL BY JURY

Plaintiffs hereby demand a trial by jury as to all issues.

LAW OFFICES OF RICHARD A. STOLOFF

BY:    _____
       RICHARD A. STOLOFF, Attorney for Plaintiffs

### CERTIFICATION PURSUANT TO R. 4:5-1

Following my initial review of this matter, it appears that there are no other actions or

arbitrations related to this suit pending or presently contemplated.

Following my initial review of this matter it appears that there are no other persons who

should be joined as parties.

LAW OFFICES OF RICHARD A. STOLOFF

BY: _____
RICHARD A. STOLOFF, Attorney for Plaintiffs

## DEMAND FOR INTERROGATORIES

Demand is hereby made that Defendants answer Uniform C and Supplemental Interrogatories attached hereto in accordance with the New Jersey Court Rules.

LAW OFFICES OF RICHARD A. STOLOFF

BY: _____
RICHARD A. STOLOFF, Attorney for Plaintiffs

## DESIGNATION OF TRIAL COUNSEL

Please take notice that pursuant to R. 4:25-4, Richard A. Stoloff, Esquire, is hereby designated as Trial Counsel.

LAW OFFICES OF RICHARD A. STOLOFF

BY: _____
RICHARD A. STOLOFF, Attorney for Plaintiffs

## SUPPLEMENTAL INTERROGATORIES

1.   Fully identify all persons (whether or not they are employees, agents, or contractors of defendants) by name, employers and title who had any responsibility for safety or security at Grant Plaza at the time of the incident on April 21, 2017.

2.    Identify by name and title and employer all individuals who were providing security/safety services for Grant Plaza either inside or outside the premises on the evening of April 20, 2017, to the morning April 21, 2017.

3.    Identify by name, address and place of employment each person or entity in charge of security of the Grant Plaza including inspecting, securing, policing and searching each individual who gained access inside Grant Plaza during the evening of April 20, 2017, to the early morning of April 21, 2017, prior to and during the incident at issue.

4.    Identify by name, address and employer each individual who was supervising/overseeing any and all security measures used at Grant Plaza on the evening of April 20, 2017, to the early morning of April 21, 2017.

5.    Identify each and every method used to screen/search each individual who entered Grant Plaza on the evening of April 20, 2017, to the early morning of April 21, 2017.

6.    Identify by manufacturer, model, serial number and quantity each device used by any and all individuals while performing security/safety services at Grant Plaza on the evening of April 20, 2017, to the early morning of April 21, 2017.

### REQUEST FOR DOCUMENTS AND THINGS

PLEASE TAKE NOTICE that you are required to provide the following materials pursuant to the applicable provisions of Rule 4:10 and Rule 4:18 returnable to the Law Offices of Richard A. Stoloff, 605 New Road, Linwood, New Jersey 08221, as per the Rules of Court.

### DEFINITIONS

1.    The word "incident" as used herein, except wherever differently described, shall mean the incident giving rise to this lawsuit.

2.    The words "plaintiff", "defendant", "co-defendant" as used herein, except

wherever differently described, shall refer to all plaintiff, defendants and co-defendants party to this lawsuit.

3.    The word "document" as used herein shall include without limitation all writings, drawings, grafts, charts, photographs, recordings, transcripts of recorded information, telegram, reports, data compilations from which information can be obtained and translated, patents, copyrights and any other information in written, photographic or recorded form that is tangible or capable of designation for examination and use by whatever designation it may be identified and wherever it may be.

## DOCUMENTS AND TANGIBLE THINGS REQUESTED

1.    All photographs which relate to the accident or incident. The request is to include, but is not limited to, photographs depicting the scene of the incident; the persons and the condition and/or injuries which plaintiff claims result from the incident.

2,    A copy of the Police incident Report or any other official and/or business report filed in connection with the incident.

3.    Any report, statement or writing signed by any defendant or on behalf of any defendant in connection with the incident.

4.    A copy of the declaration sheet of any liability insurance policy covering any defendant on the date of the incident.

5.    The reports of any an all experts who have reviewed and/or performed any examinations in regards to any aspect of this case on behalf of defendant or defendants' attorney and who have submitted either an oral or written report to defendants' attorney. In the event a report was oral, provide a complete summary of said report.

6,    All bills, invoices and/or other documents reflecting the amounts paid, or to be

paid, by defendant, defendants's insurance carriers, private plan, union or any other source for property damage, hospital services, medical treatment, nursing care, prescriptions, equipment or other services and/or obtained by defendant in connection with the plaintiffs' medical treatment in connection with the subject accident or incident.

7.     All bills, contracts, payroll records, receipts, invoices and/or other documents reflecting the amounts billed, amounts paid, or to be paid by and defendant or anyone other than defendants for security services at the Grant Plaza throughout the years 2012 through 2017.

8.     All bills, contracts, payroll records, receipts, invoices and/or other documents reflecting the amounts billed, amounts paid, or to be paid by any defendant to anyone other than defendants for police at Grant Plaza throughout the years 2012 through 2017.

9.     Copies of any contracts, bills or invoices with or rendered to the defendant for the security of, in relevant part, the Grant Plaza.

10.     Any and all investigative reports, correspondence and/or records relative to the incident at issue.

11.     Any and all written, statements, transcripts, or recordings of statements which address or relate to the incident at issue.

12.     Any and all photographs, plans, blueprints, diagrams, video or similar documents of the scene of the incident from the opening of business on April 20, 2017, to the close of business on April 21, 2017.

13.     The security schedule for the date and time at issue, for the Grant Plaza in which plaintiff was injured. If the "regular" security schedule was changed and not utilized on the date and time at issue, provide the regular schedule and any documents which address the schedule time.

14.     Any and all memoranda, e.g. letters, telephone messages, orders, which record or demonstrate complaints about the security of the Grant Plaza or which otherwise notified defendant of the inadequate security in the Grant Plaza.

15.     The position description for all persons in charge of supervision or security of the area in which plaintiff was injured and the position description for those scheduled to perform that function on the day at issue.

16.     Any and all employee handbooks, procedural manuals, instructions, memoranda or similar documents describing: (a) schedules and procedures for securing, inspecting, and/or maintaining the area in question in a safe condition; (b) schedules and procedures for inspecting the area in question; and (c) incident report procedures.

17.     If the area in which plaintiff was injured has been changed or altered, provide any and all records reflecting said change or alteration for the area at issue.

18.     Any and all written complaints and records of oral complaints regarding weapons in or about the Grant Plaza.

19.     Any and all records or reprimands or other disciplinary actions taken against the individual(s) charged with maintaining the safety of the area at issue which relate to their failure to properly perform this task either before the incident at issue or as a result of the incident at issue.

20.     Provide any and all documents that recorded in any way plaintiff's incident.

21.     Provide any and all documents which refers to any response to plaintiffs' incident by defendants.

22.     Provide any and all insurance policies in effect at the time of this occurrence which provide insurance coverage for the harm plaintiffs' allege defendant caused as set forth in plaintiffs' Complaint, including but not limited to umbrella policies.

23. If a communications system existed among security personnel on the date and time at issue please identify by make and model each such device and if such equipment was not functioning, provide any and all reports regarding that failure and/or the repair of the communication system.

24. Provide any and all policies, procedures, instructions, notices, internal memoranda, correspondence or similar documents which in any way address the procedures to be utilized for the safety of patrons of the Grant Plaza.

25. Produce copies of any all statements taken from any and all parties and witnesses taken prior to the matter being referred to defense counsel including statements taken at the request of defendants' insurance company.

26. If defendants contend that no statements responsive to Request No. 25 above exist, provide an affidavit of defendants' insurance adjuster stating under oath that no such statements exist.

27. Any and all leases in effect at the time of the incident regarding the property at 619 East Landis Avenue, Vineland, New Jersey.

28. PLEASE TAKE FURTHER NOTICE, that the undersigned demands on behalf of the plaintiff in this action, that you produce at the time and place specified, and permit the undersigned to discover, inspect and photocopy, each and every record, document, claim letter, pleading, answer, answers to interrogatories, deposition transcript, photograph, video, memos relative to any and all prior incidents of assaults and claims for personal injuries arising from assaults at the subject premises.

29. AS TO THE DEMAND FOR EXPERT WITNESS DISCLOSURE:

A statement disclosing in reasonable detail the following:

(1). The identity of each expert (name and address) whom each defendant intends to

call at the trial of this action;

(2). The subject mater in reasonable detail upon which each expert is expected to testify at the trial of this action;

(3). The substance of the facts and opinions upon which each expert is expected to testify at the trial of this action;

(4). A summary of the grounds of each expert's opinion;

(5). The complete qualifications of each expert witness whom defendant(s) intend to call at the trial of this action;

(6). A list of all copies in which each expert acted as an expert witness;

(7). A list of any and all tweets, emails, texts or documents of any kind upon which each expert has considered or relied.

PLEASE TAKE FURTHER NOTICE that the undersigned hereby requests entry onto the premises known as Grant Plaza, 619 East Landis Avenue, Vineland, New Jersey, as soon as practically possible for inspection, measurements, photographs/videotaping, testing and recording, the premises and any and all equipment or devices allegedly used to inspect/search all individuals who gained entrance to the premises on the evening of April 20, 2017 and the morning of April 21, 2017, per R. 4:18-1.

Notice is also hereby given that if there is a failure to comply with any of the aforesaid demands, plaintiff(s) will exercise each and every right accorded to the plaintiff by the applicable Rules and/or controlling case-law, which will include objection to testimony and/or introduction into evidence, testimonial/evidentiary/preclusion and/or resolution of fact issues in favor of the plaintiff(s) and/or any other rights accorded to the plaintiff(s) under the applicable law, including but not limited to spoliation of evidence.

LAW OFFICES OF RICHARD A. STOLOFF

BY: _____

RICHARD A. STOLOFF, Attorney for Plaintiffs