[Case No. 19-1583, Docket No. 52;
Case No. 19-1627, Docket No. 70]

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

| | |
|---|---|
| HARFORD MUTUAL INSURANCE COMPANY, | |
| Plaintiff, | Civil No. 19-1583 (RMB/SAK) |
| v. | |
| Z&D REALTY, LLC, *et al.*, | |
| Defendants. | |
| FIRSTLINE NATIONAL INSURANCE COMPANY and HARFORD MUTUAL INSURANCE COMPANY, | |
| Plaintiffs, | Civil No. 19-1627 (RMB/SAK) |
| v. | |
| LANDIS PIG ROAST, LLC, *et al.*, | **OPINION** |
| Defendants. | |

**APPEARANCES**

Jennifer Broeck Barr
Louis J. Niedelman
Cooper, Levenson, April, Niedelman & Wagenheim, PA
1125 Atlantic Avenue
Third Floor
Atlantic City, New Jersey 08401

   *On behalf of Plaintiffs Harford Mutual Insurance Company and Firstline National Insurance Company*

Louis M. Barbone
Jacobs & Barbone, Esqs.
1125 Pacific Avenue
Atlantic City, New Jersey 08401

> *On behalf of Defendants / Third-Party Plaintiffs Ziggy Dobkowski, Diane Dobkowski, Z&D Realty, LLC, and Landis Pig Roast, LLC*

Richard A. Stoloff
Law Offices of Richard A. Stoloff
605 New Road
Linwood, New Jersey 08221

> *On behalf of Defendants Dennis Cosby, Eugene Cosby, Terry R. Mayes*

Raghu N. Bandlamudi
Foley & Mansfield PLLP
86 Chambers Street
Suite 202
New York, New York 10007

> *On behalf of Third-Party Defendants Donald Reighn and The Martin Insurance Agency, Inc.*

**RENÉE MARIE BUMB, United States District Judge**

This is an insurance case, with disputes between two insurance companies and their insureds as well as between the insureds and their brokers.  In April of 2017, a tragic incident left several innocent victims injured, and litigation in New Jersey Superior Court soon commenced.  Who should pay the bill?  The parties all point the finger at each other here.  This is a case in which inattention has produced a messy outcome for all.

*  *  *

These matters come before the Court upon two motions for summary judgment. On April 29, 2022, Plaintiffs Harford Mutual Insurance Company ("**Harford**") and

Firstline National Insurance Company ("**Firstline**") jointly moved for summary judgment in Case No. 19-1583 (the "**Harford Case**"). [Docket No. 52 (the "**Joint MSJ**").]  On September 29, 2022, Third-Party Defendants Donald Reighn and the Martin Insurance Agency, Inc. (the "**Martin Company**," and with Mr. Reighn, the "**Martin Defendants**") also moved for summary judgment in Case No. 19-1627 (the "**Firstline Case**"). [Docket No. 70 (the "**Second Martin MSJ**").]  Both Motions have been opposed by Defendants / Third-Party Plaintiffs Diane and Ziggy Dobkowski (the "**Dobkowskis**"), Z&D Realty, LLC ("**Z&D Realty**"), and Landis Pig Roast, LLC ("**Landis Pig Roast**") (collectively, the "**Z&D Defendants**"). [*See* Harford Case, Docket No. 56 ("**Z&D Defs.' Opp. Joint MSJ**") (filed June 20, 2022); Firstline Case, Docket No. 77 ("**Z&D Defs.' Opp. Second Martin MSJ**") (filed November 8, 2022).] For the reasons set forth below, the Joint MSJ and the Second Martin MSJ will be **GRANTED**.

## I.   BACKGROUND

These matters stem from requests for defense and indemnity made by the Z&D Defendants of their commercial insurers, Harford and Firstline, after a tragic shooting at a banquet hall in Vineland, New Jersey left several victims injured and resulted in state court litigation.  At bottom, the parties do not agree whether certain risks associated with the operation of the banquet hall were covered by the insurance policies that Harford and Firstline wrote.  Unless otherwise noted, the Court understands the below facts to be undisputed.

3

## A.      Factual Background.

The Dobkowskis own and operate a variety of related businesses situated at 619–623 East Landis Avenue in Vineland, New Jersey.  They own Z&D Realty, an apartment building and property manager, [Harford Case, Docket No. 52-1 ¶ 4 (Pls.' Statement of Material Facts ("**Pls.' SMF**")); Harford Case, Docket No. 56-1 ¶ 4 (Defs.' Responsive Statement of Material Facts ("**Defs.' RSMF**"))], Landis Pig Roast, a family-style restaurant with a liquor license, [Pls.' SMF ¶ 5], and Grant Plaza, LLC ("**Grant Plaza**"),[1] a banquet hall and dancing facility, [*id.* ¶ 3].  Z&D Realty and Landis Pig Roast share the same physical address (i.e., 623 East Landis Avenue), and Grant Plaza is located next door (i.e., 619 East Landis Avenue).  [*Id.* ¶¶ 3–5.]  The businesses are clearly interrelated: Z&D Realty owns the land on which Landis Pig Roast and Grant Plaza operate; two interior doorways on either side of a back alley connect Landis Pig Roast to Grant Plaza; the Dobkowskis rely upon one liquor license for Landis Pig Roast and Grant Plaza; and Landis Pig Roast supplies Grant Plaza with food and liquor service. [*Id.* ¶¶ 3–6, 66.]  In his deposition, Mr. Dobkowski indicated that he and Ms. Dobkowski have operated Landis Pig Roast since 2014 and that they opened Grant Plaza in February 2015 after completing a renovation. [*Id.* ¶¶ 5, 37.]

Sometime in 2015, the Dobkowskis sought commercial insurance for Z&D Realty and Landis Pig Roast.  They contacted Anatoly Sakhan and the Biondi

---

[1] Now, Grant Plaza apparently operates as "Grant Catering." [Dobkowski Dep. 57:7–58:12, Niedelman Cert., Ex. J, Harford Case, Docket No. 52-3.]

Insurance Agency, Inc. (collectively, the "**Biondi Defendants**"), a full-service insurance agency located within walking distance of the Dobkowskis' businesses. [Pls.' SMF ¶¶ 15, 29; Z&D Defs.' Countercl. ¶ 2, Harford Case, Docket No. 29; Z&D Defs.' Countercl. ¶ 2, Firstline Case, Docket No. 7.]   Mr. Sakhan was allegedly familiar with Landis Pig Roast and Grant Plaza on a personal basis.   [Z&D Defs.' Countercl. ¶ 2, Harford Case, Docket No. 29; Z&D Defs.' Countercl. ¶ 2, Firstline Case, Docket No. 7.]   With the Biondi Defendants' assistance, Mr. Dobkowski submitted two commercial general liability insurance applications: one to Harford, dated November 13, 2015; the other to Firstline, dated December 14, 2015.  [Pls.' SMF ¶¶ 19, 38.]  Ultimately,[2] the Biondi Defendants secured Policy Number 9157994 from Harford for the period covering January 3, 2017 to January 3, 2018 and naming Z&D Realty as the insured (the "**Harford Policy**").   [*Id.* ¶¶ 13–14.]   The Harford Policy described Z&D Realty as an apartment building located at 623 East Landis Avenue. [*Id.* ¶¶ 15–18.]   The Biondi Defendants also secured Policy Number 8171734 from Firstline covering the same period and naming Landis Pig Roast as the insured (the "**Firstline Policy**").   [*Id.* ¶¶ 27–28.]   The Firstline Policy described Landis Pig Roast

---

[2] Based on the timeline presented, the Court assumes that the insurance policies at issue were the result of renewals, as the 2015 applications presumably generated policies initially covering the 2015–2016 period.   [*See* Harford Ins. Application, Niedelman Cert., Ex. C., Harford Case, Docket No. 52-3 (reporting effective date of November 17, 2015 and expiration date of November 17, 2016); Firstline Ins. Application, Niedelman Cert., Ex. D., Harford Case, Docket No. 52-3 (reporting effective date of January 3, 2016 and expiration date of January 3, 2017).] The parties do not make this timeline clear, but the detail does not appear to be material in any case.  The policies were effective on the date of the Shooting (defined below).

as a restaurant located at 623 East Landis Avenue, and it included liquor liability coverage.  [*Id.* ¶¶ 30–35.]

However, neither policy mentions Grant Plaza—as an additional insured or otherwise—even though the Dobkowskis had opened the banquet hall prior to submitting their initial Harford and Firstline insurance applications.  [*See id.* ¶¶ 21, 36.] And both applications solicited information concerning the operation of additional or related businesses.  For instance, Mr. Dobkowski's application for the Harford Policy included a question regarding "other on or off premises exposures not listed above," which he[3] denied.  [*Id.* ¶ 22.]  The Harford application also asks about other operations or subsidiaries and whether there would be social events on the premises, both of which questions Mr. Dobkowski denied.  [*Id.* ¶¶ 23–24.]  Similarly, in his application for the Firstline Policy, Mr. Dobkowski denied owning other businesses or operations and providing entertainment at Landis Pig Roast.  [*Id.* ¶¶ 38–42.]  He denied that there was any other on or off premises exposures not listed in the application.  [*Id.* ¶ 40.]

In early 2015, before applying to Harford and Firstline, the Dobkowskis sought an insurance policy to cover Grant Plaza specifically, as insurance was required for

---

[3] The Z&D Defendants dispute that the Dobkowskis had any direct contact with Harford and Firstline.  [*See* Defs.' RSMF ¶¶ 21–25, 38, 40–42.]  Accordingly, they disclaim responsibility for the statements included in the insurance applications, which Harford and Firstline impute to the Z&D Defendants.  The Court is not persuaded that the Z&D Defendants' position reflects a genuine dispute of fact.  *See infra* Section IV.A.1.

them to renovate the Grant Plaza building that they had previously purchased.[4]  [*Id.* ¶¶ 44, 52.]   The Martin Defendants had assisted the Dobkowskis with obtaining insurance while the building was vacant, [Z&D Defs.' Third-Party Compl. (Martin Defs.) ¶ 4, Firstline Case, Docket No. 29; *see* Berenzai Dep. 21:6–23:7, 32:16–32:25, 45:1–47:16, Niedelman Cert., Ex. K, Harford Case, Docket No. 52-3], so Ms. Dobkowski contacted the Martin Company again and communicated with Jean Bereznai, an insurance producer, to secure an appropriate policy.[5] [Pls.' SMF ¶ 52.] On March 2, 2015, Ms. Dobkowski completed a commercial insurance application with Pennock Insurance, Inc. ("**Pennock**"), describing Z&D Realty's operations as "building owner and operation of banquet hall."   [*Id.* ¶¶ 52–53; *see* Pennock Ins. Application, Niedelman Cert., Ex. E., Harford Case, Docket No. 52-3.]   In her application, she listed 619–621 East Landis Avenue as the business's address and indicated that alcohol would be served on the premises.   [Pls.' SMF ¶¶ 54, 56.] Eventually, the Dobkowskis purchased, again presumably by renewal, Policy Number

---

[4] Again, the Court questions the timeline that the parties have presented in their statements of fact.  If Grant Plaza opened in February 2015, then the insurance policy that was required for renovation was presumably brokered in 2014 or beforehand.  [*See* Z&D Defs.' Third-Party Compl. (Martin Defs.) ¶ 4, Firstline Case, Docket No. 29 ("As of 2013, [the Z&D Defendants] purchased the property [known as Grant Plaza], set out on a plan of extensive renovation and ultimately completed that renovation in 2015. From 2013 to 2015, [the Martin Defendants] recommended and then secured a policy of insurance on the property while it was vacant and undergoing renovation.").]

[5] The Z&D Defendants allege that Donald Reighn brokered the policy, [Z&D Defs.' Third-Party Compl. (Martin Defs.) ¶¶ 4–5, Firstline Case, Docket No. 29], but none of the parties have explained the discrepancy, even though Mr. Reighn is a party to these actions and Jean Bereznai is not.

CP 1607675 from the United States Liability Insurance Company covering the period February 21, 2017 to February 21, 2018 and naming Z&D Realty as the insured (the "**USLIC Policy**").  [*Id.* ¶¶ 44–46.]  Prior to finalizing the USLIC Policy, however, the United States Liability Insurance Group ("**USLIG**") conducted an inspection of the premises.  USLIG ascertained the relationship between the Dobkowskis' business entities[6] and determined that the USLIC Policy should exclude coverage for liquor liability exposure because such risk was reportedly covered under a prior version of the Firstline Policy.  [*See id* ¶¶ 51, 59–73.]  USLIC is not a party to this litigation.  [*See id.* ¶ 75.]

---

[6] For instance, the report, dated January 22, 2015, includes the following description of operations:

> The insured is the owner of the building and operates a bar at this location[; the insured] has owned the building for the last 2 years. The dba of the bar is Grant Plaza[.] []The interior of the building has been gut renovated. All utilities are less than 1 year old. The business has been in operation for 1 month. The bar is open on Friday and Saturday from 5pm-2am. There is dancing on the premises from 8pm-2am. There are bartenders on the premises. There are no bouncers or security on site. Bartenders have no formal training. There is no cooking on the premises. Liquor license number is 0614-33-015-00. There is a loudspeaker system set up for the bar. The premises can be leased for banquets that are catered. The basement is used for utilities/storage[.] [A]ll major repairs are done by outside contractors with certificates of liability in place. Snow removal done by the insured.

[Pls.' SMF ¶ 59 (citing USLIG Report 7, Niedelman Cert., Ex. F, Harford Case, Docket No. 52-3).]

On April 21, 2017, Defendant Raheem McClendon leased Grant Plaza to host a party for some 500 to 600 guests with an admission price, security guards, and alcohol service.  [*Id.* ¶ 8.]  That evening, a shooting occurred at Grant Plaza that left at least three individuals injured (the "**Shooting**").  [*Id.* ¶¶ 8–10.]  Shortly thereafter, those injured attendees—Defendants Eugene Cosby and Dennis Cosby (the "**Cosbys**") and Terry Mayes—asserted various personal injury claims against the Z&D Defendants and McClendon in a state court proceeding (the "**Underlying Action**").[7] [*Id.*]  The Z&D Defendants then notified Harford and Firstline of the Underlying Action and demanded defense and indemnification, which they denied.  [*Id.* ¶¶ 11–12.]

### B.   Procedural Background.

On January 29, 2019, Harford and Firstline separately filed Complaints against the Dobkowskis, the Cosbys, Terry R. Mayes, Raheem McClendon, and (in the Harford Case) Z&D Realty or (in the Firstline Case) Landis Pig Roast.[8] [Harford Case, Docket No. 1; Firstline Case, Docket No. 1.]  The nearly identical Complaints allege against the Z&D Defendants: Fraud and Misrepresentation (Count I); Fraud in the Inducement (Count II); Breach of the Warranty of Good Faith and Fair Dealing

---

[7] The Underlying Action is *Cosby v. Grant Plaza*, No. CUM-L-00403-17 (N.J. Super. Ct. filed June 1, 2017).  The Court observes that it no longer appears to be an active matter.

[8] The Court observes that, while the Complaints are purportedly directed against all of these parties, there do not appear to be any claims asserted against the Cosbys, Mr. Mayes, or Mr. McClendon.

(Count III); and Rescission (Count IV).  [Harford Case, Docket No. 1; Firstline Case, Docket No. 1.]  Among other things, Harford and Firstline seek: (i) a declaration from this Court that they do not have a duty to defend or indemnify the Dobkowskis, Z&D Realty, or Landis Pig Roast in the Underlying Action; (ii) that Harford and Firstline owe no insurance coverage to the Z&D Defendants; and (iii) rescission of the insurance policies.  [*See generally* Harford Case, Docket No. 1; Firstline Case, Docket No. 1.]

On March 29, 2019, the Cosbys and Mr. Mayes filed Answers to both Complaints.[9]  [Harford Case, Docket No. 5; Firstline Case, Docket No. 5.]

On April 1, 2019, the Z&D Defendants filed Answers to both Complaints and asserted Counterclaims against Harford and Firstline.  [Harford Case, Docket No. 7; Firstline Case, Docket No. 7.]  They submitted an amended filing on April 12, 2019.  [Firstline Case, Docket No. 9.]  The Z&D Defendants also included a Third-Party Complaint against the Biondi Defendants.  [Harford Case, Docket No. 7; Firstline Case, Docket No. 9.]

On April 30, 2019, Harford and Firstline filed Answers to the Z&D Defendants' Counterclaims.  [Harford Case, Docket No. 14; Firstline Case, Docket No. 10.]

---

[9] The Court is bewildered by the fact that the Cosbys and Mr. Mayes filed Answers instead of dispositive motions (or, indeed, even a letter seeking clarification).  There are no claims asserted against them here.  Additionally, Mr. McClendon does not appear to have entered an appearance in either action.  [*See generally* Harford Case, Docket; Firstline Case, Docket.]

On May 2 and 9, 2019, the Biondi Defendants filed Answers to the Z&D Defendants' Third-Party Complaints.  [Harford Case, Docket No. 15; Firstline Case, Docket No. 12.]

Because of the considerable overlap between the matters, the Harford Case and the Firstline Case were consolidated for discovery purposes in the initial Scheduling Order on September 5, 2019.  [Harford Case, Docket No. 24.]  The Scheduling Order was amended on January 6, 2020 [Harford Case, Docket No. 30], and again on February 29, 2020 [Harford Case, Docket No. 32], and again on December 20, 2020 [Harford Case, Docket No. 46], and again on April 27, 2022 [Harford Case, Docket No. 50].

On May 23, 2019, the Z&D Defendants filed Affidavits of Merit certifying that the skill, care, knowledge, and diligence exercised by the Biondi Defendants in connection with their arrangement of the applicable insurance policies fell outside acceptable standards of care for insurance producers.  [Harford Case, Docket No. 19; Firstline Case, Docket No. 14.]

On March 29, 2020, the Z&D Defendants filed a Motion to Amend to file a Third-Party Complaint against the Martin Defendants, [Firstline Case, Docket No. 27], which the Court subsequently granted, [Firstline Case, Docket No. 28].  On January 6, 2021, the Z&D Defendants filed their Second Amended Answer with Counterclaims against Harford and Firstline and Third-Party Complaints against the Biondi Defendants and the Martin Defendants.  [Firstline Case, Docket No. 29.]  A few weeks later, they submitted an amended filing in the Harford Case, too.  [Docket

11

No. 35.]  These are the most recent versions of the filings in these actions.  The Counterclaims include the following counts: Breach of Contract (Count I); Breach of the Covenant of Good Faith and Fair Dealing (Count II); and Consumer Fraud (Count III).  [Harford Case, Docket No. 35; Firstline Case, Docket No. 29.]  The Third-Party Complaints include the following counts: Negligence (Counts I & IV); Breach of Contract (Counts II & V); and Breach of the Covenant of Good Faith and Fair Dealing (Counts III & VI).  [Harford Case, Docket No. 35; Firstline Case, Docket No. 29.]

On January 12, 2021, Firstline filed an Answer to the Z&D Defendants' Counterclaims.  [Firstline Case, Docket No. 30.]

On January 21, 2021, the Biondi Defendants filed an Answer to the Z&D Defendants' Third-Party Complaint and asserted a Crossclaim against the Martin Defendants for common law contribution and indemnification.  [Firstline Case, Docket No. 31.]

On March 11, 2021, the Martin Defendants filed an Answer to the Z&D Defendants' Third-Party Complaints and asserted a Crossclaim against "all defendants and third-party defendants"[10] for common law contribution and indemnification.  [Firstline Case, Docket No. 33.]

---

[10] The Court is confused by the Martin Defendants' inartful pleading and presumes that they seek contribution and indemnification from the Biondi Defendants, not the Z&D Defendants who have asserted the very third-party claims for which contribution and indemnification may be sought.  A crossclaim is not the same as a counterclaim.

On October 29, 2021, the Z&D Defendants filed Affidavits of Merit concerning the Martin Defendants.  [Harford Case, Docket No. 43; Firstline Case, Docket No. 44.] Pretrial factual discovery closed on May 31, 2022, and all expert reports and disclosures pursuant to Fed. R. Civ. P. 26(a)(2) were due no later than June 30, 2022. [*See* Harford Case, Docket No. 50; Firstline Case, Docket No. 61.]   The Z&D Defendants have not produced any expert reports concerning the alleged breach of contract and deviation from the professional standards of care of the Biondi Defendants or the Martin Defendants.  [*See* Firstline Case, Docket Nos. 67 ¶ 14 & 70-1 ¶ 17.]

The Biondi Defendants filed a Motion for Summary Judgment on July 15, 2022, [Harford Case, Docket No. 60; Firstline Case, Docket No. 67], which the Court granted on October 25, 2022, [Opinion, Harford Case, Docket No. 63; Opinion, Firstline Case, Docket No. 72].  The Court explained that the Z&D Defendants could not prevail on their professional negligence claim against the Biondi Defendants without expert testimony, [*id.* at 9–11], and the Court described additional deficiencies with respect to their remaining claims, principally because of the Z&D Defendants' failure to prove up their allegations, [*id.* at 11–13].  Accordingly, the Court dismissed the Biondi Defendants from these actions, [Order, Harford Case, Docket No. 64; Order, Firstline Case, Docket No. 73],[11] and, in granting the Z&D Defendants an

---

[11] The Court observes that the Z&D Defendants did not abide by the Court's directive to file an amended complaint, without the third-party claims asserted against the Biondi Defendants, no later than November 4, 2022.

extension to respond to the Second Martin MSJ, cautioned the Z&D Defendants to take notice of its October 25, 2022 Opinion. [Mem. Order, Harford Case, Docket No. 65; Mem. Order, Firstline Case, Docket No. 74.] Finally, the Court consolidated these actions and directed the parties to proceed in the Firstline Case only. [*Id.* at 2.]

## II.   <u>JURISDICTION</u>

This Court exercises subject matter jurisdiction over these actions pursuant to 28 U.S.C. § 1332, as there exists a "complete diversity" of citizenship between the parties and the amount in controversy exceeds $75,000.

## III.   <u>LEGAL STANDARD</u>

Summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is "material" only if it might impact the "outcome of the suit under the governing law." *Gonzalez v. Sec'y of Dep't of Homeland Sec.*, 678 F.3d 254, 261 (3d Cir. 2012). A dispute is "genuine" if the evidence would allow a reasonable jury to find for the nonmoving party. *Id.*

In deciding whether there is a disputed issue of material fact, the Court must view all inferences, doubts, and issues of credibility in favor of the non-moving party. *See Pennsylvania Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995). The movant has the initial burden of showing through the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits "that the non-movant has failed to establish one or more essential elements of its case." *Connection Training Servs. v.*

14

*City of Phila.*, 358 F. App'x 315, 318 (3d Cir. 2009).  "If the moving party meets its burden, the burden then shifts to the non-movant to establish that summary judgment is inappropriate."  *Id.*

In the face of a properly supported motion for summary judgment, the non-movant's burden is rigorous.  The non-movant "must point to concrete evidence in the record"; mere allegations, conclusions, conjecture, and speculation will not defeat summary judgment.  *Orsatti v. N.J. State Police*, 71 F.3d 480, 484 (3d Cir. 1995); *accord Jackson v. Danberg*, 594 F.3d 210, 227 (3d Cir. 2010) (noting that "speculation and conjecture may not defeat a motion for summary judgment") (citing *Acumed LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 228 (3d Cir. 2009)).

## IV.   DISCUSSION

### A.   The Joint MSJ.

In support of summary judgment on their rescission claim,[12] Harford and Firstline offer one simple, yet powerful, argument: declaratory relief should issue because neither insurer knew about Grant Plaza when the insurance policies were written.  As a result, neither insurer agreed to cover risks associated with Grant Plaza's operation, such as the litigation that resulted from the Shooting.  [Harford Case,

---

[12] Harford and Firstline state that "there are no material issues of genuine fact in dispute" in this declaratory judgment action, [Pls.' Br. Joint MSJ 9 (defined below)], but they do not explain why they are entitled to summary judgment on their fraud and misrepresentation, fraud in the inducement, and breach of the warranty of good faith and fair dealing claims.  While these claims are certainly related to their rescission count—and the record facts likely support Harford and Firstline—the Court will not grant summary judgment on a claim where a party has not made the proper showing.

Docket No. 52-4, at 2–3 ("**Pls.' Br. Joint MSJ**").]  Rescission is warranted, they argue, because the Z&D Defendants omitted, *inter alia*, the following material details from their applications: (i) any reference to Grant Plaza as a related entity of Z&D Realty or Landis Pig Roast; (ii) that Landis Pig Roast's liquor license applied to Grant Plaza; (iii) that the two buildings were connected through interior doorways; and (iv) that there would be large social gatherings at Grant Plaza.  [*Id.* at 3.]  They claim that these omissions constitute material misrepresentations that preclude coverage of any incident at Grant Plaza, including the Shooting and the resulting Underlying Action. [*Id.* at 3.]

In response, the Z&D Defendants assert that there is a genuine dispute whether they made misrepresentations in their applications for the Harford Policy and the Firstline Policy.  [Z&D Defs.' Opp. Joint MSJ 2–6.]  They contend that they had no direct contact with Harford and Firstline and that they "fully and accurately disclosed all information" that the Biondi Defendants asked of them.  [*Id.* at 4–5.]  Additionally, they declare that Harford and Firstline had an obligation to exercise due diligence to confirm the representations set forth in the insurance applications, including the "precise physical locations and operation of the business entity within the insured property of Z&D Realty, LLC," which they failed to do.  [*Id.* at 6–8.]  For both of these reasons, they argue that the Joint MSJ should be denied.  In evaluating the Joint MSJ, the Court discusses each of these reasons in turn.

16

### 1. Whether the Z&D Defendants Made Misrepresentations in Applying for the Harford Policy and the Firstline Policy.

Rescission is the abrogation of a contract *ab initio*, "meaning that it is considered 'null from the beginning' and treated as if it does not exist for any purpose." *First Am. Title Ins. Co. v. Lawson*, 177 N.J. 125, 137, 827 A.2d 230 (2003) (quoting *Black's Law Dictionary* 1568 (7th ed. 1999)).  Under New Jersey law,[13] rescission is a firmly rooted remedy in the field of insurance, which a party may seek on the basis of equitable fraud.  *N.Y. Life Ins. Co. v. Weiss*, 133 N.J. Eq. 375, 380, 32 A.2d 341 (E. & A. 1943) (per curiam).  To prove equitable fraud, the party must demonstrate proof of (1) "a material misrepresentation of a presently existing or past fact; (2) the maker's intent that the other party rely on it; and (3) detrimental reliance by the other party." *Lawson*, 177 N.J. at 136–37, 827 A.2d 230 (quoting *Liebling v. Garden State Indem.*, 337 N.J. Super. 447, 453, 767 A.2d 515 (App. Div.), *certif. denied*, 169 N.J. 606, 782 A.2d 424 (2001)) (internal quotation marks omitted).

However, to rescind an insurance policy, the insurer need not show that the insured actually intended to deceive.  *Massachusetts Mut. Life Ins. Co. v. Manzo*, 122 N.J. 104, 114, 584 A.2d 190 (1991).  "Even an innocent misrepresentation can constitute equitable fraud justifying rescission." *Ledley v. William Penn Life Ins. Co.*, 138 N.J. 627,

---

[13] The parties do not appear to question that New Jersey law governs this suit, and the Court agrees.  Because the claims at issue turn on an application of substantive rules of common law, the Court applies the laws of the State of New Jersey. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

635, 651 A.2d 92 (1995) (citing *Metropolitan Life Ins. Co. v. Tarnowski*, 130 N.J. Eq. 1, 3–4, 20 A.2d 421 (E. & A. 1941)).  The misrepresentation may also be the result of a material omission.  *See Rutgers Cas. Ins. Co. v. LaCroix*, 194 N.J. 515, 531–32, 946 A.2d 1027 (2008) (granting rescission of automobile insurance policy based on insured's failure to identify his daughter, who was injured while driving the insured's automobile, as a household resident in his insurance application).  *But see Progressive Cas. Ins. Co. v. Hanna*, 316 N.J. Super. 63, 719 A.2d 683 (App. Div. 1998) (holding that, while an insurance applicant has a duty to answer questions truthfully, rescission is not warranted due to applicant's failure to disclose material fact when the insurer fails to ask the applicant questions designed to elicit such fact).

Ultimately, the insurer may rescind an insurance policy when false statements materially affect the acceptance of the insurable risk or the hazard assumed by the insurer. *Ledley v. William Penn Life Ins. Co.*, 138 N.J. 627, 637–38, 651 A.2d 92 (1995). A misrepresentation is material if it "'naturally and reasonably influenced the judgment of the underwriter in making the contract at all, or in estimating the degree or character of the risk, or in fixing the rate of premium.'" *Id.* at 638, 651 A.2d 92 (quoting *Manzo*, 122 N.J. at 115, 584 A.2d 190) (cleaned up).

Here, the Court concludes that there is no genuine dispute whether the Z&D Defendants made material misrepresentations in their applications for the Harford Policy and the Firstline Policy.  First, the Z&D Defendants, not their agents, are accountable for the information supplied in their insurance applications.  The Z&D Defendants may not disclaim responsibility for the applications that Mr. Dobkowski

signed on behalf of Z&D Realty and Landis Pig Roast, even if the Biondi Defendants furnished their professional services.[14]   Ultimately, the insureds—and the insureds alone—have the factual information necessary to complete an application for insurance.   *See Ledley*, 138 N.J. at 640–41, 651 A.2d 92 (refusing to hold broker accountable for insured's knowing misrepresentations concerning his thyroid condition on a counterclaim by insurer to rescind life insurance policy) (citing *Gallagher v. New Eng. Mut. Life Ins. Co.*, 19 N.J. 14, 22, 114 A.2d 857 (1955)).   While the Z&D Defendants are permitted to assert a claim against their agents for negligence—as they indeed have—a principal may not shift responsibility to an innocent third party for an agent's alleged negligence.   *See Hartford Life & Acc. Ins. Co. v. Nittolo*, 955 F.Supp. 331, 335 (D.N.J. 1997) (declining to attribute insured's misrepresentations to his broker based on insured's authorization of insurance application to insurer).   Thus, it is the Z&D Defendants who have "made" the misrepresentations at issue here.   *See id.*

---

[14] The Court recognizes that the version of the Firstline application in the record contains Mr. Dobkowski's signature, whereas the Harford application contains no signature at all.   [*Compare* Firstline Ins. Application, Niedelman Cert., Ex. D, Harford Case, Docket No. 52-3, *with* Harford Ins. Application, Niedelman Cert., Ex. C, Harford Case, Docket No. 52-3.]   The Z&D Defendants dispute, as a matter of law, whether they can be accountable for alleged misrepresentations in the applications when they relied on the Biondi Defendants for their professional services.   But they do not appear to dispute that the Harford application, like the Firstline application, would have required one of the Dobkowskis' authorizations to submit.   Thus, the Court does not find that there is a material dispute as to whether the Z&D Defendants submitted the applications, though it questions why Harford did not supply a fully executed copy of the Harford application in connection with the Joint MSJ.

Next, the Court finds that the Z&D Defendants' applications for insurance, which solicited subjective and objective information, contained false statements. For instance, the Harford application asks about "other on or off premises exposures not listed above"; whether the applicant (i.e., Z&D Realty, LLC) has any other operations or subsidiaries; and whether there will be social events on premises. [Pls.' SMF ¶ 22–24.] The Z&D Defendants denied all such questions. [*Id.*] Similarly, the Firstline application asks about other on or off premises exposures; whether the applicant (i.e., Landis Pig Roast) has any other operations or subsidiaries; and whether there would be entertainment at Landis Pig Roast. [*Id.* ¶¶ 38–42.] Mr. Dobkowski denied all such questions. [*Id.*] Based on the uncontroverted fact that the Z&D Defendants had opened Grant Plaza *before* completing and submitting their Harford and Firstline applications, [Pls.' SMF ¶¶ 20, 37–38; Defs.' RSMF ¶¶ 20, 37–38], the Court concludes that these denials were false.[15] *See Ledley*, 138 N.J. at 637, 651 A.2d 92 ("When a question is unambiguous and calls for a statement of fact, misrepresentation or concealment is inexcusable.").

Similarly, the Z&D Defendants also omitted information that they should have disclosed in light of their obligation to answer truthfully and to deal in good faith. *See*

---

[15] Indeed, the point is further bolstered by the fact that Ms. Dobkowski separately applied to Pennock on March 2, 2015 to insure Grant Plaza, though Z&D Realty was named as the applicant. [*See* Pennock Ins. Application, Niedelman Cert., Ex. E., Harford Case, Docket No. 52-3.] The Pennock application specifically highlights what the Z&D Defendants ***did not do*** in their Harford and Firstline applications: in the Pennock application, Ms. Dobkowski alerted the insurer to Grant Plaza by referring to its correct address and describing it as a "banquet hall" that had been in business since 2015. [*See id.*]

*Hanna*, 316 N.J. Super. at 69, 719 A.2d 683 ("Broadly speaking, it has always been considered that policies of insurance are contracts of the utmost good faith, and the applicant therefore is bound to deal fairly with the disclosure of facts material to the risk.") (quoting *Locicero v. John Hancock Mut. Life Ins. Co.*, 32 N.J. Super. 300, 306, 108 A.2d 281 (App. Div. 1954)).  In *Hanna*, an insured applied for commercial automobile insurance using a valid license issued in New Jersey, which he obtained using a bogus license issued in New York that was suspended.  *Id.* at 66–67, 719 A.2d 683.  While he was asked for his driver's license number (which he supplied), he was not asked whether it was valid or validly obtained.  *Id.* at 71, 719 A.2d 683.  In refusing to rescind the automobile insurance policy, the *Hanna* court explained that the insurer "incurred the insurance risk because it neglected to ask the pertinent questions which, if answered truthfully, would have induced it not to accept the risk."  *Id.* at 72, 719 A.2d 683.  However, the court acknowledged that a prospective insured may not misrepresent or conceal risks that directly implicate a question propounded by the insurer or that are at the core of the subject policy.  *See id.* at 70, 73, 719 A.2d 689.

Here, the Z&D Defendants omitted material information that should have been revealed in response to pertinent questions propounded by Harford and Firstline.  For instance, they did not answer that Landis Pig Roast's liquor license was being used to serve alcohol at Grant Plaza; they did not identify that the two buildings were connected through interior doorways; they did not disclose that large social gatherings would occur at Grant Plaza; and they failed to reference the existence of Grant Plaza, as a banquet hall, a separate entity, or otherwise.  [Pls.' SMF ¶¶ 25, 42; Pls.' Br. Joint

21

MSJ 3.]  Unlike in the Pennock application, they did not refer to the Z&D Defendants'
operation of a "banquet hall" in response to pertinent questions.  [Pennock Ins.
Application, Niedelman Cert., Ex. E., Harford Case, Docket No. 52-3.]  It nearly goes
without saying that liquor liability and related businesses broaden the scope of risk.
Given the Z&D Defendants' expectation of coverage for the Shooting at Grant Plaza,
these facts clearly should have been identified to Harford and Firstline. *See LaCroix*,
194 N.J. at 528, 946 A.2d 1027 (commenting that rescission is appropriate to remedy
"misrepresentations that strike at the heart of the insurer's ability to acquire the
information necessary to determine its obligations and to protect itself from false
claims") (quoting *Longobardi v. Chubb Ins. Co.*, 121 N.J. 530, 539, 582 A.2d 1257
(1990)).

Next, while the Court does *not* conclude that the Z&D Defendants intended to
deceive Harford and Firstline, the Court finds that the foregoing misrepresentations
were not merely an oversight.  When the Harford and Firstline insurance applications
were submitted in November and December 2015, respectively, the Z&D Defendants
had been operating Grant Plaza for several months (since February 2015).  [Pls.' SMF
¶¶ 20, 37–38; Defs.' RSMF ¶¶ 20, 37–38.]  As noted above, as early as March 2, 2015,
Ms. Dobkowski separately applied for insurance covering Grant Plaza.  [Pennock Ins.
Application, Niedelman Cert., Ex. E., Harford Case, Docket No. 52-3.]  The Z&D
Defendants were clearly aware of the relationship between their businesses, and they
have not supplied any valid reason excusing their false denials and material omissions.
Thus, the Court finds that the Z&D Defendants made these misrepresentations

knowingly. *See Ledley*, 138 N.J. at 635, 651 A2d 92 ("Even an innocent misrepresentation can constitute equitable fraud justifying rescission."); *see also Booker v. Blackburn*, 942 F. Supp. 1005, 1011 (D.N.J. 1996) ("an insurer need only show that the insured's omission of material information from the policy was knowing and not simply an oversight").

Finally, the Z&D Defendants' denials and omissions were material to their insurers' decision to issue the Harford Policy and the Firstline Policy. A misrepresentation is material if it "'naturally and reasonably influenced the judgment of the underwriter in making the contract at all, or in estimating the degree or character of the risk, or in fixing the rate of premium.'" *Ledley*, 138 N.J. at 638, 651 A.2d 92 (quoting *Manzo*, 122 N.J. at 115, 584 A.2d 190)) (cleaned up). Though Harford and Firstline only argue that they "justifiably relied on the information disclosed by [the Z&D Defendants] or their agent because misrepresentation and concealment are criminal acts," [Pls.' Am. Reply Br., Docket No. 58, at 5], the Court is satisfied that the Z&D Defendants' misrepresentations "naturally and reasonably influenced" their insurers' judgment. As a separate entity, with an operation different in kind and scope from Z&D Realty and Landis Pig Roast, Grant Plaza involved entirely different risks. If answered accurately and forthrightly, the record supports a finding that the application questions would have disclosed the existence of Grant Plaza, which clearly would have affected the insurers' estimation of the risks involved in covering the Z&D Defendants and their calculation of appropriate premiums. *See Ledley*, 138 N.J. at 638, 651 A.2d 92 (explaining that insured's misrepresentations were material because

insurer relied on insured's statements not to order blood-chemistry and urinalysis tests, which would have revealed misrepresented thyroid condition).

> ### 2. *Whether Harford and Firstline Had an Independent Duty to Exercise Due Diligence Despite the Z&D Defendants' Misrepresentations.*

As noted above, the Z&D Defendants also argue that if Harford and Firstline had investigated, they would have discovered Grant Plaza. [Z&D Defs.' Opp. Joint MSJ 6–8.] They contend that these insurance companies should have performed due diligence to confirm the representations included in the insurance applications, and they suggest that Harford and Firstline should have more thoroughly examined the Biondi Defendants, too. [*Id.* at 8.] The Court disagrees.

An insurer's duty to investigate arises only when there are sufficient facts to call the insurance application into question. *Gallagher*, 19 N.J. at 22, 114 A.2d 857; *see Ledley*, 138 N.J. at 639, 651 A.2d 92 (rejecting argument that insurer should have conducted separate inquiry into insured's medical history and blood test results, which allegedly would have revealed thyroid condition, in part because insurer indicated that it was exclusively relying on written information contained in insured's application, not anything communicated orally to broker). At all times, the applicant maintains a duty to speak truthfully, and the insured is entitled to rely upon the applicant's statements. *John Hancock Mut. Life Ins. Co. v. Cronin*, 139 N.J. Eq. 392, 398, 51 A.2d 2 (E. & A. 1946). Thus, an insurer's purported duty to "exercise due diligence," or to investigate, is rather limited. *Ledley*, 138 N.J. at 639, 651 A2d 92.

Here, the record does not support a finding that Harford and Firstline had any reason to believe that the Z&D Defendants expected the policies to cover Grant Plaza, a separate entity. There were no facts to "expose the falsity of the representations of the applicant." *Id.* And just because the Biondi Defendants—agents of the Z&D Defendants, not Harford and Firstline—assisted with brokering the policies as an intermediary, no duty to investigate arose on the part of the insurers. *See id.* at 640, 651 A.2d 92; *cf. Nittolo*, 955 F. Supp. at 336–37 (rejecting argument that any of insured's misrepresentations should be attributable to broker because broker was authorized to bind policies for insurer, as independent insurance brokers typically act as agent of insured, not insurer) (citing New Jersey cases). The Harford application even includes a statement requiring the insured and its agent to represent that they are speaking truthfully and on the basis of their own reasonable investigation:

> THE UNDERSIGNED IS AN AUTHORIZED REPRESENTATIVE OF THE APPLICANT AND REPRESENTS THAT REASONABLE ENQUIRY HAS BEEN MADE TO OBTAIN THE ANSWERS TO QUESTIONS ON THIS APPLICATION. HE/SHE REPRESENTS THAT THE ANSWERS ARE TRUE, CORRECT AND COMPLETE TO THE BEST OF HIS/HER KNOWLEDGE.

[Harford Ins. Application 2, Niedelman Cert., Ex. C., Harford Case, Docket No. 52-3.] Harford had no reason to believe that the Z&D Defendants' denials were false and required special investigation. Accordingly, the Court rejects the Z&D Defendants' argument regarding due diligence

### 3. *Whether Rescission is Warranted.*

"Rescission remains a form of equitable relief in whatever setting its need arises, and courts wielding that remedy retain the discretion and judgment required to ensure that equity is done." *LaCroix*, 194 N.J. at 528, 946 A.2d 1027; *see also, e.g.*, *Lawson*, 177 N.J. at 140–42, 827 A.2d 230 (explaining that one insured's misrepresentations should yield rescission of legal malpractice insurance policy for other partners and firm, as an entity, but not blameless partner).  Here, Harford and Firstline are entitled to rescind both insurance policies because of the Z&D Defendants' equitable fraud.  The Z&D Defendants supplied inaccurate information to Harford and Firstline, and they omitted information material to the insurers' decision to write insurance policies covering the categories of risk the parties intended.  Based on the undisputed record, the Court does not believe that it would not be equitable to require Harford and Firstline to cover the Underlying Action or any other events arising from the Shooting.  Thus, rescission of both policies is justified. *See Lawson*, 177 N.J. at 140–42, 827 A.2d 230.

Additionally, the Court notes that the Harford Policy and the Firstline Policy both contain New Jersey endorsements that add provisions permitting cancellation for risks that were not contemplated at the time the policies were written.  [Harford Policy, Niedelman Cert., Ex. A, Harford Case, Docket No. 52-2 ("[W]e may cancel this policy only for one or more of the following reasons: . . . (3) Material misrepresentation or nondisclosure to us of a material fact at the time of acceptance of the risk."); Firstline Policy, Niedelman Cert., Ex. B, Harford Case, Docket No. 52-3 ("[W]e may cancel this Policy only for one or more of the following reasons: . . . (4) Increased hazard or

material change in the risk assumed which we could have reasonably contemplated at the time of assumption of the risk.").]   Harford and Firstline suggest that the cited endorsements support their argument.   [Pls.' Br. Summ. J. 14, 17.]   The Z&D Defendants fail to address the point.   [*See generally* Z&D Defs.' Opp. Joint MSJ.] Because Harford and Firstline ultimately seek the equitable remedy of rescission and because cancellation would only provide prospective relief, *see Hanna*, 316 N.J. Super at 71 n.10, 719 A.2d 683 ("cancellation voids the policy prospectively but would not affect any claim asserted by an innocent third party prior to cancellation") (citing *Marotta v. NJAF-IUA*, 280 N.J. Super. 525, 656 A.2d 20 (App. Div. 1995)), the Court makes no findings concerning Harford's and Firstline's contractual remedies. Ultimately, the Court concludes that there is no genuine dispute of material fact concerning Harford's and Firstline's rescission claim and that they have demonstrated they are entitled to summary judgment. *See Gonzalez*, 678 F.3d at 261.

## B.   The Second Martin MSJ.

The Martin Defendants submit arguments in favor of summary judgment that are identical, in all material respects, to those of their fellow brokers, the Biondi Defendants.   [*Compare* Firstline Case, Docket No. 70-4, at 5–12 ("**Martin Defs.' Br. Summ. J.**"), *with* Firstline Case, Docket No. 69, at 4–11 (Biondi Defs.' Br. Summ. J.).] They assert that the Z&D Defendants' professional negligence claims must be dismissed because they have failed to produce an expert report. [Martin Defs.' Br. Summ. J. 5–7.]   Next, they argue that there is no other evidence that they breached

their duty of care, breached any contract with the Z&D Defendants, or caused the Z&D Defendants' losses, so the negligence, breach of contract, and breach of implied covenant of good faith and fair dealing claims—all premised on the same allegedly deficient conduct—must be dismissed as a result. [*Id.* at 8–12.]

In response, the Z&D Defendants assert that expert testimony is not actually required in this case. [Z&D Defs.' Opp. Second Martin MSJ 2–3.] Additionally, they suggest that the Martin Defendants "waived their right to expert discovery or otherwise stipulated that expert reports were not needed," [*id.* at 3–4], based on Judge King's July 8, 2022 docket annotation, which indicated, in pertinent part, that the parties advised the Court that expert discovery was not being pursued. [Firstline Case, Docket No. 66.] Finally, the Z&D Defendants blame their failure to produce expert testimony in this case on the COVID-19 pandemic and their own law firm's continuity-of-service mismanagement upon multiple attorney departures. [Z&D Defs.' Opp. Second Martin MSJ 4.] Based on this admission—which never once resulted in a proactive request to the Court, filed on either of the dockets, seeking an extension—the Z&D Defendants argue that they have demonstrated "good cause" now for an extension to provide expert testimony. [*Id.* at 4–5.] The Court addresses each argument in turn.

### 1.   *The Z&D Defendants' Professional Negligence Claim and Their Failure to Submit an Expert Report.*

A professional negligence claim against an insurance broker centers on the fiduciary relationship arising between the broker (an agent) and the client (the agent's

principal). *Aden v. Fortsh*, 169 N.J. 64, 78, 776 A.2d 791 (2001).  Exercising specialized knowledge and professional judgment, the insurance broker acts as an intermediary in whom the client places great trust and from whom the client expects reasonable care. *See Rider v. Lynch*, 42 N.J. 465, 476, 201 A.2d 561 (1964).  Naturally, this relationship generates a duty that is owed by the broker to the client to "exercise good faith and reasonable skill in advising [the client, an] insured[]," *Aden*, 169 N.J. at 79, 776 A.2d at 800 (quoting *Weinisch v. Sawyer*, 123 N.J. 333, 340 587 A.2d 615 (1991)), which subjects the broker to liability for losses that are caused by a breach of that duty, *id.* (citing *Rider*, 42 N.J. at 476, 201 A.2d 561).  "The concept is essentially one of professional malpractice." *Id.* If a broker "neglects to procure the insurance or if the policy is void or materially deficient or does not provide the coverage he undertook to supply, because of his failure to exercise the requisite skill or diligence, he becomes liable to his principal for the loss sustained thereby." *Rider*, 42 N.J. at 476, 201 A.2d 561.

Generally, in professional negligence cases in New Jersey,[16] expert testimony is required to establish a breach of the broker's duty of care.  *See, e.g.*, *Satec, Inc. v. Hanover Ins. Group*, 450 N.J. Super. 319, 162 A.3d 311, 335 (App. Div. 2017) (noting that negligence actions against insurance brokers normally require expert testimony); *Optica, Inc. v. Metro Pub. Adjustment, Inc.*, 2005 WL 1719134, at *18–*19 (D.N.J. July 21, 2005) (collecting cases).  Expert testimony is necessary to assist jurors to

---

[16] The Court again applies New Jersey law.  *See supra* note 13.

understand the "intricacies of the fiduciary relationship" in a complicated industry that involves dense subject matter.  *Satec*, 450 N.J. Super. at 335, 162 A.3d 311; *see also Wyatt v. Wyatt*, 217 N.J. Super. 580, 591, 526 A.2d 719 (App. Div. 1987) (holding that where the subject matter is "so esoteric that jurors of common judgment and experience cannot form a valid conclusion" on their own, expert testimony is required.

However, the common knowledge doctrine holds that, where "jurors' common knowledge as lay persons is sufficient to enable them, using ordinary understanding and experience, to determine a defendant's negligence," expert testimony is not required.  *Hubbard v. Reed*, 168 N.J. 387, 395–96, 774 A.2d 495 (2001).  Ordinarily, the insurance brokerage and coverage contexts are "beyond the ken of the average juror," so the common knowledge doctrine is limited to "obvious" cases of negligence.  *Satec*, 450 N.J. Super. at 335, 162 A.3d 311; *see, e.g.*, *DiMarino v. Wishkin*, 195 N.J. Super. 390, 393, 479 A.2d 444 (App. Div. 1984) (holding that expert testimony was not required where broker's failure to warn client that coverage could not be obtained was *per se* negligence).

In their Third-Party Complaint, the Z&D Defendants pursue a convoluted theory of negligence by which the Martin Defendants somehow breached their duty of care as insurance brokers by failing to "properly apprise" Harford and Firstline as well as the Z&D Defendants of the fact that Harford and Firstline had written insurance policies that did not account for the existence of Grant Plaza.  [Z&D Defs.' Third-Party Compl. (Martin Defs.) ¶ 7, Firstline Case, Docket No. 29.]  They failed to act despite knowing the "exact nature" of the Z&D Defendants' business.  [*Id.*]

30

Apparently, they also "did intentionally and purposely suppress and conceal" this information. [*Id.*] Said differently, they failed to "advise [the Z&D Defendants] of the insufficiency of coverage on [] Grant Plaza, and [] fail[ed] to secure and procure a comprehensive commercial general liability policy that would [appropriately] insure them." [*Id.* ¶ 10.]

Here, the Court finds that, given the state of the record, no reasonable juror could conclude that the Martin Defendants breached their professional duty of care as insurance producers to the Z&D Defendants. This is so for two independent reasons. First, as before concerning the Biondi Defendants, the Court is persuaded that expert testimony is required for the Z&D Defendants to prevail on their professional negligence claim against the Martin Defendants. The Z&D Defendants have not even attempted to distinguish the Biondi Defendants from the Martin Defendants to explain why expert testimony is not required. For the factfinder to ascertain whether the Martin Defendants were under a "duty to apprise" Harford and Firstline of the existence of Grant Plaza, as the Z&D Defendants allege, and whether the Z&D Defendants failed to exercise due care based on the insurance policy they brokered, expert testimony is required. As the *Satec* court observed, the insurance brokerage and coverage contexts are "beyond the ken of the average juror," *Satec*, 450 N.J. Super. at 335, 162 A.3d 311, so expert testimony is required.

The Z&D Defendants' arguments to the contrary are meritless. The Affidavit of Merit provided by Thomas B. Ahart hardly sets forth enough detail for anyone to understand how the Martin Defendants breached a duty of care owed to the Z&D

Defendants.  Indeed, it is little more than a formulaic recitation that a "reasonable probability" exists that the Martin Defendants breached a professional standard of care.  The Z&D Defendants' mere assertion that they have—and that the Affidavit is sufficient—hardly persuades this Court to set aside the expert testimony requirement. *See Satec*, 450 N.J. Super. at 335, 162 A.3d 311.  Moreover, the Court flatly rejects the Z&D Defendants' reading of Judge King's July 8, 2022 docket annotation for the proposition that the Martin Defendants "waived their right to expert discovery."  As the Martin Defendants convincingly explain, it was the Z&D Defendants who advised that they would not be providing an expert report in this matter.  [*See* Martin Defs.' Reply Br. 3, Firstline Case, Docket No. 80.]  Furthermore, the Court finds that the Z&D Defendants have not demonstrated good cause for an extension to provide an expert report in this action.  The deadline to serve the Martin Defendants with an expert report was June 30, 2022.  [Firstline Case, Docket No. 61.]  Months later, the Z&D Defendants cannot invoke the COVID-19 pandemic and office turnover to reset the clock, especially without an explanation why an extension would not prove futile.

The second, related reason why the Court finds that summary judgment is warranted as to the Z&D Defendants' professional negligence claim is because the Z&D Defendants have failed to prove up their allegations against the Martin Defendants.[17]  Aside from the Ahart Affidavit, the Z&D Defendants have not pointed

---

[17] While the Court declined to enter findings about the Biondi Defendants' arguments concerning the other elements of the Z&D Defendants' professional negligence claim on relevancy grounds, [Opinion, Firstline Case, Docket No. 72, at 11 n.4], the Court reaches these arguments here for the sake of a complete record.

to any evidence in the record demonstrating that a genuine dispute of fact exists that would enable a juror to find in their favor. *See Orsatti*, 71 F.3d at 484 (explaining that mere allegations, conclusions, conjecture, and speculation are not sufficient to defeat summary judgment).   They erroneously suggest that the Second Martin MSJ is premised exclusively on their failure to produce required expert testimony, [Z&D Defs.' Opp. Second Martin MSJ 2 ("The *sole* argument raised by . . .") (emphasis added)], and they ignore the Martin Defendants' other arguments concerning breach and causation, [Martin Defs.' Br. Summ. J. 8–11]. For instance, the Martin Defendants suggest that their conduct did not breach any duty owed to the Z&D Defendants because "[i]nsurance brokers are not expected to contemplate every scenario when procuring insurance." [*Id.* at 9.]   Additionally, they contend that the Martin Defendants are not the proximate cause of the costs related to the Underlying Action, and they assert that no evidence supports the Z&D Defendants' causation allegations.   [*See id.* at 10.]   The Court agrees with the Martin Defendants on both points—the Z&D Defendants have simply not produced enough evidence to survive summary judgment.   The Martin Defendants are entitled to summary judgment. Thus, the Z&D Defendants' professional negligence claim will be dismissed with prejudice.

### 2.   The Z&D Defendants' Remaining Third-Party Claims.

In their Third-Party Complaint, the Z&D Defendants allege that they entered into a contract with the Martin Defendants for the purpose of "fully and completely insuring them and their business interests from risk, claims and perils attendant to their business operations" and that the Martin Defendants breached this contract by "failing

to properly apply for and secure appropriate insurance coverage on Grant Plaza, LLC and to the benefit of Z&D Realty, LLC." [Z&D Defs.' Third-Party Compl. (Martin Defs.) 27 (¶¶ 1–2), Firstline Case, Docket No. 29.] They also allege that the Martin Defendants breached their duty of good faith and fair dealing by "failing to properly counsel and advise" the Z&D Defendants and by "otherwise misrepresenting the true facts and circumstances of [the Z&D Defendants'] operations so as to render their insurance policy meaningless." [*Id.* at 28 (¶ 3).]

In the Second Martin MSJ, the Martin Defendants assert that there is no basis for breach of contract or breach of implied covenant of good faith and fair dealing claims against them because the Z&D Defendants cannot prevail on their professional negligence claim. [Martin Defs.' Br. Summ. J. 11–12.] As the Court explained in its October 25, 2022 Opinion, this proposition of law is incorrect[18]; however, the Z&D Defendants' remaining claims against the Martin Defendants must fail. To establish a breach of contract claim, the Z&D Defendants must show that they entered into a valid contract with the Martin Defendants, the Martin Defendants failed to perform

---

[18] Like the Biondi Defendants, the Martin Defendants rely on *Murphy v. Implicito*, 392 N.J. Super. 245, 265, 920 A.2d 678 (App. Div. 2007) in support of the inaccurate statement that "[i]n a professional negligence case, the contract, and any breach thereof, is dependent upon whether liability is found on the professional negligence claims." [Martin Defs.' Br. Summ. J. 11.] The Court explained that *Murphy* does not say that a breach of contract claim depends on whether liability is found on a professional negligence claim; instead, it stands for the proposition that, "though the 'line between a breach of contract and a tort is often hazy,' they are two distinct claims that require separate analysis, even if premised on related or overlapping conduct. [Opinion 12, Firstline Case, Docket No. 72 (citing *Murphy*, 392 N.J. Super. at 268, 920 A.2d at 691).]

their contractual obligations, and the Z&D Defendants sustained damages as a result. *See Murphy*, 392 N.J. Super. at 265, 920 A.2d 678.  Under the implied covenant of good faith and fair dealing, the Martin Defendants must have performed some action that destroyed or injured the right of the Z&D Defendants to receive the benefit of the valid contract.  *See R.J. Gaydos Ins. Agency, Inc. v. Nat'l Consumer Ins. Co.*, 168 N.J. 255, 277, 773 A.2d 1132 (2001).

On this record, the Court cannot identify how the Z&D Defendants can prevail on either of their remaining claims.  The Z&D Defendants have not provided a scintilla of evidence demonstrating any of the elements of these claims.[19]  Their Opposition fails to even respond to the Martin Defendants' arguments.  Just as the Court observed in its October 25, 2022 Opinion, [Firstline Case, Docket No. 72, at 13], here, the Court is left to wonder what agreement in particular the Martin Defendants breached. Without producing any evidence demonstrating an oral or written agreement, the Z&D Defendants prevent the Court from permitting their breach of contract and implied covenant of good faith and fair dealing claims to proceed to trial. Thus, because the record before the Court suggests that there is no "genuine" dispute of material fact concerning the Z&D Defendants' allegations against the Martin Defendants and the Martin Defendants have demonstrated that they are entitled to summary judgment, the Court will grant summary judgment on the Z&D Defendants' remaining claims. *See Gonzalez*, 678 F.3d at 261.

---

[19] Based on the Court's independent review of the dockets in these matters, the Court cannot identify whether Third-Party Defendant Mr. Reighn was even deposed.

## V.    <u>CONCLUSION</u>

For the foregoing reasons, the Joint MSJ filed by Harford and Firstline will be **GRANTED**, the Harford Policy and the Firstline Policy will be rescinded, and the declaratory relief requested will issue.  The Second Martin MSJ will be **GRANTED** and the Z&D Defendants' Third-Party Complaint against the Martin Defendants will be **DISMISSED**, **WITH PREJUDICE**.  Accordingly, the Martin Defendants' (and, to the extent not already clear by implication, the Biondi Defendants') Crossclaims (and Counterclaims) will be **DISMISSED**, **WITH PREJUDICE**, as moot.

An accompanying Order shall issue on today's date.

 December 29, 2022
—————————————————

Date

s/Renée Marie Bumb
—————————————————

Renée Marie Bumb
United States District Judge

36